**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------- X
                                                                       :

In re:                                        :    Chapter 11

                                                     :

FIRESTAR DIAMOND, INC., et al.          :    Case No. 18-10509 (SHL)

                                                     :

                          Debtors.         :    Jointly Administered

                                                         :

-------------------------------------------------------------------- X

## ORDER ESTABLISHING BIDDING PROCEDURES AND RELATED RELIEF REGARDING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS

Upon the motion (the "Motion")[1] of Firestar Diamond, Inc. ("Firestar"), Fantasy, Inc. ("Fantasy") and A. Jaffe, Inc. ("A. Jaffe" and collectively, with Firestar and A. Jaffe, the "Debtors"), the above-captioned debtors and debtors-in-possession, for entry of an order (the "Bidding Procedures Order") (a) establishing bidding procedures, as set forth herein (the "Bidding Procedures"), with respect to the Debtors' sale of substantially all of their assets free and clear of liens, claims, interests and encumbrances (the "Proposed Sale"), (b) approving the form and manner of notices thereof (the "Bidding Procedures Notice"), and (c) setting a hearing (the "Sale Hearing") to consider approval of the Proposed Sale; and it appearing that the Debtors have provided good and sufficient notice to interested parties of the Motion, as evidenced by the proof of service filed on March 23, 2018; and it further appearing that this Court has jurisdiction to grant the requested relief pursuant to 28 U.S.C. §§ 157 and 1334; and after considering all objections to the Motion, if any; and the Court having conducted a hearing on March 28, 2018, at which time the Court considered, among other things, the Bidding Procedures, any objections thereto and the oral arguments of counsel; and it further appearing that the relief requested is

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

reasonable and necessary to protect the interests of the Debtors, their estates, and creditors; and after due deliberation, sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT**:[2]

A.     The statutory and legal predicates for the relief requested in this Order are sections 105, 363 and 365 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "<u>Bankruptcy Code</u>"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rules 6004-1 and 6006-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "<u>Local Rules</u>").

B.     The Debtors have provided good and sufficient notice of the relief granted by this Bidding Procedures Order to all parties in interest.  The notice provided is appropriate and is calculated to provide interested parties with timely and proper notice of the Bidding Procedures and the Auctions.  No further notice is required.  A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to those parties entitled to notice pursuant to Bankruptcy Rule 6004(a).

C.     The Debtors have engaged in a process with respect to the Purchased Assets to solicit and develop the highest and best offers for the Purchased Assets.

D.     The Bidding Procedures attached hereto as **<u>Exhibit 1</u>** are fair, reasonable, appropriate and are designed to maximize recovery to the Debtors' estates.

E.     The Debtors have demonstrated good and sufficient business reasons for the Court to approve (i) the Bidding Procedures, (ii) the Assumption and Assignment Procedures, and (iii) the form and manner of notice of the Auctions and Sale Hearing.

---

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

F.     The Bidding Procedures comply with the requirements of Local Rule 6004-1 and the Sale Guidelines.  The Bidding Procedures were negotiated in good faith and at arms' length and are reasonably designed to promote participation and active bidding and ensure that the highest or best value is generated for the Debtors' assets.

G.     The Assumption and Assignment Procedures, including notice of proposed Cure Costs, are reasonable and appropriate and consistent with section 365 of the Bankruptcy Code and Bankruptcy Rule 6006. The Assumption and Assignment Procedures have been tailored to provide adequate opportunity for all Counterparties to the Potentially Assigned Contracts to raise objections, if any.

H.     The Bidding Procedures Notice is reasonably calculated to provide all interested parties with timely and proper notice of the Bidding Procedures, the Assumption and Assignment Procedures, the Auctions, the Sale Hearing and the Proposed Sale, and the objection deadlines related thereto.

IT IS HEREBY ORDERED THAT:

## The Bidding Procedures and Auctions

1.     The Bidding Procedures, attached hereto as **<u>Exhibit 1</u>**, are hereby approved in all respects, are incorporated herein and shall apply with respect to any bids for some or all of the Assets.  The Debtors are authorized to take all action necessary or appropriate to implement the Bidding Procedures.

2.     The deadline for submitting an Sealed Bid for the Assets shall be **April 27, 2018 at 4:00 p.m.** (prevailing Eastern Time) (the "<u>Sealed Bid Deadline</u>"); *provided that*, the Debtors may, after consulting with the Consultation Parties, extend the Sealed Bid Deadline for any

reason, in their reasonable business judgment. The Debtors shall provide copies of all bids to each of the Consultation Parties, in accordance with the Bidding Procedures.

3.        If more than one Qualified Bid is received for (i) the Firestar/Fantasy Assets and (ii) the A. Jaffe Assets, the Debtors may hold one or more auctions (each, a "Business Line Auction" and together, the "Business Line Auctions") in advance of the All-Asset Auction (defined below). The Business Line Auctions, if required, shall be held at the offices of Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10018, or at such alternative location as the Debtors may determine, after consultation with the Consultation Parties, and after providing notice to the Notice Parties. The Business Line Auctions shall commence on **May 3, 2018 at 10:00 a.m.** (prevailing Eastern Time). The Business Line Auctions shall be conducted openly and shall be transcribed by a court reporter.

