James L. Bromley
Sean A. O'Neal
Rahul Mukhi
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Attorneys for Punjab National Bank*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Firestar Diamond, Inc., *et al.*,[1] | Case No. 18-10509 (SHL) |
| Debtors. | (Jointly Administered) |

**PUNJAB NATIONAL BANK'S *EX PARTE* MOTION FOR AN ORDER, PURSUANT TO FED. R. BANKR. 2004, AUTHORIZING PUNJAB NATIONAL BANK TO ISSUE SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS AND AUTHORIZING THE EXAMINATION OF PERSONS**

[1] The Debtors are the following three entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Firestar Diamond, Inc. (2729), Fantasy, Inc.(1673), and A. Jaffe, Inc. (4756).

Punjab National Bank ("PNB"),[2] by and through its undersigned counsel, hereby moves this Court, on an *ex parte* basis, under Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and this Court's individual rules for entry of an order, substantially in the form attached hereto as Exhibit A (the "Order"), authorizing PNB to issue the subpoenas (the "Subpoenas") compelling (i) the oral examination, under oath, of Mihir Bhansali, Rahki Bhansali, Ajay Ghandi, Kunal Patel and Nirav Modi (collectively, the "2004 Witnesses"), each of whom has information that is relevant to PNB's claims against the Debtors, and (ii) the production of documents from each of the foregoing that are relevant to PNB's claims against the Debtors in response to document requests that are substantially in the form attached as Exhibit B.[3]

## PRELIMINARY STATEMENT

1. PNB hereby seeks authority to conduct focused discovery against the 2004 Witnesses concerning matters relevant for PNB's pursuit of claims against the Debtors. As the Court is well aware, the direct precipitating cause for these bankruptcy cases was the discovery of a massive fraud in the Republic of India ("India") involving Nirav Modi ("Modi"), the majority shareholder of the ultimate parent of the Debtors. PNB is the single largest victim of the Modi fraud.

2. As the Court is also aware, there are substantial connections between the Debtors and Modi. Among other things, the Debtors historically engaged in frequent transactions with numerous Modi affiliates and other Modi-related entities, including suspect exporters and

[2] Capitalized words not herein defined shall have the meaning ascribed to them in the *Objection of Punjab National Bank to Debtors' Motion for Entry of an Order (A)(i) Approving the Sale and Assignment of the Debtor's Assets Free and Clear of all Liens, Claims, Interests, and Encumbrances and (ii) Granting Related Relief, Dated: May 10, 2018*, ECF No. 148.

[3] Exhibit B is the proposed document requests for Mihir Bhansali, which PNB will adopt with the appropriate modifications for each respective respondent.

importers that are at the center of the Modi fraud. The Debtors' supply chain and back office support was provided by Modi Entities outside the United States. The Debtors' past and present management (including the former sole Director and President, Mihir Bhansali, and the current CFO, Ajay Ghandi) have held directorships and other positions at other Modi-related entities. Communications between Modi and representatives of the Debtors (including Mihir Bhansali) continued even after the filing of these Chapter 11 Cases. Mihir Bhansali resigned his position and his counsel proffered that he would invoke his constitutional right against self-incrimination if called to testify in connection with the Sale Hearing (although Bhansali has never formally invoked his Fifth Amendment rights in these proceedings).

3.     Just days ago, PNB learned at a status conference before this Court that the Debtors' CFO (Ajay Gandhi), Financial Controller (Kunal Patel) and numerous sales people and back office support employees have also resigned or given notice of their resignation. It is unclear what steps have been taken to protect information, systems and assets or otherwise ensure that information will be made available to creditors and other parties who have been wronged by the Modi fraud. In light of the foregoing, and the increasing risk that information will be more difficult to obtain with the passage of time, PNB now seeks authority to subpoena the 2004 Witnesses for depositions and document productions to obtain information relevant to PNB's claims against the Debtors. To the extent Bhansali (or anyone else) is inclined to invoke Fifth Amendment rights, it should be done in the context of a pending subpoena so that there is an appropriate record to support any adverse inferences against the Debtors and in favor of PNB.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND[4]

### A. Close Ties Between Nirav Modi and the Debtors

5. The Debtors have a well-documented history of transacting with various Modi affiliates, including Firestar International Ltd., Firestar Diamond International P Ltd. and Firestar Diamond FZE, that have been identified as *prima facie* beneficiaries of the Modi fraud. See ECF No. 151, Exhibit A: Order issued by the National Company Law Tribunal, Mumbai Bench, on February 23, 2018 in Union of India, ministry of Corporate Affairs v. Gitanjali Gems Ltd., et al., C.P. No. 277/2018 (the "NCLT Order") ¶ 5. These suspect entities allegedly hold more than $7 million in claims against the Debtors, which suggests that the Debtors engaged in highly suspect transactions with their affiliated entities. See ECF No. 69 (the "FDI Schedules") at 15-37; ECF No. 71 (the "A. Jaffe Schedules") at 8-34; ECF No. 73 (the "Fantasy Schedules") at 8-12. In addition, according to the Debtors' schedules, the total amount owed to certain suspect exporters and importers[5] is approximately $6.5 million. See FDI Schedules at 15-30; A. Jaffe Schedules at

[4] For the convenience of the Court and to avoid unnecessary repetition, we refer the Court to PNB's prior pleadings for additional background information on the Chapter 11 cases and the Modi fraud. See, e.g., ECF No. 148; ECF No. 181.

[5] Each of these entities bears two or more indicia of suspicious activity, including: (i) sharing either current or former key management personnel with the Modi Entities, (ii) possessing bank statements that show deposits or withdrawals with other suspicious entities, (iii) appearing on LOUs in which misuse has been observed in the fund trail, (iv) lacking an AWP reference number or Bill of Entry in the Customs Database (indicating physical movement of goods may not have taken place) and (v) having an overdue bill of exports overdue against the LOU importer. ECF No. 149 ¶ 5. PNB is continuing its review of available information and believes there are additional suspect exporters and importers that transacted with the Debtors in connection with the Modi fraud.

8-37. In fact, A. Jaffe's two largest creditors, Pacific Diamonds FZE and Tri Color Gems, are named as the "exporter/beneficiary" on LOUs already identified as fraudulent. See First Day Declaration, Ex. B; ECF No. 151, Exhibit F: Petition to the National Company Law Tribunal, Mumbai Bench, on February 23, 2018 in Union of India, ministry of Corporate Affairs v. Gitanjali Gems Ltd., et al., C.P. No. 277/2018 (the "NCLT Petition") at 95.

6. Likewise, there are substantial connections between Nirav Modi and the other 2004 Witnesses. Indian authorities have named Mihir Bhansali as one of the Respondents in the NCLT Order due to his involvement with Modi and the Modi entities. See NCLT Order at 2. Among other things, the NCLT Order enjoins Respondents, such as Mihir Bhansali, from "removal, transfer or disposal of funds, assets and properties . . . until further orders." NCLT Order ¶ 9.

7. Besides being President and sole Director of the Debtors until his abrupt recent resignation, Mihir Bhansali is a past director of Firestar Diamond International Pvt. Ltd, a company he incorporated with Modi,[6] and one of the Modi Entities known to have been involved in the fraud. In fact, Mr. Modi was quoted in a 2015 article as stating that 70% of his "company" reports to Mihir Bhansali.[7] Mihir Bhansali was also a former director of Firestar International Ltd., another affiliate of Modi.[8]

---

6 See Declaration of Rahul Mukhi dated June 11, 2018 (the "Mukhi Decl."), Ex. A.; id., Ex. B (explaining change of name).

7 *Can Nirav Modi Win New York?*, Fortune India, Oct. 5, 2015, available at https://www.fortuneindia.com/people/can-nirav-modi-win-new-york/100365.

