James L. Bromley
Sean A. O'Neal
Rahul Mukhi
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Attorneys for Punjab National Bank*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Firestar Diamond, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-10509 (SHL)<br><br>(Jointly Administered) |

**PUNJAB NATIONAL BANK'S OBJECTION TO NON-PARTIES MIHIR AND RAKHI BHANSALI'S MOTION FOR ENTRY OF AN ORDER, PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 45, TO QUASH SUBPOENAS ISSUED BY PUNJAB NATIONAL BANK TO NON-PARTIES MIHIR BJANSALI AND RAKHI BHANSALI AND/OR FOR A PROTECTIVE ORDER**

Punjab National Back ("PNB"), by and through its undersigned counsel, hereby submits this objection (the "Objection") to nonparties Mihir and Rakhi Bhansali's (the "Movants") *Motion for Entry of an Order, Pursuant to Federal Rule of Civil Procedure 45, to Quash Subpoenas Issued by Punjab National Bank to Non-Parties Mihir Bhansali and Rakhi Bhansali and/or for a Protective Order*, ECF No. 355 (the "Motion to Quash"), seeking to quash four subpoenas, dated July 26, 2018, issued by PNB which seek the depositions and productions of

---

[1] The Debtors are the following three entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Firestar Diamond, Inc. (2729), Fantasy, Inc.(1673), and A. Jaffe, Inc. (4756).

documents from each of the Movants (collectively, the "Subpoenas") and/or for a protective order. In support of this Objection, PNB respectfully submits as follows:

**PRELIMINARY STATEMENT**

1. On July 26, 2018, this Court granted PNB's motion for an order allowing it to issue subpoenas for the production of documents and authorizing the examination of Movants. The initial motion was filed on June 14, 2018 and went unopposed. After discussions with the Examiner and the Chapter 11 Trustee, PNB modified its proposed order and, at the request of the Court, resubmitted it on notice of presentment on July 17, 2018. Again, Movants did not object. In granting the order, the Court determined that the relief sought by PNB's motion was in the best interest of the Debtors, creditors and all parties in interest and that good and sufficient cause justified granting the relief sought.

2. PNB has been transparent about its motives in seeking Rule 2004 discovery. These Chapter 11 cases were precipitated by a massive fraud against PNB (the "Fraud") perpetrated by Nirav Modi ("Modi"), the majority shareholder of the ultimate parent of the Debtors, and his associates. From the beginning of this case, PNB suspected that the Debtors were not mere victims of circumstance but were instead active participants in the Fraud – a suspicion that was vindicated by Mihir Bhansali's abrupt resignation and invocation of his Fifth Amendment right against self-incrimination. His wife, Rakhi Bhansali, has her own connections with the Modi empire, having served as director of several entities controlled by Modi, and also having been the recipient of valuable real estate property interest in a suspicious transaction occurring only two days after the Petition Date. PNB has sought discovery from Movants in order to obtain information on the Debtors' involvement with the Fraud as it pursues constructive trust and other claims against the Debtors.

3. Movants now ask the Court to reverse its findings and quash the Subpoenas duly issued by PNB. The Motion to Quash raises a variety of objections, all of which should be denied by the Court, but does not even attempt to disclaim any knowledge of the Debtors' involvement in the Fraud. PNB now respectfully requests that the Court deny the Motion to Quash.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

5. On June 14, 2018, PNB moved for discovery pursuant to Rule 2004 for the Federal Rules of Bankruptcy Procedure in pursuit of claims against the Debtors. See ECF No. 224 (the "Rule 2004 Motion"). In the Rule 2004 Motion, PNB requested the authority to subpoena certain individuals with information relevant to PNB's claims against the Debtors. See Rule 2004 Motion at 8, ¶ 18. These individuals include Mihir Bhansali and Rakhi Bhansali who have well-known connections with Modi and Modi entities. See Rule 2004 Motion 4-6, at ¶ 6-9. Movants are believed to have information regarding the Debtors, their relationships to Modi, and assets that may constitute proceeds of the Fraud. See Rule 2004 Motion 13-14, at ¶ 26. On July 26, 2018, the Court granted the Rule 2004 Motion and authorized PNB to serve subpoenas on Mihir Bhansali and Rakhi Bhansali. See ECF No. 324. PNB promptly served the Subpoenas pursuant the Court's Order later that day. See O'Neal Decl., Exs. A-D.

