James L. Bromley
Sean A. O'Neal
Rahul Mukhi
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: 212-225-2000
Facsimile: 212-225-3999

*Attorneys for Punjab National Bank*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| FIRESTAR DIAMOND, INC. *et al.*,[1] | Case No. 18-10509 (SHL) |
| Debtors. | (Jointly Administered) |

**MOTION FOR AN ORDER TO COMPEL MIHIR BHANSALI TO PRODUCE DOCUMENTS RESPONSIVE TO PUNJAB NATIONAL BANK'S SUBPOENA**

---

[1] The Debtors are the following three entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Firestar Diamond, Inc. (2729), Fantasy, Inc.(1673), and A. Jaffe, Inc. (4756). Unless otherwise noted, all exhibits are attached to the Declaration of Rahul Mukhi ("Mukhi Decl."), dated October 16, 2018.

Punjab National Bank ("PNB"), by and through its undersigned counsel, hereby moves this Court for an Order, substantially in the form of Exhibit A, compelling Mihir Bhansali to produce documents responsive to the Court-authorized subpoena served by PNB on July 26, 2018, attached as Exhibit B (the "PNB Subpoena"). In the alternative, and at minimum, the Court should order Mr. Bhansali to produce all non-privileged responsive documents and provide an appropriate log of any documents that he is withholding on the basis of privilege.

## PRELIMINARY STATEMENT

1. As this Court is well aware—and as the Examiner's report further confirmed—PNB is the victim of a fraud perpetrated by Nirav Modi and entities under his control (the "Modi Fraud"). Mr. Bhansali is the former President and Director of the Debtors, including during the time period of the Modi Fraud. On July 26, 2018, the Court authorized PNB to issue a subpoena to Mr. Bhansali for testimony and the production of documents in his possession, custody, or control, relevant to PNB's potential claims. Order Granting Mot. Pursuant to Fed. R. Bankr. 2004, ECF No. 324. Mr. Bhansali moved to quash the PNB Subpoena, which the Court denied on August 29, 2018. Mukhi Decl., Ex. C, Order Denying Mot. to Quash, ECF No. 418; Hr'g Tr., Aug. 29, 2018, ECF No. 429.

2. Having lost his motion to quash the PNB Subpoena, Mr. Bhansali is now seeking to render the subpoena nugatory by refusing to produce *any* responsive documents or even to provide a log of responsive documents that he is withholding. Indeed, citing the Fifth Amendment's act of production privilege, Mr. Bhansali has even gone so far as to refuse to inform PNB *whether or not* he is in possession of potentially responsive documents. Such a sweeping assertion of the Fifth Amendment's act of production privilege runs directly contrary

to applicable law, violates PNB's rights to obtain evidence relevant to its potential claims, and should be rejected by this Court.

3. For the reasons set forth below, the Court should order Mr. Bhansali to produce any documents responsive to the PNB Subpoena. In the alternative, and at minimum, the Court should order Mr. Bhansali to produce all non-privileged responsive documents and provide an appropriate log of any documents that he is withholding on the basis of privilege.

## JURISDICTION & VENUE

4. This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### A. The Court Grants PNB's Rule 2004 Motion

5. Mr. Bhansali is the former President and sole Director of the Debtors. Bhansali Decl. ¶ 1, ECF No. 2. Mr. Bhansali resigned from his positions with the Debtors on or about May 18, 2018, shortly after PNB noticed his testimony in connection with the then-pending sale motion of A. Jaffe. Hr'g Tr. at 13:9-12, May 18, 2018, ECF No. 187. Following Mr. Bhansali's resignation, Mr. Bhansali's counsel informed the Court that, if called to testify in connection with the sale hearing, Mr. Bhansali would assert his Fifth Amendment rights. *Id.* at 28:5-7.[2]

6. For numerous years, in addition to being the President and sole Director of the Debtors, Mr. Bhansali has maintained positions with several other non-Debtor Modi entities. *See* Mot. for Order Pursuant to Fed R. Bankr. 2004 at ¶ 8, ECF No. 224. For example, Mr. Bhansali

---

[2] Mr. Bhansali subsequently declined to answer questions on this basis at his deposition taken by the Examiner's counsel, although he explicitly limited his assertion of his Fifth Amendment rights to the deposition and investigation being conducted by the Examiner. *See* Tr. Dep. of Mihir Bhansali, Aug. 7, 2018 (available to the Court on request).

