JENNER & BLOCK LLP
Marc Hankin
Carl Wedoff
919 Third Avenue
New York, New York 10022
(212) 891-1600

Angela Allen (admitted *pro hac vice*)
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350

*Counsel for the Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re: | Chapter 11 |
|---|---|
| FIRESTAR DIAMOND, INC., *et al.* | No. 18-10509 (SHL) |
| Debtors.[1] | (Jointly Administered) |

**CHAPTER 11 TRUSTEE'S STATEMENT REGARDING FINAL FEE**
**APPLICATIONS OF EXAMINER AND HIS PROFESSIONALS**

The Examiner John J. Carney and his professionals Baker & Hostetler LLP and Alvarez & Marsal Disputes and Investigations LLC filed final fee applications for their work in these chapter 11 cases. [ECF 581 (Examiner), 582 (Baker & Hostetler), and 597 (Alvarez & Marsal).] The amounts are as follows:

|  |  |  | Balance | | |
| Applicant | Total Fees | Paid to Date | Firestar | A. Jaffe | Total |
|---|---|---|---|---|---|
| Examiner | $121,186.00 | $96,948.80 | $12,118.60 | $12,118.60 | $24,237.20 |
| Baker & Hostetler | $1,361,625.79 | $1,089,300.63 | $136,162.58 | $136,162.58 | $272,325.16 |
| Alvarez & Marsal | $970,937.30 | $776,749.84 | $97,093.73 | $97,093.73 | $194,187.46 |
| **Total** | $2,453,749.09 | $1,962,999.27 | $245,374.91 | $245,374.91 | $490,749.82 |

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Firestar Diamond, Inc. (2729), Fantasy, Inc. (1673), and Old AJ, Inc. f/k/a A. Jaffe, Inc. (4756).

The balance represents the 20% hold-back imposed under the Court's interim compensation procedures order. [ECF 82.] The Trustee understands that the Examiner and his professionals are seeking allowance of final compensation now, in conjunction with the Examiner's motion for a discharge order, because they have completed the work contemplated under the order appointing the Examiner.

The initial estimate that the Examiner provided for the examination, including all professionals, was $1,500,000. The final fees are nearly 60% higher. The Trustee does not ordinarily support allowance of final fees so substantially in excess of the initial estimate. However, the facts of this case might suggest otherwise.

When the Examiner began his work, the question posed was whether "any current officer or director of the Debtors actively and knowingly participated in fraud or dishonesty in the management of the affairs of the Debtors." [ECF 103.] The Debtors' officers made it appear early in the cases that they did not participate. Instead, later events suggested substantial participation, which the Examiner and his professionals then investigated and documented. [Examiner's Report, ECF 394, at 159 (the Debtors' CEO "engaged in certain behavior post- and immediately pre- petition consistent with an attempt to cover up his involvement in the Alleged Fraudulent Circumstances.")]. Ultimately, the Examiner's Report concluded the Debtors' CEO was intimately involved in nearly every aspect of the fraud that caused these chapter 11 cases and that the Debtors were used as vehicles to perpetrate the fraud. Examiner's Report, ECF 394, at 129 ("The evidence obtained by the Examiner is consistent with the allegations that [the CEO] was a participant in the fraudulent LOU scheme."). More important, the Examiner and his professionals uncovered more than they could have expected. Their investigation required substantially more effort than was likely anticipated when they began, unsure of whether the Debtors had participated in the fraud at all.

2

The Examiner's Report is thorough and detailed, tracing numerous transactions through numerous accounts in several countries. It provides a detailed roadmap for the Trustee to use in developing and pursuing causes of action against wrongdoers and beneficiaries of the fraud. Those causes of action could provide substantial value to the estates. As the Trustee nears completion of his liquidation of assets, he is beginning to evaluate and pursue claims. If the Examiner and his professionals had not provided the level of thoroughness and completeness they did, the Trustee would likely have had to incur substantial expense to develop this information, perhaps at a cost higher than the amount of fees in excess of the initial fee estimate that the Examiner and his professionals incurred in doing so. The Examiner's and his professionals' work provided substantial value to the estates, generally commensurate with an amount that is higher than that estimate.

For these reasons, the Trustee believes this is an appropriate case in which to accommodate professional fees that exceed, even by the amounts involved in this case, an early estimate.

The Trustee is mindful of his responsibility not to permit administrative insolvency in these cases and to work to maximize recoveries for general unsecured creditors. In preparing this statement, the Trustee reviewed the cash and other assets on hand in each of the three estates and the likely administrative expenses required to bring these cases to a conclusion. The cash on hand as of December 12, 2018 is approximately:

| Estate | Cash as of 12/12/18 |
|---|---|
| Firestar Diamond, Inc. | $1,400,000 |
| Fantasy, Inc. | $1,200,000 |
| Old AJ, Inc. (f/k/a A. Jaffe, Inc.) | $2,850,000 |
| **Total** | $5,450,000 |

3

In addition, the Trustee has substantial remaining inventory to be sold and accounts receivable to collect. Based on prior sales, the Trustee expects the remaining Firestar/Fantasy inventory and receivables should generate over $4 million in proceeds and the Old AJ inventory and receivables should generate several hundred thousand dollars. Based on these amounts and the Trustee's expected remaining administrative expenses, the Trustee believes there is minimal risk of administrative insolvency.

However, the cases have not yet concluded. The claims filing bar date was only two days ago. Several entities that the Examiner's Report identifies as having been involved in the fraud have filed proofs of claim. The Examiner's Report may prove useful in challenging the allowability of these and other claims, as well as in providing the information necessary for the Trustee to obtain affirmative recoveries from wrongdoers and others. Thus, the true value of the work of the Examiner and his professionals is not yet proven.

Based on these factors, the Trustee believes it would be prudent to limit allowance and payment of final fees to the Examiner and his professionals for now to one-half the 20% hold-back amounts (10%), with the remaining 10% allowable and payable at the conclusion of these chapter 11 cases, and with all amounts subject to disgorgement in the unlikely event of an administrative insolvency in any of the cases. The Trustee consulted with the Examiner and his professionals, who have informed the Trustee that they would not object to an order to that effect.

Dated: December 13, 2018  
      New York, New York

Respectfully submitted,

**JENNER & BLOCK LLP**

By: /s/ Marc Hankin  
Marc Hankin  
Carl Wedoff  
919 Third Avenue  
New York, New York 10022  
(212) 891-1600  
mhankin@jenner.com  
cwedoff@jenner.com

Angela Allen (admitted *pro hac vice*)  
353 North Clark Street  
Chicago, Illinois 60654  
(312) 222-9350  
aallen@jenner.com

*Counsel for the Chapter 11 Trustee*

5

127335.1