JENNER & BLOCK LLP
Marc Hankin
Carl Wedoff
919 Third Avenue
New York, New York 10022
(212) 891-1600

Angela Allen (admitted *pro hac vice*)
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350

*Counsel for the Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| FIRESTAR DIAMOND, INC., *et al.* | No. 18-10509 (SHL) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF CHAPTER 11 TRUSTEE'S MOTION FOR AN ORDER**
**APPROVING SETTLEMENT WITH CHARM DIAMOND CENTRES**

On May 10, 2019, Chapter 11 Trustee Richard Levin (the "**Trustee**") filed the annexed

*Chapter 11 Trustee's Motion for an Order Approving Settlement with Charm Diamond Centres* (the

"**Motion**").

A hearing will be held before the Honorable Sean H. Lane of the United States Bankruptcy

Court for the Southern District of New York on **June 10, 2019 at 10:00 a.m. (Eastern Standard**

**Time)**, or as soon thereafter as counsel may be heard (the "**Hearing**"), in Courtroom 701 of the

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Firestar Diamond, Inc. (2729), Fantasy, Inc. (1673), and Old AJ, Inc. f/k/a A. Jaffe, Inc. (4756).

United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), One Bowling Green, New York, New York 10004, to consider the Motion.

Objections, if any, to approval of the Motion and entry of the proposed order must: (i) be made in writing; (ii) state with particularity the grounds therefor; (iii) be filed with the Bankruptcy Court (with a copy to the Judge's chambers); and (iv) be served upon (a) counsel to the United States Trustee for Region 2, 201 Varick Street, Suite 1006, New York, NY 10014 (Attn: Richard Morrissey, Esq.); (b) counsel to the Trustee, Jenner & Block LLP, 919 Third Avenue, New York, New York 10022 (Attn: Richard Levin, Esq.); (c) counsel to the Debtors, Klestadt Winters Jureller Southard & Stevens, LLP, 200 West 41st St., 17th Floor, New York, NY 10036 (Attn: Ian Winters, Esq.); and (d) counsel to Punjab National Bank, Cleary, Gottlieb, Steen & Hamilton LLP, One Liberty Plaza, New York, NY 10006 (Attn: Sean O'Neal) so as to be received by each of them no later than 5:00 p.m. (Eastern Standard Time) on June 3, 2019 (the "**Objection Deadline**").

If no responses or objections are served by the Objection Deadline, the relief may be granted as requested in the Motion without further notice or a hearing. You need not appear at the Hearing if you do not object to the relief requested in the Motion. The Hearing may be continued or adjourned from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or at a later hearing.

Dated: May 10, 2019  
New York, New York

Respectfully submitted,

**JENNER & BLOCK LLP**

By: /s/ Marc Hankin  
Marc Hankin  
Carl Wedoff  
919 Third Avenue  
New York, New York 10022  
(212) 891-1600  
mhankin@jenner.com  
cwedoff@jenner.com

Angela Allen (admitted *pro hac vice*)  
353 North Clark Street  
Chicago, Illinois 60654  
(312) 222-9350  
aallen@jenner.com

*Counsel for the Chapter 11 Trustee*

JENNER & BLOCK LLP
Marc Hankin
Carl Wedoff
919 Third Avenue
New York, New York 10022
(212) 891-1600

Angela Allen (admitted *pro hac vice*)
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350

*Counsel for the Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| FIRESTAR DIAMOND INC., *et al.*,[1] | Case No. 18-10509 (SHL) |
| Debtors. | Jointly Administered |

**CHAPTER 11 TRUSTEE'S MOTION FOR AN ORDER**
**APPROVING SETTLEMENT WITH CHARM DIAMOND CENTRES**

Richard Levin, not individually but solely in his capacity as chapter 11 trustee (the "**Trustee**") of the above-captioned debtors (the "**Debtors**"), respectfully submits this motion (the "**Motion**") under Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for an order, substantially in the form attached as Exhibit A to this Motion (the "**Proposed Settlement Order**"), approving a settlement (the "**Settlement**"), substantially consistent with the terms of the settlement agreement attached as Exhibit B to this Motion (the "**Settlement Agreement**"), by and among the Trustee and Charm Diamond Centres ("**CDC**,"

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Firestar Diamond, Inc. (2729) ("**Firestar**"), Fantasy, Inc. (1673) ("**Fantasy**"), and Old AJ, Inc. f/k/a A. Jaffe, Inc. (4756) ("**Jaffe**").

together with the Trustee, the "**Parties**"). In support of the Motion, the Trustee respectfully states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter under 28 U.S.C. § 1334. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested in this Motion is Bankruptcy Rule 9019(a). The Trustee consents to this Court's entry of a final order on this Motion.

