**<u>Exhibit B</u>**
**Settlement Agreement**

## Settlement Agreement and Release of Claims

This agreement (the "**Agreement**") is entered into as June 26, 2019 by and between Richard Levin, not individually but solely in his capacity as chapter 11 trustee (the "**Trustee**") of Firestar Diamond Inc. ("**Firestar**") and UOB Realty (USA) Limited Partnership (the "**Landlord**," and together with the Trustee, the "**Parties**").

## Recitals

A. This Agreement concerns the resolution of the Parties' disputes regarding the amount of post-petition claims owed by Firestar to the Landlord.

B. On February 26, 2018 (the "**Petition Date**"), Firestar and certain of its affiliates (the "**Debtors**") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"). On June 14, 2018, the Bankruptcy Court appointed the Trustee as chapter 11 trustee for the Debtors.

C. As of the Petition Date, Debtor, Firestar was a lessee under an unexpired nonresidential real property lease, dated November 13, 2012 (the "**Lease**"), for certain premises located at 592 Fifth Avenue, Third Floor, New York, New York 10036 (the "**Premises**"). A copy of the Lease is attached hereto as Exhibit A.

D. On June 25, 2018, the Court entered a Stipulation and Order under which the Parties agreed to extend the period within which the Trustee may assume or reject the Lease to September 24, 2018. [Dkt. 243.]

E. On September 24, 2018, the Parties executed, and on September 28, 2018, the Court entered, a second Stipulation and Order between the Parties (the "**Lease Stipulation**") [Dkt. 455].

F. Among other things, the Lease Stipulation provided that:

   i. The Lease was to be rejected as of December 31, 2018.

   ii. Firestar would surrender and vacate the Premises no later than December 31, 2018 at 11:59 p.m. Eastern Standard Time.

   iii. Firestar would surrender and vacate the Premises in broom-clean condition.

   iv. Firestar would remove its vault and any and all safes from the Premises.

   v. Firestar's failure to timely vacate and surrender the Premises in broom-clean condition would make Firestar's estate liable to pay, and the Landlord would have, an allowed administrative claim for, all amounts payable with respect to those obligations,

G. Firestar vacated the premises by December 31, 2018, but did not remove its vault or leave the Premises in broom-clean condition by December 31, 2018.

H. In January 2019, the Parties met and agreed that a vendor identified by the Landlord would remove the vault and any debris from the premises for a total cost of $32,000.

I. The vendor completed removal of the vault and debris in March 2019.

**NOW, THEREFORE,** in consideration of the mutual promises and undertakings set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows

## Agreement

1. **Incorporation.** The foregoing recitals are true and incorporated into this Agreement as though fully set forth herein by reference.

2. **Scope.** The Parties have agreed to enter into this Agreement for the purpose of finally and completely resolving any and all disputes between them relating to or arising from the Lease Stipulation and the Landlord's post-petition claims. The fact that this Agreement has been entered into should not be construed as an admission of wrongdoing or liability by any party hereto. The Agreement is without prejudice to either party's rights relating to or arising out of the Landlord's filed proof of claim ("**Proof of Claim**") arising from the Trustee's lease rejection (Firestar Claim No. 65).

3. **Rule 9019 Motion.** Promptly following execution of this Agreement, the Trustee shall submit to the Bankruptcy Court a motion (the "**Settlement Motion**") pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure seeking approval of this Agreement.

4. **Payment.** The Trustee has agreed to pay and the Landlord has agreed to accept, in exchange for the promises and releases contained herein, the sum total of $102,576.00 (the "**Payment**")—representing the amount of January 2019 rent, February 2019 rent, and vault and debris removal costs—which shall be delivered to the Landlord by the Trustee pursuant to payment instructions provided by the Landlord within 14 days of the Effective Date.

5. **Effective Date.** The releases contained in section 6 below shall not be effective until each of the following conditions precedent are satisfied (the "**Effective Date**"):

    a. The execution of this Agreement by each of the Parties; and

    b. The entry of a Final Order (an order that is final for purposes of 28 U.S.C. § 158 or 1291, is no longer subject to appeal or certiorari proceedings and no such proceedings are pending) by the Bankruptcy Court granting the Settlement Motion.

6. **Releases**.

    a. Trustee Release. Subject to the Landlord's receipt of the Payment, the Trustee, on behalf of the Debtors and the Debtors' estates, hereby releases and discharges the Landlord and its respective subsidiaries, affiliates, predecessors, successors, assigns, loan participants, employees, officers

and directors, attorneys, agents and representatives acting in such capacities, of all claims arising from or related to the Parties' post-petition rights, responsibilities, and obligations, including but not limited to claims arising from or related to the Lease Stipulation. Nothing in this paragraph shall be deemed or construed to be a release, waiver, or discharge of the Trustee's rights with respect to the Proof of Claim or the terms and conditions of this Agreement, which are expressly reserved.

    b. **Landlord Release**. Subject to the Landlord's receipt of the Payment, the Landlord hereby releases and discharges the Debtors, the Debtors' estates and the Trustee, and with respect to the Debtors' estates and the Trustee their respective subsidiaries, affiliates, predecessors, successors, assigns, attorneys, agents and representatives acting in such capacities, of all claims arising from or related to the Parties' post-petition rights, responsibilities, and obligations, including but not limited to claims arising from or related to the Lease Stipulation. Nothing in this paragraph shall be deemed or construed to be a release, waiver, or discharge of the Landlord's rights asserted in the Proof of Claim or the terms and conditions of this Agreement, which are expressly reserved.

