**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| FIRESTAR DIAMOND, INC., *et al.* | No. 18-10509 (SHL) |
| Debtors.[1] | (Jointly Administered) |

### ORDER CONFIRMING
### THE TRUSTEE'S FIRST AMENDED JOINT CHAPTER 11 PLAN

On November 18, 2019, this Court held a hearing (the "**Confirmation Hearing**") to consider confirmation of the *Trustee's First Amended Joint Chapter 11 Plan* [Dkt. 1106] (the "**Plan**"), filed on October 3, 2019, on behalf of Firestar Diamond, Inc. ("**Firestar**"), Fantasy, Inc. ("**Fantasy**"), and Old AJ, Inc. ("**Jaffe**," and together with Firestar and Fantasy, the "**Debtors**").[2] Richard Levin, not individually but solely in his capacity as chapter 11 trustee (the "**Trustee**" or the "**Chapter 11 Trustee**") appeared at the Confirmation Hearing in support of the Plan. All other appearances are reflected on the record.

The Court has considered the Plan, the Trustee's *Memorandum In Support Of Confirmation Of The First Amended Joint Chapter 11 Plan* [Dkt. [1236] (the "**Confirmation Memorandum**") filed on November 14, 2019; the *Declaration Of Paul Deutch Regarding Analysis Of Ballots For Accepting Or Rejecting The Trustee's First Amended Joint Chapter 11 Plan Pursuant To Chapter 11 Of The Bankruptcy Code*, attached as Exhibit 2 to the Confirmation Memorandum; the *Declaration of Richard Levin In Support Of Confirmation Of The First Amended Joint Chapter 11 Plan*, attached as

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Firestar Diamond, Inc. (2729), Fantasy, Inc. (1673), and Old AJ, Inc. f/k/a A. Jaffe, Inc. (4756).

[2] Capitalized terms not otherwise defined in this order (the "**Confirmation Order**") shall have the meaning assigned to them in the Plan. The rules of interpretation set forth in Section 1.2 of the Plan shall govern the interpretation of this Confirmation Order.

Exhibit 3 to the Confirmation Memorandum; the disclosure statement filed in support of the Plan [Dkt. 1129] (the "**Disclosure Statement**"); the *Plan Supplement for the Trustee's Joint Chapter 11 Plan* [Dkt. 1202] (the "**Plan Supplement**"); the representations of counsel at the Confirmation Hearing; and the facts and circumstances of these Chapter 11 Cases. There were no timely objections to confirmation of the Plan. In accordance with the Confirmation Hearing, this Court being fully advised on the premises and good cause appearing therefor, this Court makes the following findings of fact and conclusions of law.

**FINDINGS OF FACT**

1. Firestar, Fantasy, and Jaffe are the debtors in the above-captioned Chapter 11 Cases, having filed voluntary petitions on February 26, 2018, under chapter 11 of the Bankruptcy Code.

2. On June 7, 2018, the Court entered an order directing the appointment of a chapter 11 trustee in these cases [Dkt. 216] and, on June 13, 2018, the U.S. Trustee appointed Richard Levin as Chapter 11 Trustee [Dkt. 222]. That same day, the U.S. Trustee filed an application to approve the Trustee's appointment [Dkt. 226], which the Court subsequently approved [Dkt. 227].

3. On October 11, 2019, the Court entered an order approving the Disclosure Statement in support of the Plan and approving certain procedures in connection with confirmation of the Plan [Dkt. 1140] (the "**Procedures Order**"). In accordance with the Procedures Order and Bankruptcy Rule 3017(d), on or before October 16, 2019, the Trustee caused to be distributed solicitation packages ("**Solicitation Packages**") containing: (a) the Disclosure Statement, (b) the Plan, (c) the Procedures Order, (d) notice of the Confirmation Hearing, and (e) a Court-approved ballot, to holders of claims in impaired classes whose claims were scheduled or who have filed proofs of claim that have not been disallowed, expunged, or satisfied in full.

On or before October 16, 2019, the Trustee caused to be distributed Solicitation Packages without ballots to (i) record holders of claims in classes that are unimpaired under the Plan and not entitled to vote, and (ii) record holders of claims or interests in classes that are impaired under the Plan and are not entitled to receive any property under the Plan.

4. The Court fixed November 13, 2019 as the last day for Filing and serving written objections to confirmation of the Plan under Bankruptcy Rule 3020(b)(1). No objections to confirmation of the Plan were timely filed, and the Trustee has not received any objections to Confirmation.

5. The Court also fixed November 13, 2019 at 5:00 P.M. (Eastern Time) as the deadline for creditors in impaired classes to return ballots to the Trustee's administrative advisor, Omni Agent Solutions ("**Omni**"). The chart below is the final tabulation of votes cast by timely and properly completed Ballots.

| Class FD5 – Firestar Diamond Allowed General Unsecured Claims | | Result |
|---|---|---|
| **Ballots Received** | **13** votes accepting the Plan<br>**0** votes rejecting the Plan | **Accept** |
| **Acceptance** | **100.00**% in number of votes accepting the Plan<br>**100.00**% in dollar amount accepting the Plan **($1,047,638,567.99)** | |
| **Rejection** | **0.00**% in number of votes rejecting the Plan<br>**0.00**% in dollar amount rejecting Plan **($0.00)** | |
| Class AJ5 – Old AJ Allowed General Unsecured Claims | | Result |
| **Ballots Received** | **9** votes accepting the Plan<br>**3** votes rejecting the Plan | **Accept** |
| **Acceptance** | **75.00**% in number of votes accepting the Plan<br>**99.9984**% in dollar amount accepting the Plan **($1,047,283,481.67)** | |
| **Rejection** | **25.00**% in number of votes rejecting the Plan<br>**0.0016**% in dollar amount rejecting Plan **($17,210.72)** | |

| Class FA5 – Fantasy Allowed General Unsecured Claims | | Result |
|---|---|---|
| Ballots Received | **2** votes accepting the Plan<br>**0** votes rejecting the Plan | **Accept** |
| Acceptance | **100.00**% in number of votes accepting the Plan<br>**100.00**% in dollar amount accepting the Plan **($1,049,803,883.94)** | |
| Rejection | **0.00**% in number of votes rejecting the Plan<br>**0.00**% in dollar amount rejecting Plan **($0.00)** | |

