Hearing Date and Time: January 22, **2020** at 2:00 p.m. ET
Objection Deadline: January 15, **2020** at 5:00 p.m. ET

JENNER & BLOCK LLP
Marc Hankin
Carl Wedoff
919 Third Avenue
New York, New York 10022
(212) 891-1600

Angela Allen (admitted *pro hac vice*)
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350

*Counsel for the Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| FIRESTAR DIAMOND, INC., *et al.* | No. 18-10509 (SHL) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF CHAPTER 11 TRUSTEE'S MOTION FOR**
**AN ORDER APPROVING SETTLEMENT WITH MARKS PANETH LLP**

On December 26, 2019, Chapter 11 Trustee Richard Levin (the "**Trustee**") filed the annexed *Chapter 11 Trustee's Motion for an Order Approving Settlement with Marks Paneth LLP* (the "**Motion**").

A hearing on the Motion will be held before the Honorable Sean H. Lane of the United States Bankruptcy Court for the Southern District of New York on **January 22, 2020 at 2:00 p.m. (Prevailing Eastern Time)**, or as soon thereafter as counsel may be heard (the "**Hearing**"), in Courtroom 701 of the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), One Bowling Green, New York, New York 10004.

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Firestar Diamond, Inc. (2729), Fantasy, Inc. (1673), and Old AJ, Inc. f/k/a A. Jaffe, Inc. (4756).

Objections, if any, to approval of the Motion and entry of the proposed order must: (i) be made in writing; (ii) state with particularity the grounds therefor; (iii) be filed with the Bankruptcy Court (with a copy to the Judge's chambers); and (iv) be served upon (a) counsel to the United States Trustee for Region 2, 201 Varick Street, Suite 1006, New York, NY 10014 (Attn: Richard Morrissey, Esq.); (b) counsel to the Trustee, Jenner & Block LLP, 919 Third Avenue, New York, New York 10022 (Attn: Carl Wedoff, Esq.); (c) counsel to Marks Paneth LLP, Vedder Price P.C., 1633 Broadway, 31st Floor, New York, NY 10019 (Attn: Michael Schein, Esq.); and (d) counsel to Punjab National Bank, Cleary, Gottlieb, Steen & Hamilton LLP, One Liberty Plaza, New York, NY 10006 (Attn: Sean O'Neal) so as to be received by each of them no later than 5:00 p.m. (Eastern Time) on January 15, 2020 (the "**Objection Deadline**").

If no responses or objections are served by the Objection Deadline, the relief may be granted as requested in the Motion without further notice or a hearing. You need not appear at the Hearing if you do not object to the relief requested in the Motion. The Hearing may be continued or adjourned from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or at a later hearing.

*(Signature page follows.)*

Dated: December 26, 2019
New York, New York

Respectfully submitted,

**JENNER & BLOCK LLP**

By: <u>*/s/ Marc Hankin*</u>
Marc Hankin
Carl Wedoff
919 Third Avenue
New York, New York 10022
(212) 891-1600
mhankin@jenner.com
cwedoff@jenner.com

Angela Allen (admitted *pro hac vice*)
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350
aallen@jenner.com

*Counsel for the Chapter 11 Trustee*

Hearing Date and Time: **January 22**, **2020** at 2:00 p.m. ET
Objection Deadline: **January 15, 2020** at 5:00 p.m. ET

JENNER & BLOCK LLP
Marc Hankin
Carl Wedoff
919 Third Avenue
New York, New York 10022
(212) 891-1600

Angela Allen (admitted *pro hac vice*)
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350

*Counsel for the Chapter 11 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| FIRESTAR DIAMOND, INC., *et al.* | No. 18-10509 (SHL) |
| Debtors.[1] | (Jointly Administered) |

**CHAPTER 11 TRUSTEE'S MOTION FOR AN ORDER**
**APPROVING SETTLEMENT WITH MARKS PANETH LLP**

Richard Levin, not individually but solely in his capacity as chapter 11 trustee (the "**Trustee**") for the estates of Firestar Diamond, Inc. ("**Firestar**"), Fantasy, Inc. ("**Fantasy**"), and Old AJ, Inc. ("**Old AJ**," and together with Firestar and Fantasy, the "**Debtors**"), respectfully submits this motion (the "**Motion**") under Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for an order, substantially in the form attached hereto as Exhibit A (the "**Proposed Settlement Order**"), approving a settlement (the "**Settlement**"), substantially consistent with the terms of the settlement agreement attached hereto as Exhibit B

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Firestar Diamond, Inc. (2729), Fantasy, Inc. (1673), and Old AJ, Inc. f/k/a A. Jaffe, Inc. (4756).

(the "**Settlement Agreement**"), by and among the Trustee and Marks Paneth LLP ("**Marks Paneth**"). In support of the Motion, the Trustee respectfully states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter under 28 U.S.C. § 1334. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested in this Motion is Bankruptcy Rule 9019(a). The Trustee consents to this Court's entry of a final order on this Motion.