4.        If the Debtors receive at least two (2) Qualified Bids for the Assets (including, for the avoidance of doubt, a potential combination of the highest Offers for the Firestar/Fantasy Assets and the A. Jaffe Assets, the Debtors shall conduct an auction (the "All-Asset Auction," and together with the Business Line Auctions, the "Auctions"). The All-Asset Auction, if required, shall be held at the offices of Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10018, or at such alternative location as the Debtors may determine, after consultation with the Consultation Parties, and after providing notice to the Notice Parties.  The All-Asset Auction shall commence on **May 3, 2018 at 11:30 a.m.** (prevailing Eastern Time) or as soon thereafter as practicable following the Business Line Auctions. The All-Asset Auction shall be conducted openly and shall be transcribed by a court reporter.

5.     The Auctions shall be conducted openly and shall be transcribed by a court reporter.

6.     Subject to the Bidding Procedures and this Order, the Debtors shall have the right, after consulting with the Consultation Parties, in their reasonable business judgment, to: (i) determine which bidders qualify as Qualified Bidders; (ii) determine which bids qualify as Qualified Bids; (iii) determine which Qualified Bids are the Winning Bid and the Backup Bid; (iv) reject any bid that is: (a) inadequate or insufficient; (b) not in conformity with the requirements of the Bidding Procedures, the Bankruptcy Code, the Bidding Procedures Order, or any other order of this Court; or (c) contrary to the best interests of the Debtors and their estates; (v) adjourn or cancel one or more of the Auctions; or (vi) modify the Bidding Procedures in a manner consistent with applicable law.

7.     All bidders submitting a Qualified Bid are deemed to have submitted to the exclusive jurisdiction of this Court with respect to all matters related to the Auctions and the terms and conditions of the sale or transfer of the Assets.

## The Sale Hearing/Objection Deadline

8.     The Court shall conduct the Sale Hearing on **May 15, 2018 at 2:00 p.m.** (prevailing Eastern Time). The Debtors may, after consultation the Winning Bidder and the Consultation Parties, seek an adjournment of the Sale Hearing as the Debtors deem appropriate in the exercise of their reasonable business judgment.

9.     Responses or objections (collectively, "Sale Objections") if any, to the relief requested in the Sale Motion, including Cure Objections and Adequate Assurance Objections, shall be in writing, shall state the name of the objecting party, shall state with particularity the reasons and basis for the Sale Objection, and shall be (a) filed with the Court and (b) served upon

(i) the Debtors, 592 5th Avenue, 3rd Floor, New York, New York 10036, attn.: Mark Samson, Chief Restructuring Officer; (ii) the Debtors' counsel, Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10018, attn.: Ian R. Winters and Joseph C. Corneau, and Forchelli Deegan Terrana LLP, 333 Earle Ovington Blvd, Suite 1010, Uniondale, New York 11553, attn.: Gerard R. Luckman; (iii) counsel to IDB, including (x) Troutman Sanders LLP, 875 Third Avenue, New York, New York 10022 attn.: Brett D. Goodman and (y) Troutman Sanders LLP, 600 Peachtree Street, NE., Suite 3000, Atlanta, Georgia 30308 attn.: Harris B. Winsberg and Matthew R. Brooks; (iv) counsel to HSBC Bank, Allen & Overy LLP, 1221 Avenue of the Americas, New York, New York 10020, attn.: Ken Coleman; (v) counsel to any Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases (the "Committee"), if one is appointed; and (vi) the Office of the United States Trustee, 201 Varick Street, Suite 1006, New York, New York 10014, attn.: Richard Morrissey (collectively, the "Objection Recipients"), so as to be actually received by no later than **May 8, 2018 at 4:00 p.m.** (prevailing Eastern Time) (the "Sale Objection Deadline"). Any reply by the Debtors or other Objection Recipient shall be filed and served by no later than **May 11, 2018 at 4:00 p.m.** (prevailing Eastern Time).

### Notice Procedures

10.    The Bidding Procedures Notice, attached to the Motion as Exhibit B, provides adequate and sufficient notice to all interested parties of the Bidding Procedures, Auction, Motion, Sale Hearing, and the Proposed Sale pursuant to Bankruptcy Rules 2002 and 6004 and Local Rules 4001-1 and 6004-1, and is hereby approved.

11.    As soon as is reasonably practicable, but by no later than three (3) business days after entry of the Bidding Procedures Order, the Debtors shall serve a copy of this Bidding

Procedures Order, the Sale Motion, the Bidding Procedures Notice and the Potential Assigned Contract Notice upon the following persons by first-class mail, postage prepaid: (a) counsel to IDB, Troutman Sanders LLP, 875 Third Avenue, New York, New York 10022 attn.: Brett D. Goodman and Troutman Sanders LLP, 600 Peachtree Street, NE., Suite 3000, Atlanta, Georgia 30308 attn.: Harris B. Winsberg and Matthew R. Brooks; (b) counsel to HSBC Bank, Allen & Overy LLP, 1221 Avenue of the Americas, New York, New York 10020, attn.: Ken Coleman; (c) counsel to any Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases (the "Committee"), if any is appointed; (d) the Office of the United States Trustee, 201 Varick Street, Suite 1006, New York, New York 10014, attn.: Richard Morrissey; (e) all Counterparties to the Assigned Contracts; (f) all parties who have made an offer on some or all of the Assets or expressed an interest in making an offer on some or all of the Assets; (h) all known persons holding a lien on any of the Assets; (i) all known creditors and (j) all entities who have requested notice under Bankruptcy Rule 2002 (collectively, the "Notice Parties").