8 See Mukhi Decl., Ex. C; id., Ex. D (explaining change of name); id., Ex. E (same).

8. Mihir Bhansali has also been involved with several suspect real estate transactions.[9] He has been identified as a manager of Central Park Real Estate LLC ("CPRE"), a wholly owned subsidiary of Firestar International Ltd. (another Modi Entity), which purchased a condominium apartment at 160 Central Park South, Unit 3601, in Manhattan for approximately $5 million.[10] Bhansali signed a deed for this property in his capacity as a manager of CPRE.[11] This appears to be the same property that Debtors' counsel refers to in its recently filed Bankruptcy Rule 2014 disclosure (ECF No. 190), which discusses Modi's involvement in conversations relating to the transferring of an entity's membership interest in CPRE to a trust. See ECF No. 190. Mihir Bhansali and Modi also incorporated a number of other entities for which Bhansali was listed as a director including Firestar Diamond Private Ltd.[12] and Jewelry Solutions International Private Ltd.[13] Mihir Bhansali was also listed as a director of several other Modi affiliates including Nirav Modi Limited,[14] Dream Trading Private Ltd.,[15] and AMI Merchandising Private Ltd.[16]

---

9 Among these suspicious transactions, Mihir Bhansali and his wife purchased apartment 24A at 50 Riverside Boulevard in New York City for approximately $7,100,000 on March 22, 2017, of which approximately $5.3 million was paid in cash. Only two days after the Debtors filed for bankruptcy, Mr. Bhansali transferred his interests property to his wife, Rakhi Bhansali. See ECF No. 148 at 9-10. This is separate and apart from his involvement in the purchase of 160 Central Park South, Unit 3601, in Manhattan for approximately $5 million as described below.

10 See Mukhi Decl. Ex. F at 3; id., Ex. G.

11 See Mukhi Decl., Ex. G.

12 See Mukhi Decl., Ex. H at 16.

13 See Mukhi Decl., Ex. I at 23.

14 See Search Results for Nirav Modi Limited, accessed on May 21, 2018, available at https://beta.companieshouse.gov.uk/company/09309560.

15 See Mukhi Decl., Ex. J.

16 See Mukhi Decl., Ex. K.

9. Rakhi Bhansali is married to Mihir Bhasali and like her husband, is a past director of AMI Merchandising.[17] Rakhi Bhansali also incorporated and was listed as a director of at least two entities appearing to be connected with Modi: Neeshal Marketing Private Ltd.[18] and Neeshal Merchandising Private Ltd.[19] These entities list email addresses with domain names tied to Modi entities, and share physical addresses with entities of which Modi was a director.[20] Modi was also a director at one time of Neeshal Merchandising Private Ltd.[21]

10. Ajay Ghandi is the current CFO of the Debtors. He is also closely tied to Nirav Modi and his associates. Like Mihir Bhansali, he was a director of Nirav Modi Limited until March 9, 2018.[22]

11. At a status conference on June 7, 2018, the Debtors informed the Court that Kunal Patel, the Debtors' controller, had resigned and was no longer employed by the Debtors. Hr'g Tr. 23:2-3, June 7, 2018 [Case No. 18-10509] (available to the Court upon request).

**B. Appointment of the Examiner**

12. On April 13, 2018 the Court granted the United States Trustee's motion for the appointment of an Examiner in order to, among other things, investigate the circumstances of the Modi fraud. On May 29, 2018, the Court approved the Examiner's motion for an order pursuant

---

17 Id.

18 See Mukhi Decl., Ex. L.

19 See Mukhi Decl., Ex. M at 22.

20 See Mukhi Decl., Ex. N, at 1; id., Ex. O, at 1-2. See also Jayshree P. Upadhyay, *Analysis: Nirav Modi Firms May Not Have Financials to Match PNB Fraud Magnitude*, hindustantimes (Feb. 26, 2018), available at https://www.hindustantimes.com/business-news/analysis-nirav-modi-firms-may-not-have-financials-to-match-pnb-fraud-magnitude/story-MR1YKPLgTy273FZZLaPdgP.html.

21 See Mukhi Decl., Ex. P.

22 See Search Results for Nirav Modi Limited, accessed on May 21, 2018, available at https://beta.companieshouse.gov.uk/company/09309560.

to Bankruptcy Rule 2004 authorizing the Examiner to depose witnesses and issue subpoenas for the production of documents. See ECF No. 191.

### C. Court's Request for Additional Evidence at Sale Hearing

13. On May 15, 2018, this Court held a hearing (the "Sale Hearing") to consider the Debtors' motion to approve a sale of certain A. Jaffe assets (ECF No. 60) and PNB's objection to such sale (ECF No. 148). A number of significant and disturbing facts about the Debtors' conduct during the Chapter 11 sales process came to light during the Sale Hearing, including that Mihir Bhansali had spoken to Modi at some time between the Petition Date and March 15, 2018 on at least one occasion. See Sale Hearing Transcript at 21: 6-8. At the conclusion of the Sale Hearing, this Court expressed serious concerns regarding the proposed sale, focusing on Mihir Bhansali's communications with Modi in particular and requesting additional information as to those communications, among other things. See id. at 139-46.

### D. Bhansali's Abrupt Resignation Depriving PNB of Discovery

14. On May 16, 2018, shortly after the Sale Hearing, PNB sent a Notice of Deposition to the Debtors seeking testimony from Mihir Bhansali pursuant to Rule 30(b)(1) of the Federal Rules of Civil Procedure. See ECF No. 182, Ex. G. PNB explained that the deposition would be "targeted to the issues identified by Judge Lane at the May 15, 2018 hearing with respect to the proposed sale of A. Jaffe Inc. to Parag Diamonds Inc." See ECF No. 182, Ex. H. Accompanying the Notice of Deposition, PNB also sent limited document requests targeting communications between the Debtors and Modi and the other issues raised at the Sale Hearing. See ECF No. 182, Ex. I.

15. On May 18, 2018, Debtors' counsel informed PNB that Mihir Bhansali had resigned as President of the Debtors and that the Debtors would not be able to produce Mihir Bhansali at the deposition. This Court convened a telephonic hearing later that afternoon to

discuss how these developments would impact the pending Sale Motion. See Telephone Conference Tr., May 18, 2018 [Case No. 18-10509] (available to the Court upon request). During the hearing, counsel for Mihir Bhansali represented that, if ordered to testify regarding the issues noted by this Court at the Sale Hearing, Mihir Bhansali would assert his constitutional right against self-incrimination. See id. at 28:5-7. Having failed to produce Mihir Bhansali's testimony, the Debtors filed a notice of withdrawal, without prejudice, of the Sale Motion on May 19, 2018. See ECF No. 177.

**E.    Appointment of Chapter 11 Trustee and Resignations of Other Key Employees**

16.    On June 7, 2018, the Court ordered the appointment of a Chapter 11 Trustee in response to the motions filed by PNB and the United States Office of the Trustee. See ECF Nos. 181, 185, 216.

17.    At a status conference on that same date, Debtors' counsel revealed that the Debtors' CFO, Controller and other key employees including sales people and back office employees had resigned or had delivered resignation notices.