6. The Notice of Subpoena sent to both Mihir Bhansali and Rakhi Bhansali included the scheduled date and time of the deposition, August 9, 2018 at 9:00 a.m. See O'Neal Decl.,

3

Exs. C-D. Counsel for both Mihir Bhansali and Rakhi Bhansali made no attempt to discuss the scheduling of the depositions with counsel for PNB prior to August 3, 2018, when counsel for PNB reached out to Movants' counsel. See O'Neal Decl., Ex. E. Rather than engaging in meaningful discussion regarding PNB's discovery requests, Movants' counsel initially informed PNB that it might seek relief from the Court but waited until less than 48 hours before the scheduled depositions to inform PNB that they would be filing the Motion to Quash. See O'Neal Decl., ¶ 7. Prior to filing the Motion to Quash, Movants did not provide PNB with their reasoning or a chance to address their concerns. See O'Neal Decl., ¶ 6. Movants instead filed the Motion to Quash less than twelve hours before the depositions were set to begin.

## ARGUMENT

7. Bankruptcy Rule 2004(a) provides that "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004(a). The permitted scope of discovery under Rule 2004 is broad, including "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge" Fed. R. Bankr. P. 2004(b). It is well settled that the scope is broader than the Federal Rules of Civil Procedures and may be in the nature of a "fishing expedition." In re Hughes, 281 B.R. 224, 226 (Bankr. S.D.N.Y. 2002) (internal citations omitted).

8. Discovery under Rule 2004 can include "determining the nature and extent of the bankruptcy estate, [through] revealing assets, examining transactions and assessing whether wrongdoing has occurred." In re Recoton Corp., 307 B.R. 751, 755 (Bankr. S.D.N.Y. 2004). "[A]ny third party who can be shown to have a relationship with the debtor can be made subject to a Rule 2004 investigation." In re Ionosphere Clubs, Inc., 156 B.R. 414, 432 (S.D.N.Y. 1993).

4

9. Within this legal framework, the Court approved PNB's issuance of subpoenas. Federal Rule of Civil Procedure 45 requires a court to quash or modify a subpoena only in limited circumstances, one being that the subpoena "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). The movant bears the burden of persuasion in a motion to quash a nonparty subpoena. United States v. Int'l Bus. Machs. Corp., 83 F.R.D. 97, 104 (S.D.N.Y. 1979).

10. Here, the Court should deny the Motion to Quash for several reasons. First, the Movants' argument that the *in pari delicto* doctrine prevents discovery is plainly wrong. Aside from the obvious point that Movants have no standing to raise the Debtors'[2] potential defenses to claims against the Debtors that have not been made, the *in pari delicto* doctrine cannot be used as a defense to claims before the development of a factual record on those claims. Moreover, even if the *in pari delicto* doctrine were appropriately raised here, the facts alleged in the Motion to Quash do not come close to satisfying the *in pari delicto* standards. Second, PNB's Subpoenas for testimony and the production of documents from the Movants clearly relate to claims against the Debtors that PNB intends to bring in these Chapter 11 Cases, depending on the results of its discovery. Third, PNB's document requests directed to Rakhi Bhansali do not constitute impermissible harassment.