2

and Nirav Modi incorporated a number of non-Debtor entities for which Bhansali was listed as a director, including Firestar Diamond Private Ltd. and Jewelry Solutions International Private Ltd. *Id.* Mr. Bhansali was also listed as a director of several other Modi affiliates, including Nirav Modi Limited, Dream Trading Private Ltd., and AMI Merchandising Private Ltd. *Id.* Mr. Bhansali's counsel has refused to inform PNB whether or not Mr. Bhansali continues to maintain such employment or other financial relationships with any non-Debtor Modi entities. *See* Mukhi Decl., Ex. F, Letter from Bhansalis' Counsel to PNB's Counsel at 2 (confirming only that Mr. Bhansali resigned from the Debtors).

7.  On June 14, 2018, PNB moved *ex parte* for an order pursuant to Bankruptcy Rule 2004 authorizing PNB to issue subpoenas for testimony and documents to, among others, Mr. Bhansali. Mot. for Order Pursuant to Fed R. Bankr. 2004, ECF No. 224. In addition to seeking Mr. Bhansali's testimony, the PNB Subpoena sought documents in his possession, custody, or control concerning the financial affairs and other conduct of the Debtors and related Modi entities, as relevant to PNB's potential claims. *See* Mukhi Decl., Ex. B, PNB Subpoena at 8-15.

8.  PNB's Rule 2004 motion also sought authorization to issue a subpoena to Mr. Bhansali's wife, Rakhi Bhansali, for testimony and substantially similar documents as those sought from Mr. Bhansali. Mot. for Order Pursuant to Fed R. Bankr. 2004, ECF No. 224. Ms. Bhansali had maintained positions at least three entities affiliated with Modi, including certain "shadow entities" identified in the Examiner's report. *Id.* ¶¶ 8-9. Ms. Bhansali was also the beneficiary of a suspicious real estate transaction with her husband shortly before the Debtors filed their bankruptcy petition. *See* Report of John J. Carney, Examiner at 68, 156, ECF No. 394.

9.  On July 26, 2018, the Court granted PNB's *ex parte* motion, and PNB served the Court-authorized subpoenas on the Bhansalis.

### B. The Court Denies Bhansalis' Motion to Quash

10. On August 8, 2018, less than 48 hours prior to Mr. Bhansali's scheduled deposition, the Bhansalis moved to quash the subpoenas. The Bhansalis principally argued that the Court should quash the subpoenas on the grounds of *in pari delicto*. Mot. to Quash Subpoenas at pp. 11-16, ECF No. 355. In addition, the Bhansalis argued that the information and documents sought by PNB improperly sought evidence in furtherance of "PNB's litigation interests in India." *Id.* at pp. 16-20.

11. On August 22, 2018, PNB filed its objection to the Bhansalis' motion to quash, arguing, among other things, that the *in pari delicto* argument was inapplicable to PNB's requests for discovery. PNB also argued that the information it was seeking was directly relevant to its potential claims, including documents reflecting communications between the Debtors and any Modi-related entities and those reflecting the financial and other ties between Debtors and those entities. Obj. to Mot. to Quash Subpoenas, ECF No. 384.

12. On August 29, 2018, the Court held a hearing and issued its ruling on the Bhansalis' motion to quash. The Court denied the motion, holding that there was good cause for each of PNB's subpoenas to the Bhansalis. Mukhi Decl., Ex. C, Hr'g Tr. at 29-38, Aug. 29, 2018, ECF No. 429. In addition to rejecting the Bhansalis' *in pari delicto* argument, the Court rejected their claim that the subpoenas were not seeking relevant evidence. *Id.* In particular, the Court found that "[l]ooking at the actual 2004 request, it [] clearly relates to PNB's seeking of information as to any potential claims it has against the Debtors." *Id.* at 32:20-22. The Court further rejected the Bhansalis' argument that the PNB Subpoena was improper because it might also uncover evidence concerning claims that PNB may have against non-Debtors. *Id.* at 32:10-33:8.