## BACKGROUND

2. On February 26, 2018 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**"). Until the appointment of the Trustee, the Debtors operated their businesses and managed their affairs as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.

3. On March 9, 2018, the Court entered an Order directing that these cases be jointly administered. (Dkt. 24.) An Official Committee of Unsecured Creditors has not been appointed in these cases.

4. On June 14, 2018, the Court approved the Trustee's appointment. (Dkt. 227.)

5. On October 23, 2018, the Court approved the Trustee's retention of Michael J. Agusta, Esq. P.C. ("**Agusta**") to assist the Trustee in recovering the Debtors' accounts receivable. (Dkt. 541). For uncontested matters, Agusta is compensated on a contingency basis. For contested matters, Agusta is compensated on an hourly basis.

6. Agusta's retention agreement provides that "[a] contested matter is one that includes, at a minimum, one or more of the following: the defense of any substantive counterclaim, substantial discovery compliance or motion practice, multiple court appearances,

2

trial work (both preparation for and attendance at), post judgment work (except issuing an execution to a Sheriff or Marshall), or other items of work requiring a substantial expenditure of time." (*See* Dkt. 426, Ex. B-2.)

7. At the time of the Trustee's appointment, Firestar's books and records reflected that CDC owed Firestar a total of US$123,248.08, consisting of: (a) US$52,385.08 in accounts receivable; and (b) US$70,863.00 in inventory held by CDC on a consignment basis.

8. On February 7, 2019, CDC returned all of the consignment inventory still in its possession, having a total value of US$25,195.00. Consequently, CDC now owes Firestar a total of US$98,053.08 (equal to US$123,248.08 less US$25,195.00).

9. Following extensive, arms' length, and good faith negotiations, the Parties ultimately reached the Settlement reflected in the Settlement Agreement. Its principal terms are as follows:

- CDC shall pay the Trustee a lump sum of US$72,500 (the "**Settlement Amount**") for the benefit of the Firestar's estate.

- CDC will release all claims it may have against the Trustee, the Debtors, their estates, and each of the other Trustee Released Entities (as defined in the Settlement Agreement) relating to or arising out of the collection of accounts receivable.

- The Trustee will release all claims the Debtors' estates may have against CDC and each of each of the other CDC Released Entities (as defined in the Settlement Agreement) relating to or arising out of the collection of accounts receivable.

10. The releases provided for in section 6 of the Settlement Agreement are contingent upon: (i) the execution of the Settlement Agreement; (ii) CDC's delivery of the Settlement Amount to Mr. Agusta; and (iii) the Court's approval of the Settlement on a final basis. As of the filing of this Motion, the Agreement has been executed and the Settlement Amount has been delivered to

Mr. Agusta. As contemplated by section 3 of the Agreement, Mr. Agusta is holding the Settlement Amount in escrow pending the Court's approval of the Settlement on a final basis.

**RELIEF REQUESTED**

11. The Trustee requests that this Court enter the Proposed Settlement Order approving the Settlement under Bankruptcy Rule 9019(a).

12. Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed R. Bankr. P. 9019(a). Rule 9019 empowers the Court to approve compromises and settlements if they are "fair, equitable, and in the best interests of the estate." *In re Residential Capital, LLC*, 497 B.R. 720, 749 (Bankr. S.D.N.Y. 2013); *see Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968). In determining whether a settlement is fair and equitable, a court does need not decide the numerous issues of law and fact involved; it need only "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983); *Residential Capital*, 497 B.R. at 749. "Rather than conducting a mini-trial, the Court only needs to be apprised of those facts that are necessary to enable it to evaluate the settlement and to make a considered and independent judgment." *Residential Capital*, 497 B.R. at 749 (internal citations and quotation marks omitted).