7. **No Assignment of Claims**. The Parties represent and warrant that they have not made or caused to be made any assignment or transfer of any right, claim, demand, or cause of action covered by this Agreement.

8. **No Oral Amendment or Waiver**. The Parties shall not at any time be deemed, by any act or omission, to have waived any of their rights or remedies under this Agreement, unless such waiver is in writing and signed by the Party against whom waiver is sought to be enforced. A waiver of one event shall not be construed as a continuing waiver or as a bar to or waiver of any right or remedy in connection with any subsequent event.

9. **Complete Agreement.** This Agreement constitutes the full and complete understanding of the Parties regarding its subject matter and supersedes any prior understanding or agreement, whether oral or in writing. No provision of this Agreement may be amended, modified, supplemented, changed, waived, discharged or terminated, except by an instrument in writing signed by an authorized representative of the party against whom enforcement of the amendment, modification, supplementation, change, waiver, discharge or termination is sought.

10. **Successor Bound.** This Agreement is binding on and inures to the benefit of the Parties and their respective agents, servants, employees, directors, officers, attorneys, accountants, affiliates, stockholders, members, partners, representatives, receivers, trustees, parents, subsidiaries, predecessors, successors, heirs and assigns, including any successor Trustee in the bankruptcy cases, whether under chapter 11 or chapter 7 of the Bankruptcy Code.

11. **Severability**. In the event that any term, covenant or provision of this Agreement shall be held by a court of competent jurisdiction to be invalid or against public policy, the remaining provisions of this Agreement shall remain in full force and effect, unless

the effect of such determination would be to deny one of the parties hereto the substantial performance for which such party had contracted (in which case the parties agree that the court may reform the contract as necessary to achieve substantial performance for which the parties had contracted).

12. **Voluntary Agreement.** The Parties individually represent, warrant and agree that: (a) they have been represented by legal counsel of their choice in connection with the entering into this Agreement; (b) they are fully aware and clearly understand all of the terms and provisions contained in this Agreement; (c) they have voluntarily, with full knowledge and without coercion or duress of any kind, entered into this Agreement; (d) they are not relying on any representation, either written or oral, express or implied, made to them by any other Party other than as set forth in this Agreement; and (e) the consideration received by them to enter into this Agreement and the settlement contemplated by this Agreement has been actual and adequate. Further, the Parties represent, warrant and agree that they have relied upon the advice of their attorneys concerning the legal and tax consequences of this Agreement. The Parties and their respective attorneys have obtained and are relying upon their own respective tax counsel and advice and hold each other Party harmless from any tax decisions.

13. **Warranted Capacity To Execute Agreement.** The Parties represent and warrant to each other that they have the capacity and authority to execute this Agreement, but in the case of the Trustee, subject to the Bankruptcy Court's approval. Each person executing this Agreement in a representative capacity warrants to the other Party that they have the right, power, legal capacity, and authority to enter into this Agreement on behalf of the represented Party.

14. **Construction of Terms.** The terms of this Agreement are contractual and not mere recitals, and no representations have been made which are not contained herein. This Agreement was drafted with the input and comments of the Parties. In the event of a dispute concerning the interpretation of any provision of this Agreement or any related document, the rule of construction to the effect that certain ambiguities are to be construed against the party drafting a document will not apply. All prior representations and understandings relied upon by the Parties have been incorporated into the text of this Agreement.

15. **Captions**. The captions and headings used in this Agreement are inserted for reference purposes only and shall not be deemed to define, limit, extend, describe, or affect in any way the meaning, scope or interpretation of any of the terms of this Agreement or its intent.

16. **Governing Law, Jurisdiction and Venue**. This Agreement shall be deemed to be a contract made under the laws of the State of New York and shall, for all purposes, be construed and enforced in accordance with said laws but without regard to its choice of law rules. The Parties agree that, to the extent a lawsuit is filed by either of them to interpret and/or enforce this Agreement, that any such lawsuit shall be filed in the Bankruptcy Court.

17. **Counterparts.** This Agreement may be executed in counterparts, each of which will be deemed an original document, with the same force and effect as if all signatures appeared on one document. This Agreement also may be executed by facsimile or email signature with a copy of the signed original provided to counsel for the Parties by email or ordinary mail.

**IN WITNESS WHEREOF,** the Parties have entered into this Agreement as of the last date stated below.

**UOB Realty (USA) Limited Partnership**

By:_____

Its:_____

Date: June \_\_\_, 2019


**RICHARD LEVIN**, not individually but solely as chapter 11 trustee of **Firestar Diamond, Inc.**,

By:_____
   Richard Levin, Trustee

Date: June \_\_\_, 2019