6.      On November 4, 2019, the Trustee filed the *Plan Supplement for the Trustee's First Amended Plain* [Dkt. 1202], which attaches a Liquidating Trust Agreement and Schedule of Retained Causes of Action.

7.      The Plan and Liquidating Trust Agreement provide for the creation of Liquidating Trusts for each of the Debtor's Estates, the appointment of Richard Levin as Liquidating Trustee of each of the Liquidating Trusts, and for all assets of the Debtors' Estates to be transferred to the Liquidating Trusts upon the Effective Date of the Plan.  The Liquidating Trustee will be responsible for carrying out the provisions of the Plan, including the liquidation of the Estates' assets, the proceeds of which will be used to pay Distributions to Holders as provided under the Plan.

8.      Each Holder of a Claim or Interest will receive under the Plan on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount such Holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.  The Plan is a feasible, efficient, and economical means of distributing the proceeds of the Estates' assets.

9.      This Court takes judicial notice of the dockets of these Chapter 11 Cases maintained by the Clerk of the Court or its duly appointed agent, including, without limitation, all pleadings and other documents on file, all orders entered, and all evidence and arguments

made, proffered or adduced at the hearings held before this Court during the pendency of these Chapter 11 Cases.

10.     To the extent that any of the below conclusions of law may be considered findings of fact, the same are incorporated by reference as though fully set forth as findings of fact.

## CONCLUSIONS OF LAW

11.     To the extent that any of the above findings of fact may be considered to constitute conclusions of law, the same are incorporated by reference as though fully set forth as conclusions of law.

12.     Under 28 U.S.C. § 1334, jurisdiction over these Chapter 11 Cases is vested in the United States District Court for the Southern District of New York (the "**District Court**").  Under 28 U.S.C. § 157(a), the District Court has referred all cases under title 11 and any and all proceedings arising under title 11 or arising in or related to a case under title 11 to the bankruptcy judges of the district.  *See Amended Standing Order of Reference*, dated January 31, 2012 (Preska, C.J.).  Therefore, the Bankruptcy Court has authority to make and enter this Confirmation Order under 28 U.S.C. § 157(b)(1) and (b)(2)(L).

13.     Notice of the Confirmation Hearing was proper and appropriate as was notice of the deadlines for Filing objections to the Plan and for the submission of ballots with respect to the Plan.

14.     The Plan divides Claims against and interests in the Debtors into Classes.  Only Classes of claims or interests that are Impaired under a plan and that are entitled under a plan to some distribution are entitled to vote on the plan.  The Classes that are not Impaired under the Plan are Classes FD1, FD2, FD3, FD4, AJ1, AJ3, AJ4, FA1, FA2, FA3, and FA4 (the "**Unimpaired Classes**").  Classes of claims or interests who receive no distribution under a plan are deemed to reject the plan and not entitled to vote.  The Classes whose Holders will receive no Distribution

under the Plan and therefore also are not entitled to vote are Classes FD6, FD7, AJ6, AJ7, FA6, and FA7 (the "**Deemed Rejected Classes**"). Holders in Classes FD5, AJ5, and FA5 (the "**Voting Classes**," and together with the Deemed Rejected Classes, the "**Impaired Classes**") are Impaired under the Plan and were entitled to accept or reject the Plan. In accordance with the Procedures Order, to be counted, ballots with respect to the Plan completed by Holders in the Voting Classes had to be received by the Trustee's administrative agent, Omni, no later than November 13, 2019 at 5:00 P.M. (Eastern Time).

15. Under section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims is deemed to have accepted a plan if class members holding at least two-thirds in amount and more than one-half in number of all allowed Claims of class members actually voting have voted in favor of the plan.

16. Here, the requirements of section 1126 of the Bankruptcy Code have been satisfied. In each Voting Class, the requisite majority of Holders who timely voted, both in number and amount, voted in favor of the Plan.

17. Section 1129 of the Bankruptcy Code contains the standards for confirmation of a plan under chapter 11. *See In re LightSquared, Inc.*, 534 B.R. 522, 533 (S.D.N.Y. 2015). When a plan under chapter 11 satisfies each of the requirements contained in section 1129(a), the court shall confirm the plan without considering section 1129(b). *Id.* However, if a class of claims or interests is Impaired and does not accept the plan, then the court applies section 1129(b). *Id.*; *In re Journal Register Co.*, 407 B.R. 520, 529 (Bankr. S.D.N.Y. 2009). Section 1129(b) provides that, if a plan meets all of the requirements of 1129(a) *except* 1129(a)(8), the court shall confirm the plan so long as the plan (i) does not discriminate unfairly, and (ii) is fair and equitable, with respect to each class of Claims or interests that is Impaired and has not accepted the plan.