## BACKGROUND

2. On February 26, 2018 (the "**Petition Date**"), the Debtors filed petitions under chapter 11 in this Court. On March 9, 2018, this Court entered an Order directing that the Debtors' cases be jointly administered. (Dkt. 24.)

3. On June 14, 2018, the United States Trustee for Region 2 appointed Richard Levin as the trustee of the Debtors' estates in these jointly administered chapter 11 cases. (Dkt. 222.)

4. Between 2012 and the Petition Date, Marks Paneth received fees from Firestar and Fantasy as payment for audits and other accounting services.

5. After the Petition Date, the Debtors retained Marks Paneth to provide continued services in connection with these chapter 11 cases. (Dkts. 45, 88.) Post-petition, Marks Paneth has received approximately $495,000 in fees and expenses from the Debtors' estates. Marks Paneth asserts that it is owed additional fees and expenses that it has accrued but not yet sought from the Debtors' estates.

6. In addition to the payments described above, on the Petition Date, Firestar also paid Marks Paneth $20,000 on behalf of two of its affiliates, Firestar Diamond International, Inc. ("**FDII**") and Nirav Modi, Inc. ("**NMI**"). Marks Paneth was to use those funds as retainers to

2

represent FDII and NMI in their subsequent bankruptcy cases. However, those entities never filed for bankruptcy and Marks Paneth still holds the $20,000 in retainer fees.

7. On August 9, 2019, counsel for the Trustee sent a demand letter (the "**Demand Letter**") to counsel for Marks Paneth demanding disgorgement of the fees Marks Paneth had received from the Debtors both before and after the Petition Date and forfeiture of any additional fees Marks Paneth asserts it is owed from the Debtors' estates. The Demand Letter sought more than $1.5 million in damages based on various theories of recovery. Marks Paneth vigorously disagrees with the validity of the claims raised in the Demand Letter.

8. Following arms' length and good faith negotiations, the Parties ultimately reached the Settlement reflected in the Settlement Agreement. Its principal terms are as follows:[2]

   a. Marks Paneth shall pay the Trustee $125,000.
   b. Marks Paneth shall return to the Trustee the $20,000 in retainer fees that Marks Paneth received from Firestar on behalf of FDII and NMI.
   c. Marks Paneth shall waive any remaining fees or expenses still owed or purportedly owed to it solely from the Debtors' estates.
   d. Marks Paneth shall not be required to file a final fee application.
   e. The parties shall exchange mutual releases of all claims each holds against the other.

9. The parties' obligations under the Settlement Agreement are conditioned on, and shall be effective only upon, the Court's approval of the Settlement on a final basis.

## RELIEF REQUESTED

10. The Trustee requests that this Court enter the Proposed Settlement Order approving the Settlement under Bankruptcy Rule 9019(a).

---

[2] The description of the terms of the Settlement are subject in all respects to the express terms contained in the Settlement Agreement attached hereto as Exhibit B.

3

**BASIS FOR RELIEF**

11.     Bankruptcy Rule 9019(a) provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Rule 9019 empowers the Court to approve compromises and settlements if they are "fair, equitable, and in the best interests of the estate." *In re Residential Capital, LLC*, 497 B.R. 720, 749 (Bankr. S.D.N.Y. 2013); *see Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968). In determining whether a settlement is fair and equitable, a court is not required to decide the numerous issues of law and fact involved; it need only "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983); *Residential Capital*, 497 B.R. at 749. "Rather than conducting a mini-trial, the Court only needs to be apprised of those facts that are necessary to enable it to evaluate the settlement and to make a considered and independent judgment." *Residential Capital*, 497 B.R. at 749 (internal citations and quotation marks omitted).

12.     As a general matter, "'settlements and compromises are favored in bankruptcy as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate.'" *Residential Capital*, 497 B.R. at 749 (quoting *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 641–642 (Bankr. S.D.N.Y. 2012)); *see Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 455 (2d Cir. 2007) (settlements "help clear a path for the efficient administration of the bankrupt estate"). "Although courts have discretion to approve settlements, the business judgment of the debtor in recommending the settlement should be factored into the court's analysis." *In re MF Global Inc.*, No. 11-2790 MG, 2012 WL 3242533, at *5 (Bankr. S.D.N.Y. Aug. 10, 2012). Courts may also rely upon the opinion of trustee, the parties, and their respective counsel. *Id.*

4

13. The Second Circuit has identified seven interrelated factors that courts should consider when evaluating whether settlements fall within the range of reasonableness under Bankruptcy Rule 9019(a):

   a. the balance between the litigation's possibility of success and the settlement's future benefits;
   b. the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment;
   c. "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement;"
   d. whether other parties in interest support the settlement;
   e. the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement;
   f. "the nature and breadth of releases to be obtained by officers and directors[;]" and
   g. "the extent to which the settlement is the product of arm's length bargaining."

*Residential Capital, LLC*, 497 B.R. at 750 (quoting *In Motorola, Inc. v. Official Committee of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007)). An analysis of the *Iridium* factors demonstrates that the Settlement is fair, reasonable, and in the best interests of the Debtors' estates and creditors.