12.     In addition, the Debtors shall cause the Bidding Procedures Notice to be published one (1) time in either The Wall Street Journal, Eastern Edition or The New York Times.

## The Assumption and Assignment Procedures

13.     The Potential Assigned Contracts Notice, attached to the Motion as Exhibit F, provides adequate and sufficient notice to any applicable Counterparty of any proposed assumption and/or assignment of any Assigned Contract, and is hereby approved.

14.     The Assumption and Assignment Procedures (as set forth in the Motion) are reasonable, fair, and appropriate, and contain the type of information required under Bankruptcy

Rule 2002, Local Rule 2002-1, and comply in all respects with all other applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, and are hereby approved.

15. Within three (3) business days after entry of this Order, the Debtors shall file the Potential Assigned Contracts Notice with the Court and serve the Assigned Contracts Notice on the Notice Parties, including each applicable Counterparty.

16. Any and all objections to the Cure Amounts (any such objection, a "Cure Objection") shall be in writing, shall state with specificity the legal and factual bases thereof and include any appropriate supporting documentation, filed with the Court and shall be simultaneously served on the following Objection Recipients, so as to be actually received by the Objection Recipients by no later than **May 8, 2018 at 4:00 p.m.** (prevailing Eastern Time) (the "Cure Objection Deadline"). Any reply by the Debtors shall be filed and served by no later than **May 11, 2018 at 4:00 p.m.** (prevailing Eastern Time).

17. The Debtors and any Counterparty that has filed a Cure Objection shall confer in good faith in an effort to resolve the Cure Objection without Court intervention, after consultation with the Consultation Parties. If the parties are unable to consensually resolve the Cure Objection prior to the commencement of the Sale Hearing, the Court shall determine the amount to be paid or reserved with respect to such objection at the Sale Hearing; provided that, a Cure Objection (and only a Cure Objection) may, at the Debtors' discretion, after consulting with the Consultation Parties and the applicable Winning Bidder, be adjourned with the Court's consent (an "Adjourned Cure Objection") to a subsequent hearing. An Adjourned Cure Objection may be resolved after the closing date of the applicable Proposed Sale (and therefore the contract of the Counterparty in question may be assumed and assigned at the closing), provided that the Debtors maintain a cash reserve equal to the Cure Costs the objecting

Counterparty believes is required to cure the asserted monetary default under the affected Potentially Assigned Contract.

18.     All other Sale Objections to the proposed assumption and assignment of the Debtors' right, title, and interest in, to, and under a Potentially Assigned Contract, if it is ultimately designated for assumption and assignment by the Winning Bidder(s), will be heard at the Sale Hearing.

19.     If a Counterparty fails to timely file with the Court and serve on the Objection Recipients a Cure Objection, the Counterparty shall be deemed to have consented to the assumption and assignment of the affected Potentially Assigned Contract (unless such Counterparty has timely filed an Adequate Assurance Objection with respect to the affected Assigned Contract) to the applicable Winning Bidder and forever shall be barred from asserting any objection with regard to such assumption, assignment, and sale. The Cure Costs set forth in the Potential Assigned Contracts Notice shall be controlling and will be the only amount necessary to cure outstanding monetary defaults under the affected Potentially Assigned Contract under 11 § U.S.C. 365(b), notwithstanding anything to the contrary in any Assigned Contract, or any other document, and the Counterparty to the Potentially Assigned Contract shall be deemed to have consented to the Cure Costs and shall forever be barred from asserting any other claims related to such Assigned Contract against the Debtors or the Winning Bidders, or the property of any of them.

20.     To the extent requested by a Counterparty, the Debtors shall provide, with respect to each Qualified Bidder, information to demonstrate that each Qualified Bidder is able to fulfill all obligations in connection with satisfying adequate assurance of future performance under any Assigned Contract ("Adequate Assurance Information"). In particular, the Debtors shall, within

48 hours of receipt of an Sealed Bid from a Potential Bidder (the "<u>Adequate Assurance Deadline</u>"), provide a copy of the Adequate Assurance Information to those Counterparties (or their counsel) who have: (x) submitted a written request (e-mail to Debtors' counsel is acceptable) for Adequate Assurance Information and (y) confirmed in writing to the Debtors' counsel (e-mail to Debtors' counsel is acceptable) their agreement to keep such Adequate Assurance Information strictly confidential and use it solely for the purpose of evaluating whether a Potential Bidder has provided adequate assurance of future performance under the affected Potentially Assigned Contract.

21.    Any Counterparty to an Potentially Assigned Contract that has an objection to the proposed assumption and assignment of an Potentially Assigned Contract, the subject of which objection is a Winning Bidder's proposed form of adequate assurance of future performance with respect to such contract (each, an "<u>Adequate Assurance Objection</u>"), shall file with the Court and simultaneously serve on the Objection Recipients an Adequate Assurance Objection, which must state, with specificity, the legal and factual bases thereof, including submitting any appropriate supporting documentation, by no later than **May 8, 2018 at 4:00 p.m.** (prevailing Eastern Time) (the "<u>Adequate Assurance Objection Deadline</u>").    Replies, if any, to Adequate Assurance Objections shall be filed by **May 11, 2018 at 4:00 p.m.** (prevailing Eastern Time).