**RELIEF REQUESTED**

18.    By this motion, PNB hereby moves this Court, on an *ex parte* basis, under Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and this Court's individual rules for entry of an order:

a)  authorizing PNB to issue the Subpoenas for deposition testimony and documents to Mihir Bhansali, Rahki Bhansali, Ajay Ghandi, Kunal Patel and Nirav Modi, each of whom has information that is relevant to PNB's claims against the Debtors; and

b)  authorizing PNB to use the following procedures in connection with PNB's issuance of the Subpoenas:

a. Service of the Subpoenas on Mihir Bhansali, Rahki Bhansali, Ajay Ghandi, and Kunal Patel by mail or hand delivery at the last known address of each of the respondents or by delivery to counsel of the respective respondent.

b. Service of the Subpoena on Nirav Modi by delivery to his counsel or by e-mail to his last known personal email addresses.[23]

c. Unless otherwise agreed to by PNB, respondents shall have fourteen (14) days from the service of a subpoena to either (1) produce to PNB all responsive documents requested in PNB's subpoena, except as provided below; or (2) file with the Bankruptcy Court an objection or response to the subpoena, with a hearing promptly scheduled, as permitted by the Court.

d. Unless otherwise agreed by PNB, if a respondent withholds any documents from the production based upon a claim of privilege, such respondent is directed to provide counsel for PNB with a privilege log, containing the information required under Bankruptcy Rule 7026, within fourteen (14) days of the service of a subpoena upon the respondent.

e. The respondent is directed to submit to oral examination upon reasonable notice and, absent other agreement with PNB, in no event more than

[23] Nirav Modi has been a fugitive from Indian authorities since February and it has been recently reported that he is in the United Kingdom, where he may be seeking asylum. See *Indian Gem Billionaire Nirav Modi 'Fled to London,'* BBC News (June 11, 2018), available at https://www.bbc.com/news/business-44436258 (reporting Modi to be currently in London). Courts have permitted the use of e-mail to serve subpoenas on individuals abroad who are difficult to locate. See, e.g., In re Irish Bank Resolution Corp., 559 B.R. 627, 638 (Bankr. D. Del. 2016) (allowing e-mail service of a Rule 2004 subpoena where the party's location was unknown and where the Rule 2004 movants "lack[ed] other methods of communication."); In re Int'l Telemedia Assocs, 245 B.R. 713, 718 (Bankr. N.D. Ga. 2000) (allowing e-mail service on defendant who was a "moving target" such that it was "virtually impossible . . . to find him and effect service by . . . traditional means.").

fourteen (14) days from the date of service of a deposition subpoena upon such respondent.

f. Notwithstanding the foregoing, respondents shall not be subject to the fourteen (14) day time limitation set forth above subsections (a) and (b) with respect to the production of electronic documents (or an applicable privilege log), but respondents shall use their reasonable best efforts to either produce such electronic documents or a privilege log, as applicable, as soon as is reasonably practicable, including on a rolling basis.

## ARGUMENT

19. Bankruptcy Rule 2004(a) provides that "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a). Under this rule, the "attendance of an entity for examination and the production of documentary evidence may be compelled in the manner provided in Rule 9016 for the attendance of witnesses at a hearing or trial." Fed. R. Bankr. P. 2004(c). In turn, Bankruptcy Rule 9016 makes Rule 45 of the Federal Rules of Civil Procedure, which governs subpoenas, applicable in cases under the Bankruptcy Code. Fed. R. Bankr. P. 9016.

20. An examination under Rule 2004 may relate "to the acts, conduct or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b). It is "well settled that the scope of examination allowed under Rule 2004 is broader than discovery allowed under the Federal Rules of Civil Procedure and may be in the nature of a 'fishing expedition.'" In re Hughes, 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002). Rule 2004 discovery allows a party in interest to "determin[e] the nature and extent of the bankruptcy estate, [including

by] revealing assets, examining transactions and assessing whether wrongdoing has occurred." In re Recoton Corp., 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004).

21. While some courts require a showing of good cause if the target of the requested discovery objects, see, e.g., In re Metiom, Inc., 318 B.R. 263, 268 (S.D.N.Y. 2004); In re Hammond, 140 B.R. 197, 201 (S.D. Ohio 1992), the express language of Rule 2004 does not impose a "good cause" standard or other burden on the movant. In the end, whether to authorize the requested discovery is within the sound discretion of the bankruptcy court. See, e.g., In re Hammond, 140 B.R. at 200.

22. PNB is a party in interest in this case. Courts construe the meaning of "party in interest . . . broadly to insure fair representation of all constituencies impacted in any significant way by a Chapter 11 case." In re Stone Barn Manhattan LLC, 405 B.R. 68, 74 (Bankr. S.D.N.Y. 2009) (internal citation and quotations omitted). The relevant inquiry turns on "whether [the] party has a 'sufficient stake' in the outcome of that proceeding, which can include having a pecuniary interest directly affected by the bankruptcy proceeding." In re Heating Oil Partners, LP, 422 F. App'x 15, 17 (2d Cir. 2011) (internal citation omitted). As the second largest public bank in India and the largest victim of the $2 billion dollar fraud committed by Modi and the Modi Entities, which include the ultimate parents of the Debtors, PNB indisputably is a party in interest, with a compelling interest in identifying fraudulent conduct and tracing and recovering the misappropriated public funds.

23. PNB is entitled to discovery of the information requested in its Subpoenas. Any third party "who can be shown to have a relationship with the debtor can be made subject to a Rule 2004 investigation." In re Ionosphere Clubs, Inc., 156 B.R. 414, 432 (S.D.N.Y. 1993); see also In re China Fishery Grp. Ltd., No. 16-11895 (JLG), 2017 WL 3084397, at *7 (Bankr. S.D.N.Y. July

19, 2017) (ordering Rule 2004 discovery against one of the Debtors' creditors to identify potential claims the estate may have against that creditor).

24. Each of the 2004 Witnesses is subject to Rule 2004 discovery due to its relationship with the Debtors:

- Mihir Bhansali's significant ties with the Debtors are without question; he was the President and sole Director of the Debtors as of the Petition Date and remained actively involved in managing the Debtors and the sale process until his resignation on May 18, 2018.
- Rakhi Bhansali has been listed as the director of at least three entities affiliated with Modi (AMI Merchandising Private Ltd., Neeshal Marketing Private Ltd., and Neeshal Merchandising Private Ltd.), and incorporated at least two of these entities. In addition, given the circumstances of this case, there are significant questions as to the purchase of a $7,000,000 apartment in Manhattan by Mihir and Rakhi Bhansali in 2017 and the subsequent transfer of Mihir Bhansali's interest to Rakhi Bhansali just two days after the Petition Date in violation of the NCLT Order.
- Ajay Ghandi is the current CFO of the Debtors who only recently gave notice of his intent to resign his position.
- Kunal Patel was the Controller for the Debtors, having recently resigned from his position.
- Nirav Modi is not only the Debtors' ultimate shareholder but has had contact with the management of the Debtors after the Petition date on at least one occasion. His close relationship with the Debtors is evidenced by the fact that

Mihir Bhansali and counsel for the Debtors called him before initiating these Chapter 11 Cases and that Modi later reached out to counsel for the Debtors directly to inquire after the status of these Chapter 11 Cases. See ECF No. 190 at 2-3.

25. PNB has shown good cause for issuing the Subpoenas. "[G]ood cause is shown if the Rule 2004 examination sought is necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice." In re Metiom, Inc., 318 B.R. at 268 (internal citation and quotations omitted) (affirming the Bankruptcy Court's decision to grant a Rule 2004 discovery where even though the information was "not strictly necessary to establish a potential claim against [a non-party to the bankruptcy], a refusal to order such an examination would result in undue hardship to [the movant], if not injustice"). Rule 2004 discovery is necessary to confirm PNB's claims against the Debtors and their insiders, as well as its prima facie constructive trust claims.[24] More information is needed, and PNB remains concerned that the departure of key employees will adversely affect PNB's ability to obtain such information.