I. **Movants'** *In Pari Delicto* **Arguments Should Be Rejected**

    a. *In Pari Delicto* **Defense Does Not Bar Discovery**

11. Movants initially argue that the Court should quash PNB's Subpoenas because PNB, as an institution, was "complicit in the allegedly fraudulent activity in India," and therefore, under the doctrine of *in pari delicto*, would not be able to maintain any claim against

---

[2] When discussing the Debtors' potential *in pari delicto* defense in this Objection, the term "Debtors" refers to both the Debtors the Chapter 11 Trustee.

the Debtors. Motion to Quash at 11-16. Movants cite no cases supporting their argument that discovery can be – let alone should be – enjoined under the *in pari delicto* doctrine. This is not surprising as PNB has not located a single case that supports this unprecedented proposition.

12. It is well settled that a court should not consider defenses on the merits when considering a motion to quash. See Malibu Media, LLC v. Doe, No. 15-CV-4806 (SJF)(SIL), 2016 WL 4491539, at *2 (E.D.N.Y. Aug. 25, 2016) ("[W]hether Defendant ultimately has meritorious defenses to Plaintiff's claims is not relevant for purposes of the instant motion to quash or Plaintiff's ability to obtain the discovery sought in the . . . Subpoena."); TCYK, LLC v. Does 1-47, No. 2:13–cv–539, 2013 WL 4805022, at *4 (S.D. Ohio Sept. 9, 2013) ("[N]othing in Rule 45 permits a court to quash a subpoena based on 'a general denial of liability.' . . . Instead, arguments related to the merits of the allegations are appropriately addressed in the context of a motion to dismiss or a motion for summary judgment, rather than on a motion to quash.") (internal citations omitted); West Bay One, Inc. v. Does 1-1,653, 270 F.R.D. 13, 15 (D.D.C. 2010) ("While the movants' denial of liability may have merit, the merits of this case are not relevant to the issue of whether the subpoena is valid and enforceable.").

13. Even if PNB had filed claims against the Debtors and an appropriate party – here, the Debtors – moved to dismiss, that still would not preclude discovery from continuing while the Debtors' motion was pending. See In re WRT Energy Sec. Litig., No. 96 CIV. 3610 (JFK), 1996 WL 580930, at *1 (S.D.N.Y. Oct. 9, 1996) ("While discovery may in a proper case be stayed pending the outcome of a motion to dismiss, the issuance of a stay is by no means automatic."); Moran v. Flaherty, No. 92 Civ. 3200 (PKL), 1992 WL 276913, at *1 (S.D.N.Y. Sept. 25, 1992) ("[D]iscovery should not be routinely stayed simply on the basis that a motion to dismiss has been filed."). In the same manner that a properly made motion to dismiss would not

automatically bar discovery from going forward, Movants' 12(b)(6)-like arguments should have no bearing on the question of whether PNB may continue to pursue discovery against them.

### b. Movants Have No Standing to Raise *In Pari Delicto* Defense

14. Movants have no standing to raise the *in pari delicto* defense on behalf of the Debtors. PNB's Rule 2004 discovery seeks information to allow PNB to evaluate and pursue claims against the estate including constructive trust and fraud claims. It is beyond dispute that Rule 2004 permits discovery to allow parties in interest to determine and pursue their claims against debtors. See In re Drexel Burnham Lambert Grp., 123 B.R. 702, 704 (Bankr. S.D.N.Y. 1991) (granting 2004 discovery to party in interest "to amass and develop support for its claims against [the debtors'] estate."). At this stage, PNB has not filed any claims against the Debtors' estates, but rather has been attempting to gather information to do so. Once it does, Debtors will then have an opportunity to raise defenses against those claims – if such defenses exist – including *in pari delicto* defenses. Here, the Debtors have not raised *in pari delicto* defenses and may never do so. In fact the Chapter 11 Trustee has actually consented to PNB's Rule 2004 discovery and the Court's Rule 2004 order. See ECF No. 293. Movants have no standing to raise the Debtors' affirmative and waivable defenses as their own, particularly where the Debtors have not raised the defense and have in fact consented to discovery of Movants. See Kowalski v. Tasmer, 543 U.S. 125, 129 ("[A] party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'") (citing Warth v. Seldin, 422 U.S. 490, 499 (1975)).