C.   **The Instant Motion**

13.   On August 23, 2018, Mr. Bhansali served written responses and objections to the document requests contained in the PNB Subpoena. *See* Mukhi Decl., Ex. D, Mihir Bhansali's Objections and Responses to PNB's Subpoena for the Production of Documents Pursuant to Bankruptcy Rule 2004. After setting forth certain general and definitional objections to PNB's requests, *id.* at pp. 1-3, Mr. Bhansali objected to each document request with the following statement:

> For his objections, Mr. Bhansali incorporates by reference the General Objections and Definition Objections set forth above. In addition to those objections, Mr. Bhansali also objects to the request as overbroad, unduly burdensome, and not reasonably calculated to obtain information that is relevant to a claim or defense in this bankruptcy case or proportional to the needs of this case.
>
> Subject to the General Objections, Definition Objections and specific objections, including Mr. Bhansali's reservation of all rights, privileges, and protections, he will produce documents, if any, responsive to the Request except insofar as the act of production would implicate his Fifth Amendment right.

*See, e.g.*, *id.* at pp. 4-36.

14.   On September 18, 2018, the parties held a telephonic meet-and-confer on Mr. Bhansali's objections to the document requests. Mukhi Decl. ¶ 6. During the meet and confer, Mr. Bhansali's counsel clarified that Mr. Bhansali would not be producing *any* documents in response to the PNB Subpoena because it was his position that any and all responsive documents would be covered by the act of production privilege. *See* Mukhi Decl., Ex. E, Letter from PNB's Counsel to Bhansalis' Counsel at p. 1 (memorializing the meet and confer). Mr. Bhansali's counsel further stated that he would not produce a log of any responsive documents being withheld because it was also his position that even the existence or nonexistence of responsive documents was covered by the act of production privilege. *Id.*

5

15. Mr. Bhansali's counsel also declined to disclose whether—notwithstanding Mr. Bhansali's resignation from his positions with the Debtors—Mr. Bhansali continued to be employed by (or maintain other financial relationships with) any other Modi entities. *Id.* at p. 2. Mr. Bhansali refused to provide this information despite its direct relevance as to whether Mr. Bhansali can assert the act of production privilege. *See, e.g.*, *In re Grand Jury Subpoena Issued June 18, 2009*, 593 F.3d 155, 158 (2d Cir. 2010) (per curiam) ("[T]he custodian of corporate records, who acts as a representative of the corporation, cannot refuse to produce corporate records on Fifth Amendment grounds.") (citation omitted).

16. Finally, Mr. Bhansali's counsel refused to inform PNB whether or not Mr. Bhansali was withholding any documents based on any objections *other than* the act of production privilege. Mukhi Decl., Ex. E, Letter from PNB's Counsel to Bhansalis' Counsel at 2. Mr. Bhansali refused to do so even though PNB's counsel raised the probability that the Court would expect the parties to meet and confer with respect to each of the objections upon which documents are being withheld (assuming there is more than one such objection), so that all such issues can be raised with the Court in a single motion rather than litigating multiple objections to the same subpoena in a piecemeal fashion. *Id.*

17. On September 21, 2018, PNB's counsel sent Mr. Bhansali's counsel a letter setting forth PNB's objections to Mr. Bhansali's positions with respect to the act of production privilege and citing supporting caselaw. *See* Mukhi Decl., Ex. E, Letter from PNB's Counsel to Bhansalis' Counsel at 2. PNB also reiterated its requests for information about whether or not Mr. Bhansali was currently employed by other Modi entities and whether Mr. Bhansali was withholding documents on the basis of any objections other than the act of production privilege. *Id.*

18. On September 27, 2018, Mr. Bhansali's counsel responded to PNB's letter. *See* Mukhi Decl., Ex. F, Letter from Bhansalis' Counsel to PNB's Counsel. Mr. Bhansali maintained that he would not be producing any documents or even a privilege log. *Id.* at 1-2. Mr. Bhansali also continued to refuse to provide the information requested by PNB, including with respect to the current status of his relationship with non-Debtor Modi entities and whether he was withholding documents based on his non-privilege objections. *Id.*[3]

19. This motion followed.

## APPLICABLE LAW

20. The Supreme Court has recognized that the act of producing documents may fall within the protection of the Fifth Amendment privilege where the act of production results in "testimonial self-incrimination." *Fisher v. United States*, 425 U.S. 391, 410-11 (1976).