13. As a general matter, "'settlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate.'" *Residential Capital*, 497 B.R. at 749 (quoting *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 641–642 (Bankr. S.D.N.Y. 2012)); *see Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 455 (2d Cir. 2007) (settlements "help clear a path for the efficient administration of the bankrupt estate"). "Although courts have discretion

4

to approve settlements, the business judgment of the debtor in recommending the settlement should be factored into the court's analysis." *In re MF Global Inc.*, No. 11-2790 MG, 2012 WL 3242533, at *5 (Bankr. S.D.N.Y. Aug. 10, 2012). Courts may also rely upon the opinion of trustee, the parties, and their respective counsel. *Id.*

14. The Second Circuit has identified seven interrelated factors that courts should consider when evaluating whether settlements fall within the range of reasonableness under Bankruptcy Rule 9019(a):

> A) the balance between the litigation's possibility of success and the settlement's future benefits;
>
> B) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment;
>
> C) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement;"
>
> D) whether other parties in interest support the settlement;
>
> E) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement;
>
> F) "the nature and breadth of releases to be obtained by officers and directors[;]" and
>
> G) "the extent to which the settlement is the product of arm's length bargaining."

*Residential Capital, LLC*, 497 B.R. at 750 (quoting *In Motorola, Inc. v. Official Committee of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007)). An analysis of the *Iridium* factors demonstrates that the Settlement is fair, reasonable and in the best interests of the Debtors' estates and creditors.

5

15.     *First*, if the Trustee is required to litigate the claims against CDC to conclusion, there is no guarantee that the Debtors' estates will realize any greater—or even the same—net value represented by the Settlement. As it stands, the Trustee's maximum potential recovery from CDC relating to or arising from the collection of accounts receivable is US$98,053.08. The US$72,500 Settlement Amount therefore represents an approximately 74% recovery. Bringing a lawsuit would not necessarily increase this recovery. CDC is a Canadian company, so even if the Trustee were able to bring a collection action in this court, the Trustee might incur substantial time and expense in collecting any judgment. Moreover, as the Settlement Amount has already been delivered to Mr. Agusta, there is no collection risk. By contrast, even if the Trustee succeeded in litigation against CDC, the extent to which he would be able to collect on any judgment is less certain by default.

16.     *Second*, setting aside litigation and collection risk, the costs to the Debtors' estates of prosecuting the claims against CDC could very well exceed the value of any recovery beyond the Settlement Amount. As set forth above, Agusta is compensated on a contingency basis for uncontested recoveries. However, for contested matters, Agusta is compensated on an hourly basis. Litigating these claims to finality would require Agusta to spend significant time on discovery and trial preparation, the cost of which would be borne by the Debtors' estates whether or not the Trustee prevails. Taking all of these facts into consideration, further prosecution of the claims poses a very real risk to the Debtors' estates that, even if successful, the costs of litigating the claims would materially diminish any recovery.

17.     *Third*, the Settlement serves the interests of the Debtors' creditors.  The Settlement will result in $72,500 being immediately available for distribution to the Debtors' creditors through the Trustee's forthcoming chapter 11 plan.

18. *Fourth*, the Trustee is unaware of any opposition to the Settlement from any interested party.

19. *Fifth*, both Parties are sufficiently sophisticated, and this Court is familiar with both the complexity of these chapter 11 cases and the types of issues that would arise in any litigation of claims of this nature.

20. *Sixth*, the scope of these releases provided to and received from CDC are appropriate in light of the recovery for the estates and the proposed Settlement.

21. *Seventh*, the Agreement was proposed, negotiated, and entered into by the Parties, without collusion, in good faith, and from arms' length bargaining positions.

22. Accordingly, the Trustee submits that the proposed Settlement is appropriate in light of the relevant factors, is fair and equitable, and should be approved.

## NOTICE

23. The Trustee is serving this Motion upon the U.S. Trustee, CDC, and the 2002 Service List in accordance with the Order Establishing Notice and Case management Procedures [Dkt. 530]. The Trustee submits that under the circumstances, no other or further notice need be provided.

**CONCLUSION**

WHEREFORE, the Trustee respectfully requests that this Court enter an order approving the Settlement and granting such other relief as the Court may deem just and proper.

| | |
|---|---|
| Dated: May 10, 2019<br>New York, New York | Respectfully Submitted,<br><br>**JENNER & BLOCK LLP**<br><br>By: /s/ Marc Hankin<br>Marc Hankin<br>Carl Wedoff<br>919 Third Avenue<br>New York, New York 10022<br>(212) 891-1600<br>mhankin@jenner.com<br>cwedoff@jenner.com<br><br>Angela Allen (admitted *pro hac vice*)<br>353 North Clark Street<br>Chicago, Illinois 60654<br>(312) 222-9350<br>aallen@jenner.com<br>*Counsel for the Chapter 11 Trustee* |