### A. **Compliance with Sections 1122 and 1123 of the Bankruptcy Code**

18.  Section 1129(a)(1) of the Bankruptcy Code permits a court to confirm a plan only if the plan complies with the applicable provisions of title 11. *See Journal Register*, 407 B.R. at 531-32. A plan must comply with sections 1122, which governs classification of Claims and interests, and section 1123, which sets forth the provisions that are required to be, or may be, included in a plan. *Id.*

19.  Section 1122(a) of the Bankruptcy Code requires only that claims within a class be substantially similar. Here, Section 3 of the Plan, designating Classes of Claims and Interests, places only Claims and Interests into each particular Class that are substantially similar to the other Claims or Interests in the Class. The Plan therefore complies with section 1122(a) of the Bankruptcy Code. *See Aegerion*, 605 B.R. at 30; *Texaco*, 84 B.R. at 905.

20.  Bankruptcy Code section 1123(a) lists mandatory plan provision, and section 1123(b) lists permissive plan provisions.

21.  Section 1123(a)(1) of the Bankruptcy Code requires that a plan designate, subject to section 1122, classes of claims, other than claims of kind specified in section 507(a)(2) (administrative expenses), 507(a)(3) (involuntary case gap claims), or 507(a)(8) (certain unsecured tax claims) and classes of interests. In designating the twenty Classes set forth in Section 3 of the Plan, the Trustee has satisfied the requirement of section 1123(a)(1) of the Bankruptcy Code.

22.  Section 1123(a)(1) does not require the classification of claims arising under section 507(a)(2), (a)(3), and (a)(8). Regardless, the Plan does not classify such Claims. Rather, Section 2 of the Plan sets forth the treatment of Administrative Claims (including Professional Fee Claims) and Priority Tax Claims and explicitly excludes such Claims from classification. Therefore, the designation of such Claims under the Plan is appropriate under section 1123(a)(1) of the Bankruptcy Code.

23.     Section 1123(a)(2) of the Bankruptcy Code requires that a plan specify any class of Claims or interests that is not impaired under the plan. In Section 3 of the Plan, the Trustee specifies that Claims in Classes FD1, FD2, FD3, FD4, AJ1, AJ3, AJ4, FA1, FA2, FA3, and FA4 are not Impaired. The Plan's treatment of those Claims leaves them not Impaired under section 1124 of the Bankruptcy Code. Accordingly, the Plan satisfies section 1123(a)(2) of the Bankruptcy Code. *See Texaco*, 84 B.R. at 905.

24.     Section 1123(a)(3) of the Bankruptcy Code requires that a plan specify the treatment of any class of claims or interests that is impaired under the plan. With the exception of claims falling within Bankruptcy Code sections 507(a)(2), (a)(3), and (a)(8); every claim and interest in a chapter 11 case must be placed in a class, and every class must be designated as impaired or not impaired. The Plan satisfies these requirements. Section 3 of the Plan specifies that Classes FD5, FD6, FD7, AJ5, AJ6, AJ7, FA5, FA6, and FA7 are Impaired. Section 3 of the Plan further sets forth the treatment of Claims and Interests in the Impaired Classes. The discussion in Section 3 of the treatment of the Impaired Classes under the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code. *See Texaco*, 84 B.R. at 905.

25.     Section 1123(a)(4) of the Bankruptcy Code requires that a plan provide the same treatment for each Claim or interest in a particular class, unless the holder of a particular Claim or interest agrees to less favorable treatment. Section 1124(a)(4) only requires equality of treatment *within a class*—not across all Claims and interests. *See In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1061 (3d Cir. 1987); *Aegerion*, 605 B.R. at 30. The Plan provides for the same treatment for each Claim or Interest within each Class, except for the Claim of Punjab National Bank, which has agreed to the less favorable treatment. Thus, the Plan complies with section 1123(a)(4) of the Bankruptcy Code.

26.     Section 1123(a)(5) of the Bankruptcy Code requires that a plan provide adequate means for the plan's implementation and provides a non-exhaustive list of methods for implementing a plan.  Here, Section 5 of the Plan sets forth the means by which the Trustee will implement the Plan.  Namely, the Trustee will transfer substantially all of the Estates' assets to the Liquidating Trusts, and the Liquidating Trustee will oversee the liquidation of the assets and implementation of the Plan.  The means of implementation detailed in Section 5 of the Plan are adequate and appropriate for carrying out the provisions of the Plan and therefore satisfy the requirements of section 1123(a)(5) of the Bankruptcy Code.

27.     Section 1123(a)(6) of the Bankruptcy Code requires that a plan provide for the inclusion in the charter of the debtor, if the debtor is a corporation, of a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power, an appropriate distribution of such power among such classes, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default and the payment of such dividends. Here, Section 5.3 of the Plan provides for the dissolution of the Debtors as soon after the Effective Date as is practicable.  Section 10.10.2 of the Plan further provides that, except to the extent a Debtor is dissolved under Section 5.3, each of the Debtors' formation documents shall be deemed amended to prohibit the issuance by the Debtors of nonvoting securities.  Accordingly, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

28.     Section 1123(a)(7) of the Bankruptcy Code requires that a plan contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee.  The Plan does not set forth the

appointment of any officers, directors, or trustees for the Debtors, but rather Section 5.3 of the Plan requires the dissolution of the Debtors as soon after the Effective Date as is practicable. Thus, there are no provisions inconsistent in that regard to the interests of creditors, equity holders, or public policy, and the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code.

29. The Plan contains a number of provisions that are permitted, but not required under section 1123(b) of the Bankruptcy Code. As required under section 1123(b)(6), the Plan does not include any provisions that are inconsistent with the applicable provisions of title 11.

30. Therefore, the Plan complies with section 1122 of the Bankruptcy Code, and with the mandatory and permissive provisions of sections 1123 of the Bankruptcy Code. Moreover, the Plan does not violate any other applicable provision of title 11.