14. *First*, if the Trustee is required to litigate the claims raised in its Demand Letter to finality, there is no guarantee that the Debtors' estates will realize any greater—or even the same—net value represented by the Settlement. Instead, continued litigation poses the risk that Marks Paneth will raise one or more successful defenses to some or all of the Trustee's claims, resulting in a recovery less than the amount in the Settlement. Further, if Marks Paneth successfully seeks payment of additional fees and expenses from the Debtors' estates, it could delay the effectiveness of the Trustee's confirmed chapter 11 plan, which is contingent upon the aggregate amount of allowed claims being fixed below a certain amount. (*See* Dkt. 1106, at § 7.2.3.) By contrast, the Settlement resolves the competing claims between the parties now, promoting

5

the Trustee's efforts to consummate the plan and begin distributions to creditors. The Settlement is therefore more beneficial to the Debtors' estates and creditors than continued litigation.

15. *Second*, putting aside litigation risk, the cost to the Debtors' estates of continued litigation could materially impact the value of a successful result. The Trustee's professionals have already incurred substantial fees investigating and pursuing the claims in the Demand Letter. If forced to litigate, an evidentiary hearing will likely be necessary, requiring the Trustee's professionals to spend additional and significant amounts of time on discovery and preparing for the hearing. The Debtors' estates will bear these costs regardless of whether the Trustee prevails. As a result, the costs of continued litigation could significantly reduce the value to the Debtors' estates of any claims the Trustee holds against Marks Paneth.

16. *Third*, the Settlement serves the interests of the Debtors' creditors. The Settlement will return $145,000 to the Debtors' estates, prevent any further payments of estate dollars to Marks Paneth, maximize the amounts available for distribution to the Debtors' creditors, and move the Debtors' chapter 11 plan closer to effectiveness.

17. *Fourth*, the Trustee is unaware of any opposition to the Settlement from any interested party.

18. *Fifth*, the Trustee and Marks Paneth are both represented by sophisticated counsel. This Court is also familiar with both the complexity of these chapter 11 cases and the types of issues that would arise in any litigation concerning claims of this nature.

19. *Sixth*, the scope of the Parties' mutual releases are appropriate in light of the benefit to the Debtors' estates and the proposed Settlement.

20. *Seventh*, the Settlement was proposed, negotiated, and entered into by the Parties without collusion, in good faith, and from arms' length bargaining positions.

6

21.     Finally, this Motion and the parties' Settlement are proper means for the Court to approve the fees Marks Paneth already has received absent the filing of a final fee application. *In re White Mountain Communities Hospital, Inc.*, No. AZ-04-1569-MOSB, 2006 WL 6811024 (B.A.P. 9th Cir. Mar. 21, 2006), is instructive. There, the debtor and its special counsel during the bankruptcy case entered into a stipulation under which special counsel agreed to return a portion of the fees it had received from the estate and to waive its claim to all remaining unpaid fees. Over a creditor's objection, the bankruptcy court approved the stipulation, permitting the special counsel to retain the payments it had received. On appeal, the Bankruptcy Appellate Panel affirmed, analyzing the stipulation using the standard factors courts use to determine if a settlement is fair and reasonable. The panel found the stipulation fell within the range of reasonableness, noting that the estate likely recovered more than it would have if special counsel's application had been decided on the merits because counsel agreed to forego some of its claimed fees. The panel also noted that parties were given an opportunity to object to special counsel's fees by objecting to the motion to approve the stipulation or by objection to the application that special counsel previously had filed. *Id.* at *6-7.

22.     So too here. As part of the Settlement, Marks Paneth has agreed to forego a substantial portion of its claimed fees. Further, Marks Paneth previously has filed four monthly statements of its fees in these cases, each of which contains detailed descriptions of Marks Paneth's services rendered and fees billed. [Dkts. 110, 156, 213, 304.] No one has objected to any of those monthly statements. Thus, any party in interest who takes issue with the final approval of Marks Paneth's fees as provided in the Settlement will have had ample opportunity to object, either to Marks Paneth's prior monthly fee statements or to this Motion.

23.     Accordingly, the Trustee submits that the proposed Settlement is appropriate in light of the relevant factors, is fair and equitable, and should be approved.

7

## **NOTICE**

24. The Trustee is serving this Motion upon the U.S. Trustee, Marks Paneth, and the 2002 Service List in accordance with the Order Establishing Notice and Case Management Procedures (Dkt. 530). The Trustee submits that under the circumstances, no other or further notice need be provided.

WHEREFORE, the Trustee respectfully requests that this Court enter an order approving the Settlement and granting such other relief as the Court may deem just and proper.

Dated: December 26, 2019  
      New York, New York

Respectfully Submitted,

**JENNER & BLOCK LLP**

By: */s/ Marc Hankin*  
Marc Hankin  
Carl Wedoff  
919 Third Avenue  
New York, New York 10022  
(212) 891-1600  
mhankin@jenner.com  
cwedoff@jenner.com

Angela Allen (admitted *pro hac vice*)  
353 North Clark Street  
Chicago, Illinois 60654  
(312) 222-9350  
aallen@jenner.com  
*Counsel for the Chapter 11 Trustee*

9