22.    The Debtors, after consultation with the Consultation Parties, and any Counterparty that has filed an Adequate Assurance Objection shall confer in good faith in an effort to resolve the Adequate Assurance Objection without Court intervention. If the parties are unable to consensually resolve the Adequate Assurance Objection prior to the commencement of the Sale Hearing, the Court shall determine any issues of adequate assurance of future performance by the applicable Winning Bidder at the Sale Hearing.

23.      If a Counterparty fails to timely file with the Court and serve on the Objection Recipients an Adequate Assurance Objection, the Counterparty shall be deemed to have consented to the assumption and assignment of the affected Potentially Assigned Contract (unless the Counterparty has filed a timely Cure Objection with respect to the Assigned Contract) to the applicable Winning Bidder and shall be forever barred from asserting any objection with regard to such assumption and assignment. Further, in the event no objections are filed and served, the applicable Winning Bidder shall be deemed to have provided adequate assurance of future performance with respect to the affected Potentially Assigned Contract in accordance with 11 U.S.C. § 365(f)(2)(B), notwithstanding anything to the contrary in the Potentially Assigned Contract, or any other document.

24.      Any Counterparty to an Potentially Assigned Contract that wishes to file a Sale Objection (other than a Cure Objection or an Adequate Assurance Objection) to the proposed assumption and assignment of a Potentially Assigned Contract shall file with the Court and serve on the Objection Recipients its Sale Objection, which must state, with specificity, the legal and factual bases thereof, including any appropriate documentation in support thereof, by no later than the Sale Objection Deadline of **May 8, 2018, at 4:00 p.m.** (prevailing Eastern Time). Replies, if any, to Sale Objections shall be filed by **May 11, 2018 at 4:00 p.m.** (prevailing Eastern Time).

25.      If a Counterparty fails to timely file with the Court and serve on the Objection Recipients a Sale Objection, the Counterparty shall be deemed to have consented to the assumption and assignment of the Potentially Assigned Contract (unless the Counterparty has filed a timely Cure Objection or Adequate Assurance Objection with respect to the Potentially

Assigned Contract) to the applicable Winning Bidder and shall be forever barred from asserting any objection with regard to such assumption and assignment.

26.     The Debtors reserve all of their rights, claims, and causes of action with respect to each Potentially Assigned Contract or other document listed on the Potential Assigned Contracts Notice. The Debtors' inclusion of any Potentially Assigned Contract on the Potential Assigned Contracts Notice shall not be a covenant, promise, or guarantee that such contract ultimately will be assumed and assigned.

## Other Relief Granted

27.     In the event there is a conflict between this Order and the Sale Motion, this Order shall control and govern.

28.     This Order shall become effective immediately upon its entry.

29.     The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

Dated: New York, New York
        March 29, 2018

                                        */s/ Sean H. Lane*                          
                                        UNITED STATES BANKRUPTCY JUDGE

## **Exhibit 1**

Bidding Procedures

## BIDDING PROCEDURES

Set forth below are the Bidding Procedures that will be employed in connection with a sale or disposition (the "Proposed Sale") of substantially all of the assets of Firestar Diamond, Inc. ("Firestar"), Fantasy, Inc. ("Fantasy") and A. Jaffe, Inc. ("A. Jaffe" and collectively, with Firestar and A. Jaffe, the "Debtors") in the above captioned chapter 11 cases (the "Chapter 11 Cases").

### A.    Key Dates and Deadlines

| March 28, 2018 at 10:00 a.m. | Hearing on Bidding Procedures Motion |
|---|---|
| April 4, 2018 | Deadline to Mail Bidding Procedures Notice and Sale Motion |
| April 27, 2018 at 5:00 p.m. | Sealed Bid Deadline |
| May 1, 2018 at 5:00 p.m. | Deadline for Debtors to notify Potential Bidders of their status as Qualified Bidders |
| May 3, 2018 at 10:00 a.m. and 11:30 a.m. | Auctions, if necessary |
| May 8, 2018 at 4:00 p.m. | Sale Objection Deadline, Cure Objection Deadline, and Adequate Assurance Objections Deadline |
| May 11, 2018 at 4:00 p.m. | Deadline for Debtors to file Replies to Sale Objections, Cure Objections, and Adequate Assurance Objections |
| May 15, 2018 at 2:00 p.m. | Sale Hearing |

### B.    The Description of the Assets

The Debtors are seeking to sell substantially all of their Assets[3] free and clear of all liens, claims, interests, or other encumbrances. The Debtors are also seeking to Sealed Bids for each of the Firestar/Fantasy Assets and the A. Jaffe Assets.

### C.    Consultation Parties

Throughout the sale process, as necessary or appropriate, the Debtors will consult with the following parties: (a) counsel to IDB, Troutman Sanders LLP, 875 Third Avenue, New York, New York 10022 attn.: Brett D. Goodman and Troutman Sanders LLP, 600 Peachtree Street, NE., Suite 3000, Atlanta, Georgia 30308 attn.: Harris B. Winsberg and Matthew R. Brooks; (b) counsel to HSBC Bank, Allen & Overy LLP, 1221 Avenue of the Americas, New York, New York 10020, attn.: Ken Coleman; (c) counsel to any Official Committee of Unsecured Creditors appointed in the Bankruptcy Cases (the "Committee"), if any is appointed; and (d) the Office of

---

[3] Capitalized terms not defined herein shall have the meaning ascribed to them in the Sale Motion.

the United States Trustee, 201 Varick Street, Suite 1006, New York, New York 10014, attn.: Richard Morrissey (together, the "Consultation Parties").