26. Depriving PNB of the opportunity to examine the 2004 Witnesses would indisputably subject PNB to undue hardship. In addition to being the President and sole Director of the Debtors, Mihir Bhansali has been involved with multiple Modi Entities throughout the period of the ongoing fraud and may be able to provide information regarding which of the

---

[24] Under New York law, which determines whether a constructive trust may be imposed, the following elements are relevant: "(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of the subject res made in reliance on that promise; and (4) unjust enrichment." *In re First Cent. Fin. Corp.*, 377 F.3d 209, 212 (2d Cir. 2004) (internal citation and quotations omitted). Constructive trust is a yielding formula and therefore not all of these elements must be satisfied. *See Golden Budha Corp. v. Canadian Land Co. of Am., N.V.*, 931 F.2d 196, 202 (2d Cir. 1991) (concluding district court erred in finding that complaint failed to allege constructive trust where three elements were not satisfied, as the plaintiff had adequately pleaded that "defendants [held] property they should not retain, in good conscience and equity, under the circumstances revealed").

Debtors' assets are proceeds of that fraud. His abrupt resignation to avoid testifying in his capacity as President of the Debtors unjustly deprived PNB of the opportunity to obtain further evidence in support of its claim. Similarly, Rakhi Bhansali, who has incorporated and served as director for several Modi affiliates, will also be able to provide more information with respect to the Modi fraud generally and information specifically relating to whether the $7,000,000 apartment, transferred to her two days after the Petition Date, constitutes proceeds of the fraud. As CFO of the Debtors, and a former director of various Modi Entities, Ghandi is exceedingly likely to have significant knowledge about the Debtors' connections to other Modi Entities that have been implicated in the Modi fraud. Likewise, Kunal Patel as Controller would have significant knowledge of the Debtors' accounting activities and should therefore be aware whether Debtors engaged in suspicious transactions with other Modi Entities. Obviously, as the main perpetrator of the fraud, Modi will also be able to provide PNB with information relating to proceeds of that fraud being directed to the Debtors. PNB's need for the requested discovery is especially acute as each of the 2004 Witnesses likely has information in their custody and control to which the Debtors do not have access.

27.    The appointment of the Examiner and his ongoing discovery efforts do not preclude PNB from engaging in its own Rule 2004 discovery. See In re Enron Corp., 281 B.R. 836, 843 n.7 (Bankr. S.D.N.Y. 2002) ("The fact that an investigation by a creditors' committee, debtor, examiner, or trustee is ongoing regarding the subject matter of a proposed Rule 2004 examination does not preclude the use of Rule 2004 by a party in interest."); cf. In re Residential Capital, LLC, 474 B.R. 112, 115 n.4 (Bankr. S.D.N.Y. 2012) ("Approving the 2004 Motion did not preempt the Examiner Motion . . . the Court fully expects that a non-duplicative investigation will be conducted, with complete cooperation expected between the Debtors, the Creditors Committee,

and all other parties."). The Court has already expressed that the Debtors must share information with interested parties regardless of the appointment of an examiner. See Hr'g Tr. 120:9-17, March 28, 2018 [Case No. 18-10509] (available to the Court upon request) ("[I]t's important to try to get as much information as possible to the parties. There's no need to wait for an examiner. The debtor will be putting together information to provide to the examiners, and I don't see any reason why . . . [t]hat information, as much as possible, can't be provided.").[25]

28. Additionally, the fact that Bhansali's counsel previously proffered that Bhansali would assert his Fifth Amendment rights if called to testify in connection with the Sale Hearing, does not obviate the need to issue the instant subpoena. The Sale Motion was withdrawn and Bhansali never personally invoked his rights against self-incrimination. To the extent Bhansali (or anyone else) is inclined to not testify on this basis in connection with the Subpoenas, he or she should properly invoke those Fifth Amendment rights in the context of a pending subpoena so that there is an appropriate record to support any adverse inferences against the Debtors and in favor of PNB's claims.

29. PNB respectfully requests that this Court enter the Order, granting this Motion and authorizing issuance of the Subpoenas. PNB requests that the Court order that the document productions be made on or before the date that is fourteen (14 days) after service, at the offices of Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006.

[25] The Debtors and the Examiner agreed in the Stipulation and Order Governing Examiner Discovery that PNB preserved its right to seek Rule 2004 discovery. See ECF No. 218. The Rule 2004 discovery that PNB now requests focuses on its own potential claims. To minimize any potential duplication with the Examiner's investigation, PNB is willing to work cooperatively with the Examiner and utilize the Examiner's centralized document depository to the extent possible. See ECF No. 218.

## NOTICE

30. Pursuant to this Court's individual rules, "[r]equests for 2004 orders may be submitted *ex parte* but the Court in its discretion may require notice and a hearing." Rule 2004 examinations are routinely ordered *ex parte*. See In re Silverman, 36 B.R. 254, 258 (Bankr. S.D.N.Y. 1984) ("the order authorizing [Rule 2004] examination is ordinarily entered *ex parte*."); see also In re Metiom, Inc., 318 B.R. 263, 268 (S.D.N.Y. 2004).

31. Notice of this Motion will be provided to (a) the Office of the United States Trustee; (b) counsel to the Debtors, Klestadt Winters Jureller Southard & Stevens LLP; (c) counsel to the Examiner, Baker & Hostetler LLP; (d) counsel to the Ministry of Corporate Affairs of the Union of India, White & Case LLP (e) counsel to Israel Discount Bank, Troutman Sanders LLP; and (f) counsel to HSBC Bank, Allen & Overy LLP. In light of the nature of the relief requested, PNB submits that no other or further notice need be provided.

32. No previous request for the relief sought herein has been made by PNB to this or any other court.

## CONCLUSION

WHEREFORE, PNB respectfully requests that the Court grant the relief requested herein on an *ex parte* basis and such other and further relief as it deems just and proper.

Dated: June 14, 2018

/s/ Sean O'Neal
CLEARY GOTTLIEB STEEN & HAMILTON LLP
James L. Bromley
Sean A. O'Neal
Rahul Mukhi
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Attorneys for Punjab National Bank*

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Firestar Diamond, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-10509 (SHL)<br><br>(Jointly Administered) |

**ORDER GRANTING PUNJAB NATIONAL BANK'S *EX PARTE* MOTION FOR AN ORDER, PURSUANT TO FED. R. BANKR. 2004, AUTHORIZING PUNJAB NATIONAL BANKTO ISSUE SUBPOENAS FOR THE PRODUCTION OF DOCUMENTS AND AUTHORIZING THE EXAMINATION OF PERSONS**

Upon *Punjab National Bank's Ex Parte Motion for an Order, Pursuant to Fed. R. Bankr. 2004, Authorizing Punjab National Bank to Issue Subpoenas for the Production of Documents and Authorizing the Examination of Persons* [ECF No. ___ ][2]; the Court having reviewed the Motion; and the Court having found good and sufficient cause appearing; and the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue is proper in this district pursuant to 28 U.S.C. §§1408 and 1409, (iii) and after due deliberation the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their estates, creditors and all parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

---

1 The Debtors are the following three entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Firestar Diamond, Inc. (2729), Fantasy, Inc.(1673), and A. Jaffe, Inc. (4756).