### c. Movants Have Not Pled Sufficient Facts (or Evidence) to Support *In Pari Delicto* Defense

15. Movants have alleged insufficient facts to rule that the *in pari delicto* doctrine bars PNB's potential claims against the Debtors. The *in pari delicto* doctrine requires factual

7

determinations as to the parties' relative fault and the applicability of any exceptions. Therefore, courts routinely refuse to rule on the *in pari delicto* doctrine where there is an insufficient factual record. See Gatt Commc'ns, Inc. v. PMC Assocs., 711 F.3d 68, 81 (2d Cir. 2013) (declining to reach the question of whether the *in pari delicto* doctrine barred an antitrust claim where the factual record was "undeveloped"); Richardson v. Shearson/Am. Express Co., 573 F. Supp. 133, 135 (S.D.N.Y. 1983) (refusing to dismiss a complaint on the basis of the *in pari delicto* doctrine where the factual record was not sufficiently developed for the court to determine relative fault of the parties); In re Adelphia Commc'ns Corp., 356 B.R. 24, 56 (Bankr. S.D.N.Y. 2007), aff'd in part, 390 B.R. 64 (S.D.N.Y. 2008) (refusing to hold at the motion-to-dismiss stage "that even a peppercorn of benefit to a corporation from the wrongful conduct would provide total dispensation to defendants knowingly and substantially assisting insider misconduct that is overwhelmingly adverse to the corporation"). Here, PNB's discovery has not even commenced to evaluate whether the Debtors participated in the Fraud. The Court should decline to consider the *in pari delicto* doctrine without a factual record.

16. Among other things, Movants have failed to demonstrate that the alleged acts of PNB employees described in news articles should be imputed to PNB, as an institution, or that PNB benefitted from the Fraud. The *in pari delicto* doctrine "reflects the principle that a plaintiff who has participated in wrongdoing equally with another person may not recover from that other person damages resulting from the wrongdoing." Republic of Iraq v. ABB AG, 768 F.3d 145, 160 (2d Cir. 2014). The party asserting an affirmative defense based on the *in pari delicto* doctrine must show that "as a direct result of [the plaintiff's] own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress" and "preclusion of suit would not significantly interfere with effective enforcement of [the applicable

law]." Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 310-11 (1985). This standard requires that the plaintiff, who in this case would be PNB, was "an active, voluntary participant in the wrongful conduct, and the plaintiff's wrongdoing must be at least substantially equal to that of the defendant." Sec. Exch. Comm'n v. Lee, 720 F. Supp. 2d 305, 332 (S.D.N.Y. 2010) (internal citations omitted). The Motion to Quash does not plead sufficient facts – let alone admissible evidence – to allow a court to determine that employee actions should be imputed to PNB for the purposes of the Debtors invoking an *in pari delicto* defense against potential, unasserted claims.

17. Under the adverse interest exception to the *in pari delicto* doctrine, the actions of an agent (here, rogue employees)[3] cannot be imputed to the principal (here, PNB) where its agent has "totally abandoned his principal's interest and [is] acting entirely for his own or another's purposes." In re Refco Sec. Litig., 779 F. Supp. 2d 372, 375 (S.D.N.Y. 2011), aff'd sub nom. Krys v. Butt, 486 F. App'x 153 (2d Cir. 2012) (internal citations omitted); see also In re Bennett Funding Grp., 336 F.3d 94, 100 (2d Cir. 2003) ("[A]cts of the agent will not be charged to the [principal] if although the agent purportedly acts for the [principal], he is really committing a fraud for his own benefit.") (internal citations omitted). The adverse interest exception applies to "cases of outright theft or looting or embezzlement, where the fraud is committed against a corporation rather than on its behalf." In re Lehr Constr. Corp., 528 B.R. 598, 609–10 (Bankr. S.D.N.Y. 2015), aff'd, 551 B.R. 732 (S.D.N.Y. 2016), aff'd, 666 F. App'x 66 (2d Cir. 2016) (internal citations omitted); see also Kirschner v. KPMG LLP, 15 N.Y.3d 446, 447 (2010). The