21. The party asserting the privilege bears the burden of proof. *See In re Schick*, 215 B.R. 4, 9 (Bankr. S.D.N.Y. 1997) (placing burden on witness to establish act of production privilege) (citing *Hoffman v. United States*, 341 U.S. 479, 486 (1951)); *In re Mavashev*, 559 B.R. 332, 338 (Bankr. E.D.N.Y. 2016) (same). The party must demonstrate that both: (i) the production of documents would be testimonial and (ii) such testimony would be incriminating. *See In re Schick*, 215 B.R. at 9. This test is applied without consideration of the underlying *content* of the documents at issue—*viz.*, the act of production must *itself* be incriminating. *See Fischer*, 425 U.S. at 410-11 ("however incriminating the contents of the accountant's

---

[3] Ms. Bhansali agreed to produce non-privileged responsive documents in her possession following the entry of a protective order. *See* Mukhi Decl., Ex. F, Letter from Bhansalis' Counsel to PNB's Counsel at 2. The parties have exchanged drafts of a proposed protective order and PNB is awaiting any additional comments from the Bhansalis' counsel. PNB reserves its rights, including with respect to Ms. Bhansali's compliance with her subpoena.

7

workpapers might be, the act of producing them . . . would not itself involve testimonial self-incrimination"); *see also United States v. Doe*, 465 U.S. 605, 612-13 (1984) (holding that it was error to find the contents of documents were privileged under the Fifth Amendment).

22. "The party does not discharge the burden simply by asserting that he will incriminate himself by producing the documents." *In re Schick*, 215 B.R. at 9 (citing *Hoffman*, 341 U.S. at 486); *In re Mavashev*, 559 B.R. at 338 (same). Rather, the party asserting the privilege must provide enough information to enable "a factual inquiry to determine the incriminating potential of the documents sought and the act of production against the privilege asserted." *See In re Schick*, 215 B.R. at 9 (citing *In re Stoecker*, 103 B.R. 182, 188 (Bankr. N.D. Ill. 1989) (The witness "is required to supply sufficient facts to make the requisite showing why the documents or the act of production might be incriminating.")). The burden may be met by submitting a written explanation, identifying the documents held in one's personal capacity, and as to each document, explaining in general terms why production would be incriminating. *See McIntyre's Mini Comput. Sales Grp., Inc. v. Creative Synergy Corp.*, 115 F.R.D. 528, 531-32 (D. Mass. 1987). Courts have held that failure to provide such information defeats the assertion of the privilege. *See United States v. Gendreau*, No. 12 Misc. 303 (WHP), 2014 WL 464754, at *3 (S.D.N.Y. Jan. 22, 2014) ("[B]y refusing to provide a privilege log or to submit the requested documents for in camera review, [the defendant] has failed to meet her burden of showing that production would incriminate her.").

23. Even if a party meets his or her burden to show that the privilege would attach under certain circumstances, there are several exceptions that may apply. It is well-settled that the privilege does not apply to documents held in a corporate representative capacity, as opposed to a personal capacity. *See, e.g.*, *Rogers v. United States*, 340 U.S. 367, 371-72 (1951) ("Books

and records kept 'in a representative rather than in a personal capacity cannot be the subject of the personal privilege against self-incrimination, even though production of the papers might tend to incriminate (their keeper) personally.'") (citation omitted); *Bellis v. United States*, 417 U.S. 85, 100 (1974) ("It is well settled that no privilege can be claimed by the custodian of corporate records, regardless of how small the corporation may be."). There is likewise no act of production privilege for records required to be maintained by law or regulation (or their equivalent). *See Doe v. United States (In re Doe)*, 711 F.2d 1187, 1191 (2d Cir. 1983) ("Under [the required records] exception, a person whose records are required to be kept by law has no Fifth Amendment protection against self-incrimination when these records are directed to be produced.") (citing *Shapiro v. United States*, 335 U.S. 1, 32-33 (1948)); *In re Grand Jury Subpoena Dated February 2, 2012*, 741 F.3d 339, 347-52 (2d Cir. 2013) (finding the Bank Secrecy Act's record keeping requirements negated the testimonial nature of the act of production privilege).[4] Nor can a party assert the privilege if the existence, location, or authenticity is a "foregone conclusion." *Fisher*, 425 U.S. at 411.

24. Thus, not only must the party asserting the privilege show that the act of production would be testimonial and self-incriminating, but also that none of these broad exceptions apply to the documents being withheld.

---

[4] The "required records" exception involves three-part test: (1) the requirement that they be kept must be "essentially regulatory," (2) the records must be of a kind which the regulated party has customarily kept, and (3) the records themselves must have assumed "public aspects" which render them analogous to public documents. *See Grosso v. United States*, 390 U.S. 62, 67-68 (1968).