**B.  Compliance with Section 1129(a) of the Bankruptcy Code**

31. Because the Plan satisfies sections 1122 and 1123 of the Bankruptcy Code, it also satisfies the requirements of section 1129(a)(1) of the Bankruptcy Code. *See Aegerion*, 605 B.R. at 30; *Texaco*, 84 B.R. at 906.

32. Section 1129(a)(2) of the Bankruptcy Code requires that a court shall confirm a plan only if the proponent of the plan complies with the applicable provisions of the Bankruptcy Code. The main purpose of section 1129(a)(2) is to require, as a condition of confirmation, that the court ascertain whether the proponent of the plan has complied with the requirements of Bankruptcy Code section 1125 in the solicitation of acceptances of the plan. *See Texaco*, 84 B.R. at 906-07; *Toy & Sports Warehouse*, 37 B.R. at 149. Under section 1125, a postpetition solicitation of votes on a plan is improper unless the court has approved a written disclosure statement filed with the plan. *See In re Media Cent., Inc.*, 89 B.R. 685, 688 (Bankr. E.D. Tenn. 1988). Here, in its Procedures Order, the Court approved the Disclosure Statement and the procedures and materials for soliciting

votes on the Plan. Thereafter, the Trustee through its administrative agent, Omni, timely mailed copies of the Disclosure Statement and the Plan in accordance with the Procedures Order. The Trustee has complied with all other applicable provisions of title 11 and, therefore, has satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.

33. Section 1129(a)(3) of the Bankruptcy Code requires as a condition to confirmation that a plan be proposed in good faith and not by any means forbidden by law. *See Johns-Manville*, 843 F.2d at 649; *LightSquared*, 534 B.R. at 537-38. The term "good faith" is not specifically defined in the Bankruptcy Code. *Texaco*, 84 B.R. at 907. However, in the context of section 1129(a)(3), the Second Circuit has instructed that "a plan will be found in good faith if it was proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected." *In re Bd. of Directors of Telecom Argentina, S.A.*, 528 F.3d 162, 174 (2d Cir. 2008); *LightSquared*, 534 B.R. at 537-38. Where a plan calls for liquidation rather than reorganization, courts consider whether the plan is designed to maximize value for the debtor's creditors. *See In re Jandous Elec. Const. Corp.*, 115 B.R. 46, 52-53 (Bankr. S.D.N.Y. 1990); *accord In re Oldco M. Corp.*, No. 09-13412 (MG), 2010 WL 2910136, at *7 (Bankr. S.D.N.Y. Feb. 23, 2010). Because no timely objection to the Plan raising section 1129(a)(3) has been filed, the Court may determine that the Plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues. *See* Bankruptcy Rule 3020(b)(2). The Trustee proposed the Plan consistent with the objectives and purposes of the Bankruptcy Code and with honesty and good intentions and with a basis for expecting that, under the circumstances, it was the best means for maximizing any recovery by creditors of the Debtors. Therefore, the Plan has been proposed in good faith, not by any means forbidden by law, and complies with section 1129(a)(3) of the Bankruptcy Code.

34. Section 1129(a)(4) of the Bankruptcy Code requires as a condition to confirmation that any payment made or to be made by the proponent, the debtor, or by a person issuing

securities, or acquiring property under the plan, for services or for costs and expenses in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of the court, as reasonable. *See Texaco*, 84 B.R. at 907-08; *Future Energy Corp.*, 83 B.R. at 487-88. Section 2.3 of the Plan sets forth the procedures for Professionals who have been retained by the Debtors' Estates to seek compensation. Those procedures require such Professionals to file their requests for compensation with the Court and obtain Court approval unless the Court orders otherwise. Further, Section 5.6 of the Plan and Section 3.6 of the Liquidating Trust Agreement set forth the procedures for the Liquidating Trustee to pay operating expenses associated with the Liquidating Trusts. Those procedures allow for the monthly payment of reasonable fees and expenses without further Court approval, unless the Liquidating Trustee or PNB objects, in which case the parties may submit the dispute to the Court for resolution. Such procedures for payment of professionals for costs and expenses in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases are reasonable and the Plan complies with section 1129(a)(4) of the Bankruptcy Code.

35.     Section 1129(a)(5)(A) of the Bankruptcy Code requires as a condition to confirmation that the proponent of the plan disclose the identity and affiliations of any individual proposed to serve after confirmation as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor of the debtor under the plan, and requires the appointment or continuance of such individual to be consistent with the interests of creditors and equity security holders and with public policy. The Plan does not propose that any individual serve as director, officer, or voting trustee of any Debtor, but rather provides for the dissolution of the Debtors as soon after the Effective Date as is practicable. The Plan does provide for the Liquidating Trustee to serve as trustee of the Liquidating Trusts

and identifies the Liquidating Trustee as Richard Levin, not individually, but solely as the trustee of the Liquidating Trusts. Accordingly, the Plan satisfies the requirements of section 1129(a)(5)(A) of the Bankruptcy Code.

36. Section 1129(a)(5)(B) of the Bankruptcy Code requires as a condition to confirmation the proponent of a plan to disclose the identity of any insider who will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider. Here, the Plan does not provide for the reorganization of the Debtors, but rather for their dissolution. Accordingly, section 1129(a)(5)(B) of the Bankruptcy Code is not applicable.

37. Section 1129(a)(6) of the Bankruptcy Code requires as a condition to confirmation that any governmental regulatory entity with jurisdiction over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval. The Debtors do not have any governmental regulatory entity with jurisdiction over their rates, and thus, section 1129(a)(6) of the Bankruptcy Code is not applicable.