### D. Potential for Stalking Horse.

Although the Bidding Procedures contemplate that the Debtors will solicit Sealed Bids in connection on or before the Sealed Bid Deadline, the Debtors reserve the right to enter into a form of the APA before the Auctions with a Stalking Horse in consultation with the Consultation Parties. The Debtors contemplates that any APA with a Stalking Horse would nonetheless be subject to the receipt of higher or otherwise better bids in accordance with these Bidding Procedures and the Auctions. If one or more of the Debtors enter into an APA with a Stalking Horse Bidder, all Potential Bidders that have provided the required documentation in paragraph F, below, shall be notified and provided the terms of such APA, including bidding protections as may be approved by the Court and thereafter offered as part of the APA.

The Bidding Procedures Order permits the Debtors to present to this Court, on not less than seven (7) days' notice, a revised APA and related proposed bidding protections that the Debtors believe are necessary to induce a Stalking Horse to pursue the Proposed Sale (the "Bidding Protections").

If the Debtors enter into an APA with a Stalking Horse, the APA with the Stalking Horse shall be deemed a Qualified Bid (as defined below) and the Stalking Horse shall be deemed a Qualified Bidder (as defined below).

### E. Bidder Qualifications

To qualify as a qualified bid (a "Qualified Bid"), a Potential Bidder must submit a Sealed Bid by the Sealed Bid Deadline, and the Debtors, in consultation with the Consultation Parties, must determine that the Offer satisfies the following requirements:

(1) Modified APA. Each Sealed Bid must include: (i) an executed copy of an asset purchase agreement which is not materially more burdensome to the Debtors than the Proposed APA or inconsistent with these Bidding Procedures (the "Modified APA"); and (ii) a marked-up copy of the Modified APA reflecting the differences between the Modified APA and the Proposed APA. The Debtors, in consultation with the Consultation Parties, shall determine whether any Modified APA that modifies the Proposed APA in any respect beyond the identity of the purchaser and the purchase price under the Modified APA results in such Sealed Bid being materially less favorable to the Debtors, which may be considered in the Debtors' deliberations as to what constitutes the highest and best offer.

(2) Allocation Schedule. Each Sealed Bid for the Assets must include an allocation schedule of the proposed purchase price for the Assets as between the Firestar/Fantasy Assets and the A. Jaffe Assets. If the Sealed

Bid is not for all of the Assets, then the Sealed Bid must state whether it is for the Firestar/Fantasy Assets or the A. Jaffe Assets.

(3)  <u>Modified Sale Order</u>. Each Offer must include a marked-up copy of the Sale Order (a "<u>Modified Sale Order</u>") reflecting differences between the proposed Sale Order annexed to the Sale Motion as Exhibit C requested by the party submitted a Sealed Bid. The Debtors, in consultation with the Consultation Parties, shall determine whether any Modified Sale Order that modifies the proposed Sale Order in any respect beyond the identity of the purchaser, the purchase price and the allocation of the purchase price results in such Sealed Bid being materially less favorable to the Debtors, which may be considered in the Debtors' deliberations as to what constitutes the highest and best offer.

(4)  <u>Identification of Bidder</u>. Each Sealed Bid must fully disclose the legal identity of each entity that will be bidding for the Assets, the Firestar/Fantasy Assets or the A. Jaffe Assets, as applicable, participating in connection with such Sealed Bid (including but not limited to any equity holder or other financial backer if the Potential Bidder is an entity specifically formed for purposes of effectuating the Proposed Sale, and the complete terms of any such participation) and must also disclose any connections or agreements with the Debtors, any other known Potential Bidder or Qualified Bidder, and/or any officer or director of the foregoing.

(5)  <u>Financial Information</u>.  Any Potential Bidder that wishes to submit a Sealed Bid for the Assets, the Firestar/Fantasy Assets or the A. Jaffe Assets, as applicable, must provide the Debtors with sufficient and adequate information to demonstrate, to the satisfaction of the Debtors, in consultation with the Consultation Parties, that the Sealed Bid: (i) is being made by an entity that has the financial wherewithal and ability to consummate the Sealed Bid and (ii) provides information to demonstrate that it is able to fulfill all obligations in connection with all Assigned Contracts (as defined below) so as to satisfy the requirement of providing adequate assurance of future performance, as contemplated by section 365 of the Bankruptcy Code (the "<u>Adequate Assurance Information</u>").

(6)  <u>Other Requirements</u>.  Each Sealed Bid shall: (i) state that Sealed Bid is formal, binding and unconditional, is not subject to further due diligence, and is irrevocable until the earlier to occur of: (x) the first business day following the closing of the Proposed Sale or (y) thirty (30) days following the last date of the Auctions (as may be adjourned); (ii) not contain any financing and employment-related contingencies of any kind; (iii) not contain any condition to closing the Proposed Sale on the receipt of any third party approvals; (iv) state that the Potential Bidder is ready, willing and able to perform its obligations under the Modified APA submitted with such Sealed Bid; (v) expressly state that the Potential Bidder agrees to serve as a backup bidder (a "<u>Backup Bidder</u>") if such

bidder's Qualified Bid is selected as the next highest or next best bid after the Winning Bid for the Assets, the Firestar/Fantasy Assets or the A. Jaffe Assets, as applicable; (vi) include contact information for the person(s) the Debtors should contact with questions about the Potential Bidder's Sealed Bid; and (vii) be received by the Debtors and Consultation Parties by the Sealed Bid Deadline.