2 Capitalized terms not otherwise defined herein shall have the meanings ascribed to the in the Motion.

**ORDERED**, that the Motion is granted as provided herein; and it is further

**ORDERED**, that Punjab National Bank ("PNB") is hereby authorized to issue subpoenas (the "Subpoenas") and compel (i) the oral examination, under oath, of Mihir Bhansali, Rahki Bhansali, Ajay Gandhi, Kunal Patel and Nirav Modi and (ii) the production of documents from each of the foregoing; and it is further

**ORDERED**, that the following procedures in connection with PNB's issuance of the Subpoenas are hereby approved:

a) Service of the Subpoenas on Mihir Bhansali, Rahki Bhansali, Ajay Ghandi, and Kunal Patel by mail or hand delivery at the last known address of each of the respondents or by delivery to counsel for the respective respondent.

b) Service of the Subpoena on Nirav Modi by delivery to his counsel or by e-mail to his last known personal email address(es).

c) Unless otherwise agreed to by PNB, respondents shall have fourteen (14) days from the service of a subpoena to either (1) produce to PNB all responsive documents requested in PNB's subpoena, except as provided below; or (2) file with the Bankruptcy Court an objection or response to the subpoena, with a hearing promptly scheduled, as permitted by the Court.

d) Unless otherwise agreed by PNB, if a respondent withholds any documents from the production based upon a claim of privilege, such respondent is directed to provide counsel for PNB with a privilege log, containing the information required under Bankruptcy Rule 7026, within fourteen (14) days of the service of a subpoena upon the respondent.

e) The respondent is directed to submit to oral examination upon reasonable notice and, absent other agreement with PNB, in no event more than fourteen (14) days from the date of service of a deposition subpoena upon such respondent.

f) Notwithstanding the foregoing, respondents shall not be subject to the fourteen (14) day time limitation set forth above subsections (a) and (b) with respect to the production of electronic documents (or an applicable privilege log), but respondents shall use their reasonable best efforts to either produce such electronic documents or a privilege log, as applicable, as soon as is reasonably practicable, including on a rolling basis; and it is further

**ORDERED**, that PNB will serve each a copy of this Order on the target of each of the Subpoenas; and it is further

**ORDERED**, that PNB's issuance of the Subpoenas are governed by Rule 9016 of the Federal Rules of Bankruptcy Procedure; and it is further

**ORDERED**, that nothing herein shall limit the substantive rights of any target of a subpoena under applicable law to object to or oppose any subpoena PNB has served, or seek an extension of time to respond to such subpoena; and it is further

**ORDERED**, that PNB and its counsel may take all actions necessary to effectuate the relief granted in this Order; and it is further

**ORDERED**, that this Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the implementation of this Order.

Dated: ____________________, 2018
New York, New York

________________________________
The Honorable Sean H. Lane
United States Bankruptcy Judge

# EXHIBIT B

Schedule A

**DEFINITIONS**

1. Punjab National Bank incorporates by reference herein the Uniform Definitions in Discovery Requests set out in Rule 26.3 of the Local Civil Rules of the United States District Court for the Southern and Eastern Districts of New York (the "Local Civil Rules"), as made applicable by Rule 2004-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Bankruptcy Rules").

2. "Account" means each and every account, borrowing, credit or cash advance facility (including any credit, debit, ATM or similar card), deposit, brokerage, financial instrument, fund, investment property, other property, tangible or intangible, lease, loan, mortgage, note, money or thing of value held, maintained, made or extended by, to or from the account holder in the account holder's name or for the account holder's benefit, or any other person or entity that the account holder owns or controls or on whose behalf the account holder has power or authority or otherwise purports to act, alone or with other persons, or by the account holder for the benefit or use of any other person or entity.

3. "Accounting Records" means all books, records, bank statements, accountings, general ledgers, sales ledgers, purchase ledgers, party ledgers, invoices, vouchers and any other similar Documents.

4. "Affiliate" has the meaning set forth in Section 101(2) of the Bankruptcy Code.

5. "A. Jaffe" means A. Jaffe, Inc.

6. "All," "any," and "each" shall each be construed, pursuant to Local Rule 2004-1, as encompassing any and all.

7. "And" and "or" shall be construed, pursuant to Local Rule 2004-1, either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

8. "Applicable Period" means January 1, 2011 through the date of your response to these requests.

9. "AVD" means AVD Trading, Inc., including any of its Representatives.

10. "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq.

11. "Chapter 11 Cases" means the Chapter 11 cases jointly administered at Case No. 18-10509 in the United States Bankruptcy Court for the Southern District of New York pursuant to an order of the Bankruptcy Court dated March 9, 2018 at Docket No. 24.

12. "Communication" means, pursuant to Local Rule 2004-1, the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

13. "Concerning" means, pursuant to Local Rule 2004-1, relating to, referring to, describing, evidencing or constituting.

14. "Connection" means any relationship, including any financial relationship, governance relationship, familial relationship or personal relationship, between a Person and another Person.

15. "Contact Information" means any phone numbers, e-mail addresses, social media addresses, mailing addresses or other contact addresses in whatever form.

16. "Debtor" means any Person that is a debtor and debtor in possession in the Chapter 11 Cases, including any of its Representatives. For the avoidance of doubt, "Debtor" includes Mihir Bhansali and Ajay Ghandi.

17. "Document," pursuant to Local Rule 2004-1, is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A Draft or non-identical copy is a separate document within the meaning of this term. For the avoidance of doubt, Documents shall include any documented Communications.

18. "Draft" means any earlier, preliminary, preparatory, or tentative version of all or part of a document, whether or not it was superseded by a later draft and whether or not the terms of the draft are the same as or different from the terms of the final document.

19. "Fantasy" means Fantasy, Inc.

20. "FDI" means Firestar Diamond, Inc.

21. "FD International" means Firestar Diamond International, Inc., including any of its Representatives.

22. "FHL" means Firestar Holdings Limited, including any of its Representatives.

23. "FGI" means Firestar Group, Inc., including any of its Representatives.

24. "FIL" means Firestar International Limited, including any of its Representatives.

25. "First Day Declaration" means the *Declaration of Mihir Bhansali, President of the Debtors, Containing Information Required Pursuant to Local Bankruptcy Rule1007-2 and in Support of the Debtors' First Day Motions*, in In re: Firestar Diamond, Inc., et al, Case No. 18-10509 (SHL) (Bankr. S.D.N.Y.) [Docket No. 2].

26. "Fraud" means the fraudulent activities described in Paragraphs 2, 3 and 4 of the NCLT Order and/or Paragraphs 33 and 34 of the First Day Declaration and/or the order of the Bankruptcy Court directing the appointment of an examiner, dated April 13, 2018 at Docket No. 103 or any other fraudulent conduct by Modi or any Modi Entity.

27. "Identify," when referring to a Person, pursuant to Local Rule 2004-1, means to give, to the extent known, the Person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment. Once a Person has been identified in accordance with this subparagraph, only the name of that Person need be listed in response to subsequent discovery requesting the identification of that Person.

28. "Identify," when referring to documents, pursuant to Local Rule 2004-1,means to give, to the extent known, the (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s). In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy Federal Rule of Civil Procedure 33(d).

29. "Letters of Undertaking" means any of the letters of undertaking described in Paragraph 33 of the First Day Declaration or Paragraphs 2 and 4 of the NCLT Order or any similar letter of undertaking or bank guarantee.

30. "NCLT Order" means that certain order issued on February 23, 2018 by the National Company Law Tribunal, Mumbai Bench.

31. "NMI" means Nirav Modi, Inc. fka Firestar Jewelry, Inc., including any of its Representatives.

32. "Modi" means Nirav Modi, a direct or indirect shareholder of the Debtors, and Modi's family including Nishal Modi, Deepak Modi, Purvi Mehta, Ami Modi and Mayank Mehta.

33. "Other Modi Entity" means each of Modi, FIL, FHL, Synergies, FGI, FD International, AVD, and NMI, and any other Affiliate of Modi other than the Debtors, and any other person Connected with Modi, as well as any Representative of any of the foregoing.

34. "Payment" means any and all exchanges of funds or other consideration that may also be referred to as a payment, coupon payment, special coupon payment, redemption payment, interest payment, dividend payment, distribution, extraordinary interest payment, partial redemption payment, principal repayment, rebate, loan, advance, wire transfer, gift and/or other transfer, whether or not in cash.

35. "Person," pursuant to Local Rule 2004-1, means any natural person or any legal entity, including any business or governmental entity or association.

36. "Potential Purchaser" means any Person who has made any "expressions of interest in purchasing some or all of the Debtors' business operations," as referenced in Paragraph 48 of the First Day Declaration.