---

[3] Movants suggest that PNB should have disclosed to the Court the potential involvement of numerous PNB employees in the Fraud. PNB's prior disclosures have focused on the mechanics and modus operandi of the Fraud disclosed in the NCLT Order in an effort to assist the Court in understanding how the fraudulent LOUs were obtained. See ECF No. 148, at ¶¶ 10-12. The potential involvement of more senior PNB employees is simply not relevant at this stage and is the subject of an ongoing investigation in India.

actions alleged by Movants constitute the paradigmatic example of a "fraud committed against a corporation."

18. Movants fail to show how the alleged conduct of rogue employees constitute anything other than a total abandonment of PNB's interests. Movants do not even acknowledge the adverse interest exception, but allege that PNB benefited because "the Brady House's import and export transactions in March 2017 were 50% higher than the figures two years prior" and such growth is allegedly attributable to the fraudulent LOUs issued to the Modi Entities. Motion to Quash at 10. Movants do not explain how an increase in fraudulently issued LOUs, or an increase in the total number of LOUs, issued by the Brady House branch benefitted PNB. This Fraud was specifically designed to defraud PNB and cannot be plausibly characterized as benefitting PNB.

## II. PNB's Rule 2004 Requests Seek Discovery relating to Claims Against the Debtors

20. Next, Movants argue that PNB's Subpoenas are an improper use of Rule 2004 discovery because "they reflect a transparent attempt by PNB to gather information in aid of its litigation interests here or abroad." Motion to Quash at 16. But Movants cannot suggest, and indeed do not make much of an effort to suggest, that documents they have or may have in their possession related to the Fraud have no relevance to PNB's claims against the Debtors. Rather, they merely point to vague notions of PNB's "litigation interests here and abroad." Motion to Quash at 16. Movants point to no proceeding pending against them in which PNB would be entitled to seek discovery from them. See In re Millennium Global Emerging Credit Master, 471 B.R. 342, 347-48 (Bankr. S.D.N.Y. 2012) ("Because [the party resisting discovery] is not a party to the U.K. arbitration, [they] cannot complain that the Liquidators are circumventing [their] rights in that proceeding with their requested discovery.").

21.     Additionally, the mere existence of related proceedings against other parties outside of the Chapter 11 case does not preclude a party in interest from seeking discovery under Rule 2004. See In re Int'l Fibercom, Inc., 283 B.R. 290, 292 (Bankr. D. Ariz. 2002) ("[T]he court holds the ultimate discretion whether to permit the use of Rule 2004, and courts have for various reasons done so despite the existence of other pending litigation."); In re Sun Med. Mgmt., 104 B.R. 522, 524 (Bankr. M.D. Ga. 1989) (allowing 2004 discovery even with pending adversary proceeding and noting that "[c]ourts allow the use of extraordinary discovery methods to ferret out information when facts are shown implying that a fraud has occurred."). Where, as here, there is significant evidence that the Debtors have engaged in fraudulent activities against PNB, Rule 2004 provides the most appropriate mechanism for providing PNB and the Court the means to uncover the extent of the Fraud.

22.     The cases Movants cite are wholly distinguishable. In In re Enron Corp., 281 B.R. 836 (Bankr. S.D.N.Y. 2002) the court found that the Rule 2004 motion was "devoid of any invocation of what matters [movant] seeks under Rule 2004(b) and the nexus of those materials to the [movant] as a party in interest in this bankruptcy case." Id. at 842. The court found that there was no plausible explanation for the movants proposed Rule 2004 other than to support discovery in a parallel securities class action. Likewise, in Snyder v. Soc'y Bank, 181 B.R. 40 (Bankr. S.D. Tex. 1994), the court found no other explanation for movants Rule 2004 requests other than to support separate litigation filed in state court. This was clearly the case since summary judgment had already been granted on the purported matters on which Rule 2004 discovery was sought. Id. at 42. Here, PNB's Rule 2004 Motion and its document requests make it clear that the purpose of PNB's discovery is to "reveal[] assets, examin[e] transactions and assess[] whether wrongdoing has occurred" by the Debtors' hand. Recoton, 307 B.R. at 755.