ARGUMENT

25. The Court should compel Mr. Bhansali to produce any and all documents responsive to the PNB Subpoena. Contrary to the law set forth above, Mr. Bhansali has made no showing that the act of production privilege applies, but rather has claimed privilege "simply by asserting that he will incriminate himself by producing the documents," which is insufficient to meet his burden. *See In re Schick*, 215 B.R. at 9; *In re Mavashev*, 559 B.R. at 338. Mr. Bhansali cannot deny PNB relevant information simply based on his say-so—PNB is entitled to relevant discovery concerning its potential claims unless Mr. Bhansali provides facts to show that privilege applies to the documents at issue. Having failed to provide *any* evidence to support his claim under the act of production privilege, Mr. Bhansali has failed to meet this burden. *See Gendreau*, 2014 WL 464754, at *3 ("[B]y refusing to provide a privilege log or to submit the requested documents for in camera review, [the defendant] has failed to meet her burden of showing that production would incriminate her."); *McIntyre's Mini Comput. Sales Grp., Inc.*, 115 F.R.D. at 531-32 (compelling witness to submit reasons for invoking privilege with respect to any response or document considered incriminating); *United States v. Cianciulli*, No. M-18-304 (RMB) (THK), 2001 WL 1097919, at *3 (S.D.N.Y. Sept. 19, 2001) (holding that a witness "may not rely on a blanket claim of privilege, but must assert his or her claim in the context of specific questions and on a document-by-document basis").[5]

26. Not only has Mr. Bhansali failed to meet his burden, but he is also likely in possession of responsive information that would not be covered by the privilege at all (tellingly,

---

[5] Mr. Bhansali's citations in his letter are unpersuasive. *See* Mukhi Decl., Ex. F, Letter from Bhansalis' Counsel to PNB's Counsel at 2 (citing *In re Hyde*, 235 B.R. 539, 544 (S.D.N.Y. 1999), *aff'd*, 205 F.3d 1323 (2d Cir. 2000) and *SEC v. Forster*, 147 F. Supp. 3d 223, 228-29 (S.D.N.Y. 2015)). Those cases simply reaffirmed the proposition that the Court may assume that the *contents* of documents are incriminating because the relevant question is "whether *production itself* would be incriminating, without further consideration to the contents of the

he has refused to provide any information to PNB concerning the documents he possesses).[6] It is undisputed Mr. Bhansali has been a corporate custodian in the past for Modi and his related entities. He has refused to disclose whether he continues to hold documents in a role as a continued employee or agent of Modi and/or his non-Debtor entities or even specify whether he maintains employment with any such entity. Any documents Bhansali does continue to maintain in his capacity as a corporate custodian would indisputably *not* be protected by the act of production privilege. *See, e.g.*, *Rogers*, 340 U.S. at 371-72; *In re Grand Jury Subpoena Issued June 18, 2009*, 593 F.3d at 158.

27. It is also known that Mr. Bhansali maintained financial interests outside of the United States, including in India. Foreign bank records are required to be maintained under IRS rules and regulations. *See, e.g.*, Amendment to the Bank Secrecy Act Regulations—Reports of Foreign Financial Accounts, 76 Fed. Reg. 10234 (codified at 31 C.F.R. Part 1010 (2011)). Thus, such records in Mr. Bhansali's possession, custody, or control would not fall within the act of production privilege under the "required records" exception, and the same would be true for any other documents required to be maintained under any other legal or essentially regulatory requirements. *See, e.g.*, *Shapiro*, 335 U.S. at 32-33; *In re Grand Jury Subpoena Dated February 2, 2012*, 741 F.3d at 347-52.

---

documents." *In re Hyde*, 235 B.R. at 544 (emphasis added); *accord Forster*, 147 F. Supp. 3d at 228-29. To the extent Mr. Bhansali argues that the cases stand for the proposition that he can invoke a blanket assertion of the privilege with making *any* showing how the act of production would be incriminating, the argument is contrary to the authorities set forth above and would improperly allow a party's rights to discovery to be denied based solely on a witness's unilateral assertion.