38. Section 1129(a)(7) of the Bankruptcy Code sets forth the "best interest of creditors" test. *Journal Register*, 407 B.R. at 539. Under that test, creditors and interest holders in each Impaired Class must either (i) accept the plan; or (ii) receive or retain under the plan property of a value, as of the effective date, not less than the amount that such holder would receive or retain if the debtor were liquidated under chapter 7. Here, the vast majority of Holders in the Voting Classes have voted in favor of the Plan. Further, the Plan provides for the orderly liquidation of the Estates' assets through the Liquidating Trusts and Distribution of the proceeds to Holders of Claims. The procedures for the liquidation of the Estates' assets in the Plan are the most efficient and economical means of maximizing the value of the assets for Distribution to Holders of Claims. If these Chapter 11 Cases were converted to chapter 7 cases, there would be additional delay and expense for the Debtors' Estates, and the bar date for the filing of Claims would be

reopened.  This would diminish the proceeds available for recovery by Holders.  Accordingly, under the Plan, any recovery by Holders will not be less than the amounts the Holders would receive in a chapter 7 liquidation.  Therefore, the Plan satisfies the "best interest of creditors" test in section 1129(a)(7) of the Bankruptcy Code.

39.     Section 1129(a)(8) of the Bankruptcy Code requires as a condition to confirmation that each class of claims or interests either accepts the plan or is not impaired under the plan. Every Class that is not Impaired is deemed to have accepted the Plan, and every Voting Class has voted to accept the Plan.  However, Holders in the Deemed Rejected Classes will not receive a Distribution under the Plan and are therefore deemed to reject it.  Accordingly, the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code.  Nevertheless, the Plan is confirmable because it satisfies section 1129(b) of the Bankruptcy Code as discussed below.  *See LightSquared*, 534 B.R. at 533.

40.     Section 1129(a)(9) of the Bankruptcy Code requires as a condition to confirmation that the plan provide for the payment in full of priority claims.  Sections 2 and 3 of the Plan provides for the payment in cash in full on the Effective Date of priority claims.  The treatment of priority claims in those Sections complies with the requirements of section 1129(a)(9) and therefore the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

41.     Section 1129(a)(10) of the Bankruptcy Code requires as a condition to confirmation that at least one Impaired class accept the plan without including any acceptance of the plan by any insider.  Here, the Voting Classes are Impaired, and all voted to accept the Plan.  None of those Classes includes any insiders of the Debtors.  Accordingly, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

42.     Section 1129(a)(11) of the Bankruptcy Code requires as a condition to confirmation that the court find that confirmation of the plan is not likely to be followed by the liquidation or

further reorganization of the debtor or any successor to the debtor, unless such liquidation or reorganization is proposed in the plan. *See Texaco*, 84 B.R. at 910; *accord Journal Register*, 407 B.R. at 539. The feasibility of the plan need not be guaranteed, but the plan must offer a reasonable assurance of success. *See Journal Register*, 407 B.R. at 539 (quoting *Johns-Manville*, 843 F.2d at 649). Here, the Plan calls for the dissolution of the Debtors and the liquidation of their assets. Accordingly, there is no risk that the Debtors will require future reorganization or liquidation, and the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

43. Section 1129(a)(12) of the Bankruptcy Code requires the payment of all fees required under 28 U.S.C. § 1930, including filing fees and U.S. Trustee quarterly fees. The Trustee believes that all such fees have been paid on a current basis and that no obligations in this regard will exist on the Effective Date. In any event, the Plan explicitly requires the Trustee to pay all amounts due under 28 U.S.C. § 1930(a)(6) on or before the Effective Date. Therefore, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

44. The Debtors are not obligated for any retiree benefits as that term is defined in section 1114 of the Bankruptcy Code, and therefore section 1129(a)(13) of the Bankruptcy Code does not apply here.

45. The Debtors are not individuals, are not required to pay domestic support obligations, and are not nonprofit entities; therefore, sections 1129(a)(14), 1129(a)(15) and 1129(a)(16) of the Bankruptcy Code do not apply here.

C. **Compliance with Section 1129(b) of the Bankruptcy Code**

46. The Trustee has demonstrated that all applicable requirements of section 1129(a) of the Bankruptcy Code other than those in section 1129(a)(8) have been satisfied. Accordingly, under section 1129(b), the Plan shall be confirmed if it meets the separate requirements contained in section 1129(b). *See Aegerion*, 605 B.R. at 31. Section 1129(b) requires that a plan (i) must not

discriminate unfairly, and (ii) must be fair and equitable, with respect to each class of claims or interests that is impaired and has not accepted the plan. Here, every Voting Class has voted to accept the Plan. However, the Deemed Rejected Classes will not receive a distribution under the Plan and are therefore deemed to reject it.

47. The "unfair discrimination" standard "ensures that a dissenting class will receive relative value equal to the value given to all other similarly situated classes." *In re Johns-Manville Corp., 68 B.R. 618*, 636 (Bankr. S.D.N.Y. 1986); *accord Aegerion*, 605 B.R. at 33. "Thus, a plan proponent may not segregate two similar claims or groups of claims into separate classes and provide disparate treatment for those classes." *Id.* Here, the Deemed Rejected Classes consist of Subordinated Claims and equity Interests, and they represent all such Claims against and Interests in the Debtors. Thus, there are not any other Classes under the Plan that are similar or comparable to the Deemed Rejected Classes, and there can be no disparate treatment. Accordingly, the Plan does not discriminate unfairly.