(7) <u>Good Faith Deposit</u>. All Qualified Bids must be accompanied by a good faith deposit in the amount of ten percent (10%) of the Offer (a "<u>Good Faith Deposit</u>"), in the form of a certified or cashier's check, payable to "KLESTADT WINTERS JURELLER SOUTHARD & STEVENS LLP ESCROW MANAGEMENT ACCOUNT" or by wire transfer, instructions for which will be provided upon request. All such deposits shall be retained by the Debtors pending the hearing to consider the Sale Motion and shall be returned within ten (10) days after entry of a Sale Order, except that the Debtors will hold the deposit of the Backup Bidder, until the earlier of (x) the first business day following closing of the Proposed Sale or (y) thirty (30) days following the last date of the Auction (as may be adjourned), provided that any Potential Bidder submitting a credit bid component pursuant to section 363(k) of the Bankruptcy Code shall not be required to submit a Good Faith Deposit on account of such component of the Potential Bidder's Sealed Bid.

## F.  <u>Due Diligence</u>

To be eligible to participate in the Auctions, each Potential Bidder must execute a nondisclosure agreement in form and on terms satisfactory to the Debtors.

In addition, each Potential Bidder must demonstrate financial wherewithal to complete a transaction for the Purchased Assets by providing to the Debtors (a) financial statements for the last two calendar years and (b) a letter from a bank or other financial institution that indicates cash liquidity or credit availability of at least the amount of its Sealed Bid plus fifteen percent (15%).

If the Debtors determine, after consultation with the Consultation Parties, that a Potential Bidder does not qualify as a Qualified Bidder, such Potential Bidder shall not be entitled to receive due diligence access or additional non-public information.

## G.  <u>Offer Deadline</u>

Any person or entity interested in participating in the Auctions (defined below) shall submit a Sealed Bid in writing and transmit such bid to: (a) the Debtors, 592 5th Avenue, 3rd Floor, New York, New York 10036, attn.: Mark Samson, Chief Restructuring Officer; (b) the Debtors' counsel, Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10018, attn.: Ian R. Winters and Joseph C. Corneau, and Forchelli Deegan Terrana LLP, 333 Earle Ovington Blvd., Suite 1010, Uniondale, New York 11553, attn.: Gerard R. Luckman; (c) counsel to IDB, Troutman Sanders LLP, 875 Third Avenue, New York,

New York 10022 attn.: Brett D. Goodman and Troutman Sanders LLP, 600 Peachtree Street, NE., Suite 3000, Atlanta, Georgia 30308 attn.: Harris B. Winsberg and Matthew R. Brooks; (d) counsel to HSBC Bank, Allen & Overy LLP, 1221 Avenue of the Americas, New York, New York 10020, attn.: Ken Coleman; (e) counsel to any Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases (the "Committee"), if one is appointed; and (f) the Office of the United States Trustee, 201 Varick Street, Suite 1006, New York, New York 10014, attn.: Richard Morrissey, so that it is received by no later than **April 27, 2018[4] at 5:00 p.m.** (prevailing Eastern Time) (the "Sealed Bid Deadline").  The Debtors may, after consulting with the Consultation Parties, extend the Sealed Bid Deadline in their reasonable business judgment.

## H.      Selecting Qualified Bidders

The Debtors shall, in consultation with the Consultation Parties, make a determination whether a Sealed Bid is a Qualified Bid and shall notify each Potential Bidders whether its Sealed Bid has qualified as a Qualified Bid by not later than **May 1, 2018 at 5:00 p.m.** (prevailing Eastern Time). Any Potential Bidder whose Offer is determined to be a Qualified Bid shall be designated as a "Qualified Bidder."

A Sealed Bid shall be determined to be a Qualified Bid only if it satisfies all of the requirements of paragraph E, above, and is one of the top five (5) bids or within twenty percent (20%) of the highest bid received for the Assets, the Firestar/Fantasy Assets, or the A. Jaffe Assets, as applicable, provided, however, that the Debtors may, in their reasonable business judgment and in consultation with the Consultation Parties, admit a Potential Bidder to the Auctions as a Qualified Bidder even if its Sealed Bid does not meet the top five (5) or twenty percent (20%) threshold, provided that its Sealed Bid otherwise satisfies all of the requirements of paragraph E, above.

## I.      Credit Bidding

Any secured creditor holding an allowed secured claim against the Debtors shall have the right, subject to the provisions of the Bankruptcy Code, applicable law, and any agreement of such secured creditor, to credit bid such claims to the extent of such secured party's interest in or lien on the Assets being bid upon. IDB and HSBC Bank have security interests in and liens on substantially all of the Firestar/Fantasy Assets and IDB and HSBC Bank shall have the right at any time prior to or at an Auction to credit bid their prepetition and/or postpetition claims (including any pre- and post-petition interest and fees accrued and otherwise due pursuant to section 363(k) of the Bankruptcy Code. For the purposes of these Bidding Procedures and any Auction in connection herewith, any offer by IDB or HSBC Bank shall constitute a Qualified Bid and IDB and HSBC Bank shall be deemed Qualified Bidders.