37. "Representative" means any agent, assign, director, employee, officer, representatives or any other Person acting or purporting to act on its behalf, and any predecessor or successor of the foregoing.

38. "Second Supplemental Affidavit" means the *Second Supplemental Affidavit and Disclosure of Ian R. Winters Under Bankruptcy Rule 2014 in Support of Application for an Order Approving the Retention of Klestadt Winters Jureller Southard & Stevens, LLP as General Bankruptcy Counsel to the Debtors Nunc Pro Tunc to the Petition Date,* ¶ 10-15, in In re: Firestar Diamond, Inc., et al, Case No. 18-10509 (SHL) (Bankr. S.D.N.Y.) [Docket No. 190].

39. "Suspect Entities" means each of Eternal Diamond Corp. Ltd., Fancy Creations Company, Ltd., World Diamond Distribution FZE, Eternal Diamonds Corp., Ltd., Empire Gems FZE, Pacific Diamonds FZE, and Tri Color Gems, World Diamond Distribution FZE, Auragem Company Ltd., Brilliant Diamonds Ltd, Dg Brothers FZE, Diagems FZC, Hamilton Precious Traders Ltd FZCO, Himalayan Traders FZE, Sino Traders Ltd., Sunshine Gems Ltd., Unique

Diamond and Jewellery FZC, Unity Trading FZE, Diagems FZE, Universal Fine Jewellery FZE, Firestone Inc., Vista Jewellery FZE, Komal Gems, Nipur BVBA, Solar Exports Ltd., Firestone Diamond PVT Ltd., Firestone International Pvt Ltd., Diamond R Us, as well as any Representative of the any of the foregoing.

40. "Synergies" means Synergies Corporation, including any of its Representatives.

41. "U.S. Parent" means each of Synergies and FGI.

42. "You" or "your" as used herein means the person to whom these document requests are addressed, including any affiliates, employees, partners, representatives, or agents of the person to whom these document requests are addressed.

43. The use of the singular form of any word includes the plural and vice versa, and the use of the term "including" means including without limitation.

INSTRUCTIONS

1. In addition to following the rules of construction in Rule 26.3(d) of the Local Civil Rules, whenever necessary to bring within the scope of this Request documents that might otherwise be construed to be outside its scope: (a) the use of a verb in any tense shall be construed as the use of that verb in all other tenses; and (b) the use of the feminine, masculine or neuter genders shall include all genders.

2. No paragraph herein shall be construed with reference to any other paragraph for the purpose of limitation.

3. Unless otherwise indicated, the relevant time period for purposes of these Requests is between January 1, 2011 and the date of production.

4. All documents shall be produced in the manner in which they are maintained in the usual course of business. A request for a document shall be deemed to include a request for any and all file folders or binders within which the document was contained,

transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document in addition to the document itself.

5. All documents requested herein shall be produced in their entirety, along with any attachments, drafts, and non-identical copies, including copies that differ due to handwritten notes or other notes or markings.

6. Provide all ESI in the forms and manner specified in the attached ESI Production Specifications (Appendix A).

7. If you withhold any document (including any e-mail within a longer chain) that is responsive to these requests under a claim of privilege or upon any other ground, you shall comply with the requirements of Federal Rule of Civil Procedure 26(b)(5)(A). If a portion of a document contains information subject to a claim of privilege, only that portion shall be redacted and the remainder shall be produced.

8. In the event that any document called for by this Request has been destroyed or discarded, respondent shall provide a written document identifying the document so lost, discarded, or destroyed as completely as possible, providing at least the following information: (i) the type of document withheld; (ii) any addressor and addressee; (ii) any indicated or blind copy recipients; (iii) the document's date, subject matter, number of pages, and attachments or appendices; (iv) all persons to whom the document was distributed, shown or explained; (v) the document's date of destruction or discard, manner of destruction or discard, and reason for destruction or discard; and (vi) the persons authorizing and carrying out such destruction or discard.

9. If objection is made to any of the requests, the response shall state whether documents are being withheld from inspection and production on the basis of such objection, or

whether inspection and production of the responsive documents will occur notwithstanding such objection.

10. If there are no documents responsive to any particular request, the response shall state so in writing.

11. This request is continuing in nature. In accordance with Rule 26(e) of the Federal Rules of Civil Procedure, you are required promptly to serve supplementary responses and produce additional documents if you obtain further or different information.[1]

**DOCUMENTS REQUESTED**

Request No. 1:

All Communications during the Applicable Period between Modi and You or between Modi and a Debtor, including for the avoidance of doubt, a Representative of a Debtor.

Request No. 2:

All Documents concerning any Communications responsive to Request No. 1 above, including, but not limited to, phone and toll records of or concerning such Communications, Documents describing or otherwise memorializing such Communications, and any notes (in whatever form) of such Communications.

Request No. 3

All Documents sufficient to identify Contact Information used by Modi in any Communications responsive to Request No. 1 above.

Request No. 4

All Documents sufficient to identify Contact Information used by you, or any Representative of a Debtor in any Communications responsive to Request No. 1 above.

Request No. 5

All Communications during the Applicable Period between a Debtor and any Other Modi Entity concerning the Chapter 11 Cases.

[1] See Appendix A for additional instructions.

Request No. 6

All Communications during the Applicable Period between a Debtor and any Other Modi Entity concerning a potential sale of any assets of the Debtors.

Request No. 7

All Communications concerning the Fraud, including all such Communications between a Debtor and any Other Modi Entity, and all Documents concerning such Communications.

Request No. 8

All Documents between a Debtor and any Other Modi Entity concerning the Debtors' financing.

Request No. 9

Any Document concerning any Connection between You, or any Representative of a Debtor, or Modi and any Potential Purchaser, including any Communications concerning employment by a Potential Purchaser of You or a Representative of a Debtor.

Request No. 10

All Communications during the Applicable Period concerning any Letters of Undertaking.

Request No. 11

All Communications during the Applicable Period between a Debtor and any Other Modi Entity concerning any Payments from, or on behalf of, any Other Modi Entity to a Debtor.

Request No. 12

All Communications during the Applicable Period between a Debtor and any Other Modi Entity concerning any Payments from, or on behalf of, any Debtor to any Other Modi Entity.

Request No. 13

All Documents created during the Applicable Period concerning a potential Chapter 11 filing by, or on behalf of, any Other Modi Entity.

Request No. 14

All Documents concerning and/or reflecting the role of Modi and any Other Modi Entity in the day-to-day operations of the Debtors during the Applicable Period.

Request No. 15

Without any limitation of time, all Documents concerning and/or reflecting Your role in the day-to-day operations or strategic planning of any Other Modi Entity.

<u>Request No. 16</u>

All Documents concerning and/or reflecting the role of Modi and any Other Modi Entity in the strategic planning for the Debtors during the Applicable Period.

<u>Request No. 17</u>

All Documents concerning job descriptions, roles and responsibilities, relationship hierarchies and reporting relationships of the management of any Debtor and any Other Modi Entity, whether formal or informal, including organizational charts or diagrams.

<u>Request No. 18</u>

All Accounting Records of the Debtors and/or any Other Modi Entity during the Applicable Period.

<u>Request No. 19</u>

All Documents, including all Accounting Records, concerning any intercompany Accounts, debts, contracts, agreements or arrangements between a Debtor and any Other Modi Entity during the Applicable Period, including the "Loan Receivables," "Loan Payables," and the "Sub-Debt" identified in Exhibit A of the First Day Declaration. For the avoidance of doubt, this request also includes all Accounting Records or contracts between the Debtors and any Other Modi Entities concerning any transactions between them, as well as any general, sales or purchase ledgers showing any transactions with any Other Modi Entity.