11

Such information is necessary to support PNB's claims against the Debtors and their insiders, including constructive trust and fraud claims.

23. Movants attempt to cherry pick certain requests as being relevant only to other proceedings, but this effort fails because the requested information – if in the possession of Movants – would provide information on the extent of the Debtors' role in the Fraud.

- Request No. 17 asks for "All Documents concerning job descriptions, roles and responsibilities, relationship hierarchies and reporting relationships of the management of any Debtor and any Other Modi Entity, whether formal or informal, including organizational charts or diagrams." Clearly this requests aims at ascertaining the relationship of the Debtors to Nirav Modi's other companies which were conspirators in the Fraud. Should Movants have such information it would suggest a close relation between the Debtors and the rest of Modi's empire, and, depending on what documents disclose, might reveal Debtors' assigned role in carrying out fraudulent activity. It might also reveal the names and positions or potential conspirators who acted under the direction of the Debtors or their representatives in carrying out the Fraud.

- Request No. 42 asks for documents relating to transfers "from a foreign branch of an Indian bank" to the Debtors or other Modi Entities. If Movants possessed such documents it would demonstrate involvement, or at least knowledge and perhaps an active role in concealing the Fraud.

- Request No. 60 asks for communications between a Debtor and PNB, and several other banks from which funds were fraudulently obtained would, depending on the nature of these communications. Again, this would shed light on the Debtors' knowledge of and participation in the Fraud.

- Movant's objection to Request No. 3 barely deserves a response. Motion to Quash at 17-18. It asks for documents sufficient to identify contact information used by Nirav Modi in communications responsive to Request No. 1, which in turn asks for communications between Movants or the Debtors and Nirav Modi over the course of the Fraud. There can be no doubt that identifying communications and the means of such communications between the Debtors and the principal orchestrator of the Fraud might be useful in understanding the Debtors' role in the Fraud.

### III. Document Subpoena Directed to Rakhi Bhansali is Not Harassing.

24. For the reasons set out in PNB's Rule 2004 Motion, approved by this Court in granting the Order allowing discovery against Rakhi Bhansali, PNB's Subpoena for documents

from Rakhi Bhansali is appropriate in light of PNB's purpose in uncovering information of the Debtors' involvement with the Fraud. As mentioned in PNB's motion, Rakhi Bhansali has been listed as the director of at least three entities affiliated with Modi (AMI Merchandising Private Ltd., Neeshal Marketing Private Ltd., and Neeshal Merchandising Private Ltd.), and incorporated at least two of these entities. These connections with the Modi empire suggest Mrs. Bhansali may very well be in possession of information regarding the Debtors' participation in the Fraud. In addition, given the circumstances of this case, there are significant questions as to the purchase of a $7,000,000 apartment in Manhattan by Mihir and Rakhi Bhansali in 2017 and the subsequent transfer of Mihir Bhansali's interest to Rakhi Bhansali just two days after the Petition Date. Should she in fact not have documents responsive to PNB's requests she need only respond to such effect. If she does, it suggests a more fulsome knowledge of the Debtors' fraudulent activities.

## CONCLUSION

25. For the foregoing reasons, PNB respectfully requests that the Court deny the Motion to Quash.

Dated: August 22, 2018

*[signature]*

CLEARY GOTTLIEB STEEN & HAMILTON LLP
James L. Bromley
Sean A. O'Neal
Rahul Mukhi
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Attorneys for Punjab National Bank*