[6] Indeed, Mr. Bhansali even declined to inform PNB whether or not he has **any** responsive documents. To the extent Mr. Bhansali subsequently discloses that in fact he has **no** responsive documents subject to the instant motion, PNB reserves its rights to seek reimbursement of its expenses and costs in connection therewith.

28. Mr. Bhansali is also no doubt in possession of documents related to his residential apartment located at 50 Riverside Boulevard (the "Apartment") called for by the PNB Subpoena. *See* Mukhi Decl., Ex. B, PNB Subpoena at 12. As this Court has observed, information concerning Mr. Bhansali's transactions concerning the Apartment are plainly potentially relevant to PNB's claims, Mukhi Decl., Ex. C, Hr'g Tr. at 37:3-8, Aug. 29, 2018, ECF No. 429, given the circumstances surrounding the transfer of Mr. Bhansali's interest to his wife just two days before the Debtors filed the instant bankruptcy petition. There is no basis upon which Mr. Bhansali may claim privilege over such documents, the existence, location and authenticity of which are a "foregone conclusion." *Fisher*, 425 U.S. at 411.

29. Finally, Mr. Bhansali has failed to show that he has not waived his Fifth Amendment rights with respect to the documents he is withholding. As the Court is aware, Mr. Bhansali previously submitted the First Day Declaration in these proceedings. Bhansali Decl., ECF No. 2. Mr. Bhansali cannot claim privilege over any of the subject matters covered by his Declaration, which would be tantamount to using the privilege as both a sword and shield. *See OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 262 F. Supp. 2d 302, 307 (S.D.N.Y. 2003) ("An individual may not use the Fifth Amendment as both a shield and a sword."); *Lederman v. Rezak (In re Lederman)*, 140 B.R. 49 (Bankr. E.D.N.Y. 1992) (Debtor waived or lost whatever Fifth Amendment privilege he enjoyed in financial records that were subject of production request by producing all of his financial records, as represented in disclosure statement, for inspection by creditors steering committee). PNB is therefore entitled to any documents concerning subject matters covered by Mr. Bhansali's prior statements. *See Rogers*, 304 U.S. at 371 (after the witness voluntarily testified, "to uphold [her] claim of privilege in this case would open the way to distortion of facts by permitting [the] witness to select any stopping place in the testimony");

*In re Mavashev*, 559 B.R. at 339 ("Even if the Nonparty Witnesses had a Fifth Amendment right with regard to production of the [relevant document], [the witness] waived that right by voluntarily testifying in response to the Trustee's questions about the transaction.").

30. For the reasons set forth above, Mr. Bhansali has failed to meet his burden to assert the act of production privilege. Moreover, despite repeated requests, Mr. Bhansali has refused to answer whether he is withholding documents based on any other objections. Putting aside the lack of merit to the objections—which are largely boilerplate objections purportedly based on overbreadth, vagueness, and relevance—there is nothing about providing this information to PNB that would even arguably infringe on Mr. Bhansali's Fifth Amendment rights. Rather, Mr. Bhansali's refusal to do so is seemingly a strategy to delay and lie in wait with further stonewalling should Mr. Bhansali's misguided effort to assert the act of production privilege fail—as it should. The Court should not countenance such gamesmanship and therefore should hold that Mr. Bhansali has waived withholding documents based on his other objections. *See, e.g.*, *In re Honeywell Int'l, Inc. Secs. Litig.*, 230 F.R.D. 293, 299 (S.D.N.Y. 2003) ("The Second Circuit has noted its preference that parties 'raise all objections at once, rather than in staggered batches, so that discovery does not become a game.'") (internal citation omitted); *Obeid v. Mack*, No. 14 Civ. 6498 (LTS) (HBP), 2016 WL 7176653, at *6 (S.D.N.Y. Dec. 9, 2016) (finding plaintiff waived any privilege not asserted in privilege log).

## CONCLUSION

31. For the reasons set forth above, the Court should enter an Order, substantially in the form of Exhibit A, compelling Mihir Bhansali to produce all documents responsive to the PNB Subpoena. In the alternative, and at minimum, the Court should order Mr. Bhansali to produce all non-privileged responsive documents and provide an appropriate log of any documents that he is withholding on the basis of privilege.

Dated: October 16, 2018

/s/ Sean A. O'Neal
CLEARY GOTTLIEB STEEN & HAMILTON LLP
James L. Bromley
Sean A. O'Neal
Rahul Mukhi
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999

*Attorneys for Punjab National Bank*