48. Section 1129(b)(2) provides, in relevant part, that a plan is fair and equitable to an impaired class of unsecured claims or equity interests if the holder of any claim or interest junior to the impaired class will not receive or retain any property under the plan. The Deemed Rejected Classes are the most junior Classes of Claims and Interests for each Debtor, and none of the Holders in the Deemed Rejected Classes will receive any Distributions. Accordingly, the Plan is fair and equitable with respect to each Deemed Rejected Class.

49. Thus, the Plan satisfies the requirements under section 1129(b) of the Bankruptcy Code.

D. **Compliance with Section 1129(d) of the Bankruptcy Code**

50. Section 1129(d) of the Bankruptcy Code provides that, on the request of a party in interest that is a governmental unit, the court may not confirm a plan if the principal purpose of

the plan is the avoidance of taxes or the avoidance of section 5 of the Securities Act of 1933. No governmental unit has suggested that the purpose of the Plan is to avoid taxes or to avoid the application of section 5 of the Securities Act of 1933, nor has any governmental unit requested that the Court not confirm the Plan. Thus, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

* * *

51. The Trustee, as the proponent of the Plan, has met his burden of proving the necessary elements of section 1129 of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard. The Court also finds that the Trustee has satisfied the elements of section 1129 of the Bankruptcy Code by clear and convincing evidence.

**E.  Satisfaction of Conditions to Confirmation**

52. Each of the conditions precedent to entry of this Confirmation Order, as set forth in Section 7.1 of the Plan, has been satisfied or waived in accordance with the provisions of the Plan.

**F.  Likelihood of Satisfaction of Conditions Precedent to Effectiveness**

53. Each of the conditions precedent to the Effective Date of the Plan, as set forth in Section 7.2 of the Plan, has been satisfied or waived in accordance with the provisions of the Plan, or is reasonably likely to be satisfied.

Based on the foregoing findings of fact and conclusions of law,

**IT IS ORDERED:**

1. *Confirmation of Plan.* The Plan is confirmed under section 1129 of the Bankruptcy Code. The Plan, and all amendments, modifications, and supplements thereto, including without limitation, all annexes, exhibits, and schedules thereto (which agreements and documents shall be substantially in the respective forms attached as exhibits to the Plan or included in the Plan

Supplement), and all terms and conditions thereof, are approved. The terms of the Plan, the Plan Supplement, and exhibits thereto are incorporated by reference into, and are an integral part of, this Confirmation Order.

2.      *Plan Modifications.*  Upon entry of this Confirmation Order, and prior to substantial consummation of the Plan as defined in section 1101(2) of the Bankruptcy Code, the Trustee may, upon order of this Court and subject to Section 10.1 of the Plan, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan so long as such modifications do not adversely affect the treatment of Claims and Interests under the Plan.

3.      *Binding Effect of Plan.*  Under section 1141 of the Bankruptcy Code, except as otherwise expressly provided in the Plan or this Confirmation Order, on or after the Effective Date, the Plan and all exhibits thereto (including the Plan Supplement) shall be binding upon and inure to the benefit of the Debtors, the Trustee, the Liquidating Trustee, the Liquidating Trusts, all Holders of Claims in and Interests of the Debtors, whether or not such Holders are deemed to have an Allowed Claim or Interest and whether or not such Holders will receive or retain any property or interest in property under the Plan, any Entity named or referred to in the Plan, and the respective representatives, heirs, executors, administrators, successors, and assigns of all such Entities.

4.      *Immediate Effect.*  The 14-day stay of this Confirmation Order as set forth in Bankruptcy Rule 3020(e) is hereby modified to permit the immediate confirmation and effectiveness of the Plan, upon the satisfaction or waiver of all conditions precedent thereto set forth in the Plan. This modification of the stay set forth in Bankruptcy Rule 3020(e) shall in no

way affect the time for Filing a notice of appeal from this Confirmation Order in accordance with Bankruptcy Rule 8002.

5. *Entire Plan Confirmed.*  Failing to specifically describe or include any provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, as the Court intends that the Plan be approved and confirmed in its entirety.  Each provision of the Plan shall be deemed authorized and approved by this Confirmation Order and shall have the same binding effect of every other provision of the Plan, whether or not mentioned in this Confirmation Order.  If any inconsistencies occur between the Plan and this Confirmation Order, this Confirmation Order shall govern.

6. *Sale Transactions Not Affected.*  Nothing in this Confirmation Order shall affect any prior Sale Order or other transaction between any Debtor and any third party that was approved by the Court.

7. *Retained Causes of Action.*  All Retained Causes of Action are retained by, vested in, and preserved for the Liquidating Trusts under Bankruptcy Code section 1123(b), including all Retained Causes of Action provided in the applicable schedule to the Plan Supplement.  Upon the Effective Date, the Liquidating Trustee shall be substituted as plaintiff, defendant, or in any other capacity for the Chapter 11 Trustee without need for any further motion practice, notice, or order in any case, action, or matter before the Bankruptcy Court.

8. *Authorization to Execute Transfers to the Liquidating Trusts.*  The Trustee and the Liquidating Trustee are authorized to execute the transfers and related actions set forth in in Section 5.2 of the Plan.  To the extent necessary, all Entities shall cooperate with the Chapter 11 Trustee to implement the transfer of the Retained Assets to the Liquidating Trusts.  The Cash contribution from the Estates to the Liquidating Trusts under the Plan shall be deemed to be a Distribution to Holders for purposes of Bankruptcy Code section 326.

9. *United States Trustee Fees.* Any transfer from the Estates to the Liquidating Trustee shall not constitute a "disbursement" under 28 U.S.C. § 1930(a)(6). The Liquidating Trustee shall pay any statutory fees due under 28 U.S.C. § 1930(a)(6) based on disbursements made by the Liquidating Trustee, and such fees shall be paid until entry of a final decree or an order converting or dismissing the case.