---

[4] Dates and deadlines set forth in this Sale Motion are the Debtors' proposed dates and deadlines. The Bidding Procedures Order will establish the dates and deadlines approved by the Bankruptcy Court.

**J.**      <u>The Business Line Auction(s)</u>

If more than one Qualified Bid is received for (i) the Firestar/Fantasy Assets or (ii) the A. Jaffe Assets, the Debtors may hold one or more auctions (each, a "<u>Business Line Auction</u>" and together, the "<u>Business Line Auctions</u>") in advance of the All-Asset Auction (defined below).

The Business Line Auctions, if required, shall be held at the offices of Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10018, or at such alternative location as the Debtors may determine, after consultation with the Consultation Parties. The Business Line Auctions shall commence on **May 3, 2018 at 10:00 a.m.** (prevailing Eastern Time). The Business Line Auctions shall be conducted openly and shall be transcribed by a court reporter.

Only Qualified Bidders and their representatives, the Debtors and their representatives, the Consultation Parties and their respective representatives will be permitted to attend the Business Line Auctions. The following procedures will be applicable at the Business Line Auctions:

     (1)      Each Qualified Bidder shall appear in person at the Business Line Auctions through a duly authorized representative. Only Qualified Bidders shall be entitled to make any subsequent bids at the Business Line Auctions. Each Qualified Bidder shall be required to confirm that (i) it has not engaged in any collusion with respect to the bidding or the Proposed Sale; and (ii) its Qualified Bid represents a binding, good faith, and bona fide offer to purchase the Firestar/Fantasy Assets or A. Jaffe Assets, as applicable, if such bid if selected as the highest bid at the applicable Business Line Auction, subject to paragraph (3), below.

     (2)      <u>Procedures for Conducting Business Line Auctions</u>. At the commencement of each of the Business Line Auctions, the Debtors, after consultation with the Consultation Parties, shall announce the highest Sealed Bid received for the Firestar/Fantasy Assets and the A. Jaffe Assets, as applicable. Such highest sealed bid shall constitute the baseline bid ("<u>Business Line Baseline Bid</u>") for that Business Line Auction. The Qualified Bidder submitting the Business Line Baseline Bid shall not be required to bid in the first round of the applicable Business Line Auction. Qualified Bidders other than Qualified Bidder that submitted the Business Line Baseline Bid shall be invited to top the Business Line Baseline Bid. Any bid to top the Business Line Baseline Bid shall be not less than $200,000, and each successive bid shall be not less than $200,000, provided, however, that the Debtors may, after consultation with the Consultation Parties, increase or decrease the bid increments. Except with respect to the Qualified Bidder that submitted the Business Line Baseline Bid, subsequent bidding shall be made by other Qualified Bidders in the order in which such Qualified Bids were received, which shall be announced at the commencement of each Business Line Auction. Any Qualified Bidder that declines to top the Business Line Baseline Bid shall be excluded from further bidding. Bidding shall proceed in successive

rounds until each Qualified Bidder not previously excluded from bidding declines to top the last bid.

(3)    <u>Highest Business Line Offers</u>. At the end of each such Business Line Auction, the Debtors, after consultation with the Consultation Parties, shall announce the highest and best offer for each of the Firestar/Fantasy Assets and the A. Jaffe Assets, as applicable. If in the Debtors' business judgment and after consultation with the Consultation Parties, a combination of highest and best Offers for each Business Line Auction may be competitive with Sealed Bids for the Assets at the All-Asset Auction (as defined below), then the combination of the highest and best offers of the Business Line Auctions may (but shall not be required to) be designated by the Debtors as the starting bid at the All-Asset Auction (defined below), provided that the Debtors may, in their reasonable business judgment, consider factors other than total purchase price in determining whether or not to designate the combined highest Offers following the Business Line Auctions as the starting bid at the All-Asset Auction, including, without limitation, potential increased execution risk.

**K.**    **<u>The All-Asset Auction.</u>**

If the Debtors receive at least two (2) Qualified Bids for the Assets (including, for the avoidance of doubt, a potential combination of the highest offers for the Firestar/Fantasy Assets and the A. Jaffe Assets as described in paragraph J.2, above, the Debtors shall conduct an auction (the "<u>All-Asset Auction</u>," and together with the Business Line Auctions, the "<u>Auctions</u>"). The All-Asset Auction, if required, shall be held at the offices of Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st Street, 17th Floor, New York, New York 10018, or at such alternative location as the Debtors may determine, after consultation with the Consultation Parties, and after providing notice to the Notice Parties. The All-Asset Auction shall commence on **May 3, 2018 at 11:30 a.m.** (prevailing Eastern Time) or as soon after the Business Line Auctions as is practicable. The All-Asset Auction shall be conducted openly and shall be transcribed by a court reporter.