<u>Request No. 20</u>

All Documents, including all Accounting Records, concerning the nature and extent of the relationship between the Debtors' cash management system and any Other Modi Entity, including any practice, agreement or other arrangement between a Debtor and any Other Modi Entity with respect to the Debtors' cash management system.

<u>Request No. 21</u>

All Documents concerning any Payment between a Debtor and any Other Modi Entity during the Applicable Period, including Documents showing the timing and method of Payment and the purpose for such Payment.

<u>Request No. 22</u>

All Documents, including all Accounting Records, concerning any accounts payable owed by a Debtor to any Other Modi Entity, including Documents showing the transactions underlying the

accounts payable, the purpose of such transactions, the timing of such transactions, and the identities of such Debtor and Other Modi Entity.  Without limiting the foregoing, such Documents include any Documents concerning any "accounts payable" identified in Exhibit A of the First Day Declaration that are owed to any Other Modi Entity.

Request No. 23

Without limitation of timing, all Documents concerning any Connection (including any compensation, benefits, employment, board appointments or other Connection) before and during the Applicable Period between You or any Person employed by the Debtors and any Other Modi Entity, including all Documents concerning or reflecting Your position, title or job description, in respect of any Other Modi Entity.

Request No. 24

All Documents concerning any management decisions made by You in connection with a Debtor, including but not limited to, transfer of money, cash movement, wire transfers, check authorizations, purchase and sales, valuations and inventory management.

Request No. 25

All Documents identifying any employee or board member of a Debtor who is currently or was previously an employee of any Other Modi Entity during the Applicable Period.

Request No. 26

All Documents identifying any employee or board member of a Debtor who is currently or was previously a board member of any Other Modi Entity during the Applicable Period.

Request No. 27

All Documents concerning the claimed restrictions placed on "various assets and properties belonging to Nirav Modi and properties belonging to various entities in which he had a direct or indirect ownership interest" referenced in Paragraph 36 of the First Day Declaration, and how such claimed restrictions have impacted the back office support and termination of supply chain operations of the Debtors or Person employed by the Debtors, as referenced in the First Day Declaration.

Request No. 28

All Documents concerning the "back office support" and "supply chain" of the Debtors referenced in Paragraphs 37 and 38 of the First Day Declaration.

Request No. 29

All Documents concerning transactions between a Debtor and the "factories in India" referenced in Paragraph 37 of the First Day Declaration.

Request No. 30

All Documents, including all Accounting Records, concerning the claimed "back office and support functions" referenced in Paragraph 37 of the First Day Declaration.

Request No. 31

All Documents, including all Accounting Records, concerning the claimed "sudden loss of [the Debtors'] supply chain and back office support" referenced in Paragraph 38 of the First Day Declaration.

Request No. 32

All Documents concerning the purchase of an apartment located at One Riverside Park, 50 Riverside Boulevard, Apartment #24A in Manhattan, New York on or around March 13, 2017 (the "New York Apartment") by Mihir Bhansali for a purchase price of over $7 million.

Request No. 33

All Documents concerning the sale of the New York Apartment on or around February 28, 2018 for a purchase price of less than $2 million.

Request No. 34

All Documents concerning the purchase, sale or transfer of an apartment located at 23 Park Avenue, Suite 2A, New York, NY 10016 (the "Park Ave. Apartment").

Request No. 35

All Documents concerning the purchase, sale or transfer of an apartment located at 160 Central Park South, Unit #3601, New York, NY 10019 (the "Central Park South Apartment").

Request No. 36

All Documents concerning the purchase of any real property interest in the United States other than the New York Apartment, the Park Ave. Apartment or the Central Park South Apartment, by or on behalf of a Debtor or any Other Modi Entity during the Applicable Period.

Request No. 37

All Documents concerning any involvement of a Debtor or any Other Modi Entity in the purchase, sale or transfer of the New York Apartment, the Park Ave. Apartment, the Central

Park South Apartment, or any other real estate property owned by You, including any Communications with any potential buyer, seller or lender with respect thereto.

Request No. 38

All Documents, including all Accounting Records, concerning Central Park Real Estate LLC, including any transactions, agreements, or understandings involving property owned by Central Park Real Estate LLC and any trust created in connection with such property.

Request No. 39

All Documents created during the Applicable Period concerning the receipt by any Debtor of any proceeds, funding, loans or other consideration, directly or indirectly, from any Letters of Undertaking.

Request No. 40

All Documents created during the Applicable Period concerning the receipt by any Other Modi Entity of any proceeds, funding, loans or other consideration, directly or indirectly, from any Letters of Undertaking.

Request No. 41

All Documents concerning the transfer to, or receipt by, a Debtor or any Other Modi Entity of proceeds from any Letters of Undertaking.

Request No. 42

All Documents concerning any transfer to, or receipt by, a Debtor or any Other Modi Entity of funds from a foreign branch of an Indian bank described in Paragraph 33 of the First Day Declaration.

Request No. 43

All Documents concerning any participation in the Fraud by a Debtor including any Representative of a Debtor.

Request No. 44

All Documents concerning any knowledge of the Fraud by a Debtor including any Representative of a Debtor.

Request No. 45

All Documents, including all Accounting Records, concerning transactions, agreements, or understandings between a Debtor and a Suspect Entity.

Request No. 46

All Documents concerning any participation in the Fraud by a Suspect Entity including any Representative of a Suspect Entity.

Request No. 47

All Documents concerning any knowledge of the Fraud by a Suspect Entity including any Representative of a Suspect Entity.

Request No. 48

All Communications between a Debtor, including a Representative of a Debtor, and any Suspect Entity during the Applicable Period.

Request No. 49

All Communications between You and any Suspect Entity during the Applicable Period.

Request No. 50

All Documents, including Accounting Records, concerning the "organizational restructuring" in 2017 referenced in paragraph 14 of the Second Supplemental Affidavit.

Request No. 51

All Documents concerning the selection and engagement of the Chief Restructuring Officer, Getzler Henrich & Associates LLC.

Request No. 52

All Documents concerning the selection and engagement of the Debtors' counsel, Klestadt Winters Jureller Southard & Stevens, LLP.

Request No. 53

All Documents concerning the selection and engagement of the Debtors' financial advisor, Marks Paneth LLP.

Request No. 54

All Documents concerning the Debtors' Directors and Officers Insurance Policy including without limitation any request or demand for coverage by a Representative of any Debtor or an Other Modi Entity.

Request No. 55

All Documents concerning any Payment by a Debtor or Other Modi Entity to a Representative of a Debtor or Other Modi Entity, other than salary or bonus payments during the Applicable Period.

Request No. 56

All Documents concerning any expense reimbursement request submitted by You or any Representative of a Debtor or any Other Modi Entity during the Applicable Period.

Request No. 57

All Documents concerning any travel conducted for business purposes in connection with a Debtor or any Other Modi Entity by You during the Applicable Period.

Request No. 58

All Documents concerning the sale, purchase, and sourcing, of diamonds and other precious or semi-precious stones during the Applicable Period.

Request No. 59

All Documents concerning the securing and protecting of diamonds and other precious or semi-precious stones from theft, including by insiders and Representatives of the Debtors.

Request No. 60

All Communications between a Debtor and any of Punjab National Bank, Oriental Bank of Commerce, Andhra Bank and Vijaya Bank.

Dated: New York, New York
June ___, 2018

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: ______________________________
Sean A. O'Neal

One Liberty Plaza
New York, New York 10006
T: 212-225-2000
F: 212-225-3999
(soneal@cgsh.com)

Attorneys for *Punjab National Bank*

TO: Mihir Bhansali
50 Riverside Boulevard
Apartment 24A
New York, NY 10069

**Appendix A**

1.    Each request for production shall be responded to completely, separately, and fully.

2.    In responding to these requests, you shall produce all responsive Documents available at the time of production and you shall supplement your responses as required by Federal Rule of Civil Procedure 26(e)(1).  These Document requests are continuing in nature, and any information and documents obtained subsequent to the service of the responses that would have been included in the responses had they been known shall promptly be supplied by supplemental responses whenever you find, locate, acquire, create, or become aware of such information or documents.  Supplemental responses are to be served as soon as reasonably possible after receipt of such information.