10. *Authority of the Liquidating Trustee.* From and after the Effective Date, the Liquidating Trustee shall be authorized to implement the Liquidating Trust Agreement and the provisions of the Plan that are contemplated to be implemented by the Liquidating Trustee. The Liquidating Trustee is hereby appointed as the representative of each of the Estates under Bankruptcy Code sections 1123(a)(5), (a)(7), and (b)(3)(B) and vested with the authority and power (subject to the Liquidating Trust Agreement) to, among other things, (a) object to Claims against the Debtors; (b) administer, investigate, prosecute, settle, or abandon all Retained Causes of Action assigned to the Liquidating Trusts; (c) make Distributions provided for in the Plan, including on account of Allowed Claims; and (d) take such action as is required to administer, wind-down, and close the Chapter 11 Cases. As the representative of the Estates, the Liquidating Trustee shall succeed to all of the rights and powers of the Chapter 11 Trustee with respect to all Retained Causes of Action assigned and transferred to the Liquidating Trusts, and the Liquidating Trustee shall be substituted for the Chapter 11 Trustee and the Estates, as applicable, as the party in interest in all litigation pending on the Effective Date concerning the Retained Causes of Action.

11. *Payment of Liquidating Trust Operating Expenses.* The Liquidating Trustee is authorized to disburse funds from Available Cash for purposes of paying the Liquidating Trust Operating Expenses for each Liquidating Trust without the need for any further order of the

Court.  The Liquidating Trustee may reserve a portion of Available Cash for the payment of Liquidating Operating Expenses.

12.     *Full and Final Satisfaction.*  Upon the Effective Date, all debts of the Liquidating Trusts shall be deemed fixed under the Plan, except as provided in the Plan, and the Liquidating Trusts shall have no liability on account of any Claims or Interests except as provided in the Plan and the Liquidating Trust Agreement.  All payments and all Distributions made by the Liquidating Trustee under the Plan shall be in full and final satisfaction, settlement, and release of all Claims against the respective Liquidating Trust; however, nothing contained in the Plan or this Confirmation Order shall be deemed to constitute or result in a discharge of the Debtors under Bankruptcy Code section 1141(d).

13.     *Distributions.*  The Disbursing Agent shall make all Distributions required under the Plan and shall implement such procedures as it deems necessary to make Distributions under the Plan so as to efficiently and economically assure prompt and proportionate Distributions. Commencing upon the Effective Date, the Liquidating Trustee shall be authorized to distribute the amounts required under the Plan to the Holders of Allowed Claims according to the provisions of the Plan.

14.     *Resolution of Disputed Claims.*  After the Effective Date, the Liquidating Trustee shall have and retain any and all rights and defenses that the Chapter 11 Trustee or Debtors had with respect to any Claim or Interest immediately before the Effective Date.  All Proofs of Claim filed after the Initial Distribution Date shall be deemed disallowed and expunged as of the Effective Date without any further notice and without any action, order, or approval of the Court, and Holders of such Claims shall not receive any Distributions on account of such Claims, except (1) if such late Filing is authorized by an order of the court or by the Liquidating Trustee, or (2) as provided in the Plan or otherwise agreed.  Except as otherwise specifically provided in the

Plan, after the Effective Date, the Liquidating Trustee shall have the sole authority to: (a) File, withdraw, or litigate to judgment objections to Claims; (b) settle or compromise any Disputed Claim without any further notice or any action, order, or approval by the Court; and (c) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice or any action, order, or approval by the Court. Any Claim that has been satisfied, or that has been amended, superseded, canceled, or otherwise expunged (including under the Plan), may be adjusted or expunged (including on the Claims Register to the extent applicable) by the Liquidating Trustee without the need to object to such Claim, without any further notice, and without any further action, order, or approval of the Court. Any objections to Claims shall be Filed on or before 180 days after the Effective Date, subject to the extension of the deadline for objecting to such Claims by order of the Bankruptcy Court.

15. *PNB Settlement.* Each PNB Claim shall be Allowed against each Estate for all purposes under the Plan as of the Effective Date and shall be treated under the Plan as provided in Sections 3.2.5.2, 3.3.5.2, and 3.4.5.2.

16. *Setoffs.* The Liquidating Trustee may set-off against any Claim (for purposes of determining the Allowed amount of such Claim on which Distribution shall be made), any Claim of any nature whatsoever that the Estate or the Liquidating Trust may have against the Claim Holder, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Liquidating Trust of any such Claim or right of setoff it may have against the Claim Holder. If the Liquidating Trustee chooses to set-off against an Allowed Claim, then, for purposes of determining the amount of the Allowed Claim, the Liquidating Trustee shall deduct therefrom an amount equal to the amount of any Claim that the Liquidating Trust holds against the Holder thereof, to the extent that applicable law permits such setoff,

recoupment, or reduction. Holders of Allowed Claims retain whatever rights to setoff they are otherwise entitled to assert under Bankruptcy Code section 553.

17. *Executory Contracts*. Subject to and upon the Effective Date, the assumption, assumption and assignment, or rejection of the Executory Contracts and Unexpired Leases assumed, assumed and assigned, or rejected under the Plan are hereby approved. Each Executory Contract and Unexpired Lease assumed under the Plan or by Order of the Court which has not been assigned to a third party before the Effective Date shall vest in the Liquidating Trust and be fully enforceable by the Liquidating Trustee in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Court authorizing and providing for the assumption of such Executory Contract or Unexpired Lease under applicable federal law.