Only Qualified Bidders and their representatives, the Debtors and their representatives, the Consultation Parties and their respective representatives will be permitted to attend the All-Asset Auction. The following procedures will be applicable at the All-Asset Auction:

(1)    Each Qualified Bidder shall appear in person at the Auctions through a duly authorized representative. Only Qualified Bidders shall be entitled to make any subsequent bids at the Auctions. Each Qualified Bidder shall be required to confirm that (i) it has not engaged in any collusion with respect to the bidding or the Proposed Sale; and (ii) its Qualified Bid represents a binding, good faith, and bona fide offer to purchase the assets identified if such bid if selected as the Winning Bidder.

(2)    <u>Procedures for Conducting All-Asset Auction</u>. At the commencement of each of the All-Asset Auction, the Debtors, after consultation with the Consultation Parties, shall announce the highest Sealed Bid received for the Assets. Such highest sealed bid shall constitute the baseline bid ("<u>All-</u>

<u>Asset Baseline Bid</u>") for the All-Asset Auction, which may be a combination of the highest bids announced at the conclusion of the Business Line Auctions. The Qualified Bidder(s) submitting the All-Asset Baseline Bid shall not be required to bid in the first round of the All-Asset Auction. Qualified Bidders other than the Qualified Bidder that submitted the All-Asset Baseline Bid shall be invited to top the All-Asset Baseline Bid. Any bid to top the All-Asset Baseline Bid shall be not less than $200,000, and each successive bid shall be not less than $200,000, provided, however, that the Debtors may, after consultation with the Consultation Parties, increase or decrease the bid increments. Except with respect to the Qualified Bidder that submitted the All-Asset Baseline Bid, subsequent bidding shall be made by other Qualified Bidders in the order in which such Qualified Bids were received, which shall be announced at the commencement of the All-Asset Auction. Any Qualified Bidder that declines to top the All-Asset Baseline Bid shall be excluded from further bidding. Bidding shall proceed in successive rounds until each Qualified Bidder not previously excluded from bidding declines to top the last bid.

(3)     <u>Winning Bid</u>. Immediately prior to the conclusion of the All-Asset Auction, the Debtors shall, in consultation with the Consultation Parties, (i) determine, consistent with these Bidding Procedures, which bid or combination of bids constitute the winning bid (the "<u>Winning Bid</u>"); and (ii) notify all Qualified Bidders at the All-Asset Auction of the identity or identities of the bidder(s) that submitted the Winning Bid (each such bidder, the "<u>Winning Bidder</u>") and the amount of the purchase price and other material terms of the Winning Bid.

(4)     The All-Asset Auction may include open bidding in the presence of all other Qualified Bidders. All Qualified Bidders shall have the right to submit additional bids at the All-Asset Auction to improve their bids. The Debtors may, in their reasonable business judgment, negotiate with any and all Qualified Bidders during the All-Asset Auction.

(5)     The Debtors shall have the right, after consulting with the Consultation Parties, to determine, in their reasonable business judgment, which bid or combination of bids constitutes the highest or otherwise best bid and reject at any time, any bid that the Debtors determine to be inadequate or insufficient, not in conformity with the requirements of the Bankruptcy Code, Bankruptcy Rules, or the Local Rules, these Bidding Procedures, any order of the Bankruptcy Court, or is not in the best interests of the Debtors and their estates.

(6)     Within one (1) business day after conclusion of the Auction, the Winning Bidder shall be required to supplement its Good Faith Deposit by the difference between its Qualified Bid and the Winning Bid multiplied by ten percent (10%).

(7)     <u>Backup Bid</u>. Immediately prior to the conclusion of the All-Asset Auction, the Debtors shall, in consultation with the Consultation Parties, (i)

determine, consistent with these Bidding Procedures, which bid or combination of bids constitute the backup bid (the "<u>Backup Bid</u>"); and (ii) notify all Qualified Bidders at the All-Asset Auction of the identity or identities of the bidder(s) that submitted the Backup Bid (each such bidder, the "<u>Backup Bidder</u>") and the amount of the purchase price and other material terms of the Backup Bid. Backup Bids shall be open and irrevocable until the earlier of (x) the first business day following closing of the Proposed Sale or (y) thirty (30) days following the last date of the All-Asset Auction (as may be adjourned). If the Winning Bidder fails to consummate a Proposed Sale, the Backup Bidder shall be deemed the new Winning Bidder, and the Debtors will be authorized, but not required, to consummate a Proposed Sale with the Backup Bidder.

(8)     Subject to the terms and conditions set forth in the Modified APA, in the event that a Winning Bidder fails to consummate the proposed transaction by the Closing Date, such bidder's deposit shall be forfeited to the Debtors as liquidated damages, and the Debtors shall be free to consummate the proposed transaction with the Backup Bidder at the final price bid by such bidder at the All-Asset Auction (or, if that bidder is unable to consummate the transaction at that price, the Debtors may consummate the transaction with the next higher bidder, and so forth) without the need for an additional hearing or order of the Court.

(9)     Within one (1) business day after conclusion of the All-Asset Auction, the Backup Bidder shall be required to supplement its Good Faith Deposit by the difference between its Qualified Bid and the Backup Bid multiplied by ten percent (10%).

(10)    <u>Modification of Procedures</u>. The Debtors may, after consulting with the Consultation Parties, announce at the Auctions modified or additional procedures for conducting the Auctions.

(11)    <u>Auction Results</u>: Within one (1) business day following the Auctions, the Debtors will cause the results of the Auction to be filed with the Court, docketed on the Court's electronic case filing ("<u>ECF</u>") system.