3.    In producing Documents, you are requested to furnish all Documents now or at any time in your possession, custody, or control, regardless of whether such Documents or materials are possessed directly by you or your employees, agents, representatives, attorneys, accountants, advisors, investigators, consultants, or any other Person acting or purporting to act on your behalf or under your control.  Without limiting the term "control" as used in the preceding sentence, a Person is deemed to be in control of a document if the Person has the right to secure the document or a copy thereof from another Person having actual possession thereof.  For the avoidance of doubt, these Document requests seek Documents over which you have control no matter where they are located.  You shall produce all responsive Documents that are kept on-site at your place of business or at any off-site location, such as a storage facility or your home.  You shall produce all responsive Documents stored on any type of device or storage media, including but not limited to servers, computers, mobile devices (such

as iPhones or BlackBerry), cell phones, tablets, thumb drives, DVDs, or external backup devices, whether the device or media is company-owned or personal. You shall produce all responsive Documents that exist in email accounts hosted by third-party providers (such as Gmail, Yahoo! Mail, or Outlook.com), cloud collaborative environments (such as SharePoint, Google Docs, or Dropbox), social media websites (such as Twitter, Facebook, or WhatsApp) and on backup tapes. For the avoidance of doubt, these Document requests seek Documents in the possession, custody, or control of your officers and directors (including, but not limited to, Mihir Bhansali), legal counsel and financial advisors.

4. If you are unable to respond to any request for production in full after exercising due diligence to secure the requested information, so state, and explain why the request for production cannot be responded to in full.

5. In producing Documents, you are requested to produce an exact copy of the original of each Document requested together with all non-identical copies and Drafts of that document. Each Document shall be legible and bound in the same manner as the original.

6. Documents shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond to each request contained herein. If there are no Documents responsive to any particular request, you shall so state in writing.

7. All Documents shall be produced in the file folder, envelope or other container in which the Documents are kept or maintained. If for any reason the container cannot be produced, produce copies of all labels or other identifying marks.

8. Documents attached to each other shall not be separated and all documents that cannot be legibly copied should be produced in their original form.

9. Documents not otherwise directly responsive to this request shall be produced if

such Documents mention, discuss, refer to or explain the Documents which are called for by this request, or if such Documents are attached to the Documents called for by this request and constitute routing slips, transmittal memoranda, cover letters, comments or similar materials.

10. Documents are to be produced in full; redacted Documents will not constitute compliance with this request. If any requested Document cannot be produced in full, produce it to the extent possible, indicating which Document, or portion of that Document, is being withheld, and the reason that you are withholding the Document or portion thereof.

11. If any requested Documents are maintained in digital, electronic, or imaged form, production of a copy of the ESI in digital, electronic, or imaged form is hereby requested, along with any information needed to access, search, or sort electronic data or documents.

12. Electronically stored information should be produced in accordance with the following specifications:

(i) Form of Production. Produce electronically stored information in single-page tiff format (Group IV tiff at 300 dpi) or in JPG format for Documents in color.[2] Productions shall be made on encrypted media (e.g. CD/DVD or portable hard drive) with Opticon image load files (.OPT). TIFF\JPG image naming conventions should be limited to alphanumeric names only, with no spaces, no hyphens, and no special characters in the file name (e.g. ABC00000001.tif). All fielded database information (including extracted metadata from electronic documents) should be delivered in a standard Concordance load file format (.DAT).

[2] Cleary Gottlieb reserves the right to request color JPG files for any document that is unreadable or has limited accessibility in the Group IV TIFF format.

Group every 1,000 tiff images within incrementally named "IMAGES" directories; do not create a separate folder for each Document.

(ii) Document Text. For Documents/records that were originally stored as native electronic files and which do not have redactions, produce the extracted full text (not OCR) from the body of each Document in separate Document-level text files (.txt) named for the beginning Bates number of the associated Document. Provide OCR text for Documents that do not contain searchable text (e.g. non-searchable PDFs, etc.). For Documents that were originally stored as native electronic files and which have redactions, produce the OCR text from the redacted image(s) associated with each Document. Clearly label any redacted material to show the redactions on the tiff image. Group 1,000 Document text files per incrementally named "TEXT" directories, separate from image directories. A comma delimited list file (.LST) should be provided and include the beginning Bates number and the full file path (including volume) information to the extracted text/OCR files.

(iii) Native Production For Certain File Types. For files created by Excel or other spreadsheet programs, PowerPoint or other special presentation programs, database files, audio/visual files or any other file types that reasonably require viewing in their native format for a full understanding of their content and meaning, produce the files in native and tiff formats. Name the produced native file with the Bates number

on the first page of the corresponding tiff production of the file /

document.  A comma delimited list file (.LST) should be provided and

include the beginning Bates number and the full file path (including

volume) information to the native files.  Group native files within

incrementally named "NATIVE" directories; separate from images and

text directories.[3]

    (iv)   Metadata. Produce extracted metadata for each Document/record in the

form of a Concordance load file (.dat), including the following fields

(where applicable): bates range begin, bates range end, bates family

range begin, bates family range end, e-mail subject line, file extension,

original file path, file name, e-mail sent date, e-mail sent time, created

date, created time, last modified date, last modified time, author, from,

to, CC, BCC, custodian, source, source folder, MD5 hash value, native

file path location, and confidentiality designation. Custodian, source or

source folder field should contain information that can easily identify

the location of the document and, where applicable, the natural person in

whose possession it was found.

    13.   If you withhold any Document (including an email within a longer chain) that is

responsive to these requests under a claim of privilege or upon any other ground, you shall

comply with the requirements of Federal Rule of Civil Procedure 26(b)(5)(A).  If a portion of a

Document contains information subject to a claim of privilege, only that portion shall be

redacted and the remainder shall be produced.

---

[3]    Cleary Gottlieb reserves the right to request native files for any document that is unreadable or has limited

14. In responding to each request for production of Documents, state whether and to what extent any of the responsive Documents have been translated from any foreign language into English. If any responsive Document is partly or wholly in a language other than English, state whether any translation of the non-English language information exists and, if so, provide both the non-English language information and its English translation.

15. If any responsive Document has been modified or altered in any way, in whole or in part, identify (i) each such Document, (ii) its custodian, and (iii) the Person who modified or altered it. Also state how the Document was modified or altered and why the Document was modified or altered. This includes Documents translated from any foreign language into English.

16. If any responsive Document was, but no longer is, in your possession or subject to your control, state whether it is: (i) missing or lost; (ii) destroyed; (iii) transferred voluntarily or involuntarily to others; or (iv) otherwise disposed of. In each instance, identify the current or last known custodian and the circumstances surrounding such disposition.

17. If in responding to this request you claim any ambiguity in interpreting either a request or a definition or instruction applicable thereto, such claim shall not be utilized by you as a basis for refusing to respond, but you shall set forth as part of your response to such request the language deemed to be ambiguous and the interpretation you have chosen to use in responding to the request.

18. If any responsive document or other document potentially relevant to this action is subject to destruction under any retention or destruction program, the document should be exempted from any scheduled destruction and should not be destroyed until the conclusion of this action or unless otherwise permitted by a court of competent jurisdiction.

---

accessibility in the Group IV TIFF or JPG format.

19.    Although some of the Document requests may overlap with other Document requests, no Document request should be read as limiting, in any manner, any other Document request.