18. *Exculpation*. Section 8.2 of the Plan (Exculpation) is not approved, and in its stead, it is ordered:

    a. For the purposes of this paragraph 18, (i) "**Exculpated Party**" means (a) the Chapter 11 Trustee, (b) the Liquidating Trustee, (c) PNB, or (d) with respect to any Entity described in the foregoing clauses (a) through (c), such Entity's respective postpetition officers, directors, shareholders, members, employees, representatives, advisors, attorneys, financial advisors, investment bankers, agents, related professionals, or affiliates; and (ii) "**Exculpated Act**" means any act or omission occurring or failing to occur after the Petition Date relating to or arising out of the Chapter 11 Cases, including the negotiation and execution of the Plan, the Disclosure Statement, the Liquidating Trust Agreement, any Sale Order or related sale process, the solicitation of votes for and the pursuit of confirmation of the Plan, the Effective Date, the management of the Liquidating Trusts, the liquidation of the Liquidating Trust Assets, the administration of the Plan, or the

property to be distributed under the Plan, including all documents ancillary thereto, all decisions, actions, inactions, and alleged negligence or misconduct relating thereto.

b. As of the Effective Date, notwithstanding any other provision of the Plan except paragraph 18(c) below, to the extent permitted by law, (i) no Exculpated Party shall have or incur liability to any other party in interest, or any of their respective officers, directors, shareholders, members, employees, representatives, advisors, attorneys, financial advisors, investment bankers, agents, related professionals, or affiliates for any Exculpated Act; and (ii) no Holder of a Claim or Interest, nor any other party in interest, nor any of their respective officers, directors, shareholders, members, employees, representatives, advisors, attorneys, financial advisors, investment bankers, agents, related professionals, or affiliates, shall have any right of action against any Exculpated Party for any Exculpated Act.

c. The Plan shall not exculpate or release any Exculpated Party from any cause of action related to any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct, or fraud (as determined under applicable non-bankruptcy law).

d. Notwithstanding paragraphs, 18, 19 and 20 of this Order, nothing in the Plan or this Order shall limit the liability of the lawyers to their respective clients pursuant to N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.8 Rule 1.8(h)(1) (2009).

19. *Release.* As of the Effective Date, each Holder of a Claim who has accepted the Plan is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Exculpated Party from any and all Claims that were not the result of gross negligence, fraud, willful misconduct, or criminal conduct by the Exculpated Party.

20.     *Injunction.*  From and after the Effective Date, except as otherwise specifically provided in the Plan or this Confirmation Order, all Entities who have held, hold, or may hold a Claim or Interest based upon any act or omission, transaction, or other activity related to the Debtors, the Chapter 11 Trustee, or the Chapter 11 Cases that occurred before the Effective Date, shall be precluded and permanently enjoined on and after the Effective Date from the enforcement, attachment, collection, encumbrance, or recovery with respect to any such Claim or Interest against the Liquidating Trusts, the Retained Assets, or the Purchased Assets. From and after the Effective Date, except as otherwise specifically provided in the Plan or this Confirmation Order. All Entities that have held, hold, or may hold an Exculpated Liability against any Exculpated Party are permanently enjoined from taking any of the following actions on account of such Exculpated Liability: (i) commencing or continuing, in any manner and in any place, any suit or other proceeding; (ii) enforcing in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; or (iv) asserting a setoff, right of subrogation, or recoupment against any debt, liability, or obligation due to any Exculpated Party.

21.     *Post-Effective Date Liability of Liquidating Trustee and PNB.*  The Liquidating Trustee and the Liquidating Trustee's, and PNB and PNB's Agents shall not have or incur liability to any Entity for any act taken, or omission made, in good faith in connection with or related to Distributions made under the Plan or the Liquidating Trust Agreement, the administration of the Liquidating Trusts, and the implementation of the Plan.  The Liquidating Trustee, the Liquidating Trustee's Agents, PNB, and PNB's Agents shall be entitled to rely reasonably on the advice of counsel with respect to their duties and responsibilities under the Plan and the Liquidating Trust Agreement.  The exculpation provisions contained in Section 8 of the Plan are necessary to, among other things, facilitate Confirmation and minimize potential Claims arising after the Effective Date for indemnity, reimbursement, or contribution from the Estates, the Liquidating

Trusts, or each party's respective property. The Chapter 11 Trustee and each of his agents, representatives, employees, advisors, and attorneys shall be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code and to have participated in good faith and in compliance with the Bankruptcy Code. No such parties shall have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan. Notwithstanding the foregoing, nothing herein or in Section 8 of the Plan shall alter any provision in the Liquidating Trust Agreement that explicitly provides for the potential liability of the Liquidating Trustee to any Entity.

22.     *PNB as Consulting Creditor.* As provided in greater detail in the Liquidating Trust Agreement, PNB shall have consultation and information rights with respect to the Liquidating Trusts. PNB shall not receive compensation for any action it takes in connection with the Plan. PNB shall be entitled to reimbursement of reasonable costs and expenses in connection with its role as a consulting creditor, including costs of counsel or other professionals, which may be paid by the Liquidating Trusts, as appropriate, without the need for Court approval.

23.     *Implementation.* The Chapter 11 Trustee and Liquidating Trustee are authorized to take all steps and execute all documents necessary to execute the provisions contained in the Plan.

24.     The Court retains jurisdiction with respect to all matters arising from or related to the Chapter 11 Cases, the Plan, and this Confirmation Order.

Dated: November 20, 2019                                    ***/s/ Sean H. Lane***
                                                           The Honorable Sean H. Lane
                                                           United States Bankruptcy Judge