| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>-------------------------------------------------------------x<br>In re:<br><br>Firestar Diamond, Inc., *et al.*,<br><br>                                            Debtors.<br>-------------------------------------------------------------x | <u>NOT FOR PUBLICATION</u><br><br>Chapter 11<br><br>Case No. 18-10509 (SHL)<br><br>(Jointly Administered) |

<b><u>MEMORANDUM OF DECISION AND ORDER</u></b>

**A P P E A R A N C E S :**

**JENNER & BLOCK LLP**
*Attorneys for the Chapter 11 Trustee, Richard Levin, Esq.*
919 Third Avenue
New York, New York 10022
By:    Marc B. Hankin, Esq.
           Carl N. Wedoff, Esq.

353 North Clark Street
Chicago, Illinois 60654
By:    Angela Allen, Esq.


**SAUL EWING ARNSTEIN & LEHR LLP**
*Attorneys for Fantasy Diamond Corporation*
1270 Avenue of the Americas, Suite 2005
New York, New York 10020
By:    Stephen B. Ravin, Esq.
           John D. Demmy, Esq.


**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

       Before the Court is the Chapter 11 Trustee's motion for summary judgement (the "Motion") on his objection to filed Claim No. 54 of Fantasy Diamond Corp. ("FDC"). *See* ECF No. 1189. The Trustee initially filed an objection to FDC's Claim No. 54 before filing this Motion. *See* ECF No. 1043. FDC opposes the Trustee's Motion. *See* ECF No. 1211. The parties submitted memoranda of law and separate Statements of Undisputed Material Facts. *See* Trustee's Memorandum of Law (ECF No. 1190); Trustee's Statement of Undisputed Material

Facts (ECF No. 1191); FDC's Opposition to Trustee's Motion (ECF No. 1211); FDC's Response to Trustee's Statement of Undisputed Facts (ECF No. 1212).  After hearing argument on November 18, 2019, the Court took this matter under advisement.  For reasons explained below, the Court denies the Trustee's Motion.[1]

## BACKGROUND

In late January 2018, Punjab National Bank ("PNB") filed a complaint against Nirav Modi and several associated entities, alleging "the largest bank fraud in Indian history" against PNB and other banks.  *Report of John J. Carney, Examiner* at 4 (ECF No. 394) (the "Examiner's Report").  Approximately one month later, three U.S. corporations indirectly owned by Nirav Modi filed for Chapter 11 protection in the Southern District of New York, Firestar Diamond, Inc. ("FDI"), Fantasy, Inc. ("FI") and A. Jaffe, Inc. ("A. Jaffe," and together with FDI and FI, the "Debtors").  *See* ECF No. 1.  Amidst a tumultuous, failed sale process of the Debtors' assets and the resignation of the Debtors' CEO Mihir Bhansali, the Court ordered the appointment of Richard Levin, Esq. as the Chapter 11 Trustee in mid-June 2018.  *See* ECF No. 227.

Years before the bankruptcy was filed, debtor FDI and FDC entered into a License Agreement.  *See* Trustee's Statement of Undisputed Material Facts ¶ 1 (ECF No. 1191).  The License Agreement granted FDI a limited exclusive right to use the various "Endless Diamond" trademarks referenced in Schedule 1(b) of the License Agreement.  *See* License Agreement, Ex. B, Response of Fantasy Diamond Corporation (ECF No. 1086).  The License Agreement's purpose was to provide for FDI "to take over FDC's business operations and to continue to exploit the FDC IP."  Decl. of Joseph H. Wein ¶ 13, Ex. A (ECF No. 1211) (the "Wein

---

[1] This decision memorializes and expands upon the Court's observations at the oral argument on the Motion. *See* Hr. Tr. 117:12–122:13, Nov. 18, 2019 (ECF No. 1361).

2

Declaration"). FDC considered its relationship with Costco to be its "jewel," *id.* ¶ 17, a relationship of "incredible value" that FDC transferred to FDI. *Id.* ¶ 20.

After this bankruptcy was filed but before the Trustee was appointed, FDC filed a motion to compel rejection of the License Agreement. *See* ECF No. 179 (the "Rejection Motion"). In its Rejection Motion, FDC cited an ongoing threat to the value of its intellectual property. *Id.* ¶ 22. The hearing on FDC's motion was delayed until after the Trustee's appointment. Ultimately, the Court signed an order that was agreed upon by FDC and the Trustee. The order granted FDC's motion to compel rejection of the License Agreement under Section 365(a) of the Bankruptcy Code; the order also terminated the automatic stay under Section 362(a) to allow FDC to provide written notice of termination of the License Agreement ("Rejection Order"). *See* ¶¶ 2–3 (ECF No. 265). Under the Rejection Order, the Debtors and FDC reserved and retained "any and all claims, rights, remedies, and defenses whatsoever that they may have under the License Agreement and/or applicable law." *Id.* ¶ 5. In late 2018, FDC filed a proof of claim (Firestar Claim No. 54) seeking $2,800,000 from the FDI estate stemming from "unpaid royalties" and "breach of contract" arising out of the License Agreement. *See* Ex. 1 (ECF No 1043). FDC's claim also asserts that $40,582.00 of the claim is entitled to administrative expense priority under Section 503(b)(9) of the Bankruptcy Code.

The Trustee objected to FDC's claim, arguing it should be reduced from $2.8 million to $40,582.00 and should be reclassified as a general unsecured pre-petition claim. *See Chapter 11 Trustee's Objection to Filed Claim of Fantasy Diamond Corporation* ¶¶ 15–17 (ECF No. 1043). The Trustee subsequently moved for summary judgment on the claim, *see* ECF No. 1189, raising the following three grounds for disallowance: (1) FDC abandoned the License Agreement; (2) even if FDC did not abandon the License Agreement, the Rejection Order terminated it; (3)

under New York law, FDC is not entitled to damages for lost future royalties or any damages for lost future royalties are limited to the period before FDI could have terminated the License Agreement. *See id.* ¶ 3.

## DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a) (made applicable to the adversary proceeding by Fed. R. Bankr. P. 7056). A material fact is one that "might affect the outcome of the suit under governing law." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (citations and internal quotation marks omitted). A dispute about a material fact is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted).

The moving party bears the burden of demonstrating the absence of any genuine issue of material fact, and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Ames Dep't Stores, Inc. v. Wertheim Schroder & Co. (In re Ames Dep't Stores, Inc.)*, 161 B.R. 87, 89 (Bankr. S.D.N.Y. 1993). Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and, by its own evidence, demonstrate that there is a genuine issue of material fact for trial. *See Celotex*, 477 U.S. at 324; *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (after the moving party has met its burden under Fed. R. Civ. P. 56(c), opposing party "must do more than simply show that there is some

4

metaphysical doubt as to the material facts"). The non-movant must put forth "significant probative evidence" showing a genuine dispute as to a material fact exists. *Anderson*, 477 U.S. at 249. If the non-moving party fails to make such a showing, then the moving party is "entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 322–23; Fed. R. Civ. P. 56(e). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsuhita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Az. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)); *see also Weg v. Macchiarola*, 654 F. Supp. 1189, 1191–92 (S.D.N.Y. 1987).

I.   Abandonment

Abandonment of a contract by mutual consent is considered effective to discharge its obligations. Whether a contract has been abandoned is a question of fact. *See Matter of Rothko's Est.*, 372 N.E.2d 291, 299 (N.Y. 1977); *Graham v. James,* 144 F.3d 229, 238 (2d Cir. 1998); *Cauff, Lippman & Co. v. Apogee Fin. Grp.,* 807 F. Supp. 1007, 1021 (S.D.N.Y. 1992). The party asserting an abandonment defense has the burden of proving it, and abandonment will not be presumed. *See James*, 144 F.3d at 238. Intent to abandon, however, "need not be manifested expressly." *Jones v. Hirschfeld,* 348 F.Supp.2d 50, 59 (S.D.N.Y. 2004). Instead, it can be "inferred from the attendant circumstances and conduct of the parties." *Armour & Co. v. Celic,* 294 F.2d 432, 435 (2d Cir. 1961). Courts will impute such a mutual intent to abandon even where only one party acts in an inconsistent manner and the other party merely acquiesces. *See C3 Media & Mktg. Grp. v. Firstgate Internet, Inc.,* 419 F. Supp. 2d 419, 433 (S.D.N.Y. 2005). But where conduct alone is the basis for a finding of abandonment, "the acts of the parties must be positive, unequivocal and inconsistent with an intent to be further bound by the contract." *Celic*, 294 F.2d at 436. That one party has breached the contract, however, is alone

5

insufficient to establish abandonment. *See Carver v. Apple Rubber Prods. Corp.,* 558 N.Y.S.2d 379, 380 (N.Y. App. Div. 1990).

The Trustee argues that FDC engaged in at least two "positive and unequivocal" acts that are "inconsistent with an intent to be further bound by" the License Agreement. First, the Trustee points to FDC's motion seeking to compel rejection of the License Agreement and to modify the automatic stay to permit FDI to terminate. The Trustee contends that the motion demonstrates that FDC was foregoing FDI's continued performance under the License Agreement. *See* ¶¶ 30–32 (ECF No. 1190). In the Trustee's view, the negotiation to repatriate the IP allowed both parties to achieve a resolution and move on with their lives:

> [The Trustee] agreed on a stipulated rejection order, rather than litigating this matter, which approved the rejection, it gave stay relief as FDC had requested, to permit termination, and said, except as provided in the rejection letter, the parties' rights under the licensing agreement were preserved.

Hr. Tr. 92:4–9, Nov. 18, 2019 (comments of Trustee's Counsel).

Second, the Trustee argues that the rejection letter, dated June 26, 2018 (the "Rejection Letter"), manifests a clear intent of the Trustee to no longer perform under the License Agreement. Under the Rejection Letter, FDC and FDI agreed to grant FDC a right to sell merchandise to non-FDC customers, which was a right previously reserved only for FDI. *See* Rejection Letter, Ex. B (ECF No. 265). FDC also consented to the Trustee having "as much time as is needed" to sell off the remaining merchandise, a right that could only be exercised upon termination. *See id.* These provisions in the Rejection Letter, the Trustee argues, mean that the parties acted in a manner "inconsistent" with a mutual intent to be bound further by the contract. *See* Trustee's Statement of Undisputed Material Facts ¶ 40; *see also* Hr. Tr. 31:3–8, June 27, 2018 (ECF No. 286).

6

While there is some support in the record for the Trustee's position, the Court ultimately concludes that the Trustee has not met the high burden to establish abandonment. In short, reasonable debate can exist as to whether the facts here constitute an abandonment by FDC of the License Agreement or any claim for damages from rejection. As the Trustee concedes, the Rejection Motion only sought permission to terminate and rejection itself is a breach, not a termination. *See In re Old Carco LLC*, 406 B.R. 180, 212 (Bankr. S.D.N.Y. 2009); 2 Norton Bankr. L. & Pract. 3d § 46:23 ("Rejection of a contract or unexpired lease, while constituting a breach of contract, does not terminate the contract or lease"); *see also* Hr. Tr. 92:3–9, Nov. 18, 2019; Trustee's Reply at 16 (ECF No. 1229) ("FDC asserts that its Rejection Motion merely sought permission to terminate and that rejection is a breach, not a termination. While both points are true. . . ."). And while FDC was granted the ability to terminate the License Agreement, it has not done so to date. *See, e.g.*, Response of Fantasy Diamond Corporation ¶ 73. Moreover, the Rejection Order explicitly provided that both parties would "reserve and retain any and all claims, rights, remedies, and defenses whatsoever that they may have under the License Agreement and/or applicable law," a provision which arguably preserves FDC's rights to damages under the License Agreement. *See* ¶ 5 (ECF No. 265).

The Court reaches a similar conclusion about the Rejection Letter. Its changes to the parties' rights do not categorically establish an intent to abandon. Indeed, FDI and FDC have previously made modifications to the License Agreement while continuing their contractual relationship. *See First Amendment to License Agreement*, Ex. A (ECF No. 1191). Reading the facts in the light most favorable to the non-moving party FDC, therefore, the Court concludes summary judgment is inappropriate as to abandonment.

II.     Termination

The Trustee also argues that the parties terminated the License Agreement. Specifically, the Trustee argues that the Rejection Order, ECF No. 265, actually or impliedly provided for termination of the Agreement. *See* Ex. B (ECF No. 1043). In the alternative, the Trustee argues that the letter dated March 22, 2019, addressed to John D. Demmy, Esq., attorney for FDC, validly terminated the License Agreement. But once again reading the facts in a light most favorable to FDI, the Court finds that summary judgment is not appropriate. As already mentioned above, it is well-settled that rejection of an executory contract is not termination. And the language of the Rejection Order does not provide for termination of the License Agreement; it instead merely lifts the stay to permit FDC to issue a written notice of termination at its discretion. *See* Rejection Order ¶¶ 2–4 (ECF No. 265). FDC has not exercised its right to terminate, despite receiving permission to do so.

The Trustee's reliance on its letter of termination is also problematic. While the Trustee is correct that the License Agreement provides termination rights to each party under certain circumstances, that is not the end of the story. FDC maintains that the Debtor was already in material breach of the License Agreement before the letter of termination was issued in 2019. *See* Response ¶¶ 75–80; Hr. Tr. 104:16–19, Nov. 18, 2019 ("The Debtor's fraud that they were involved in and the bankruptcy are breaches of the contract because they prevented the Debtor from doing what it was supposed to do to meet the $250,000 threshold."). With the Debtor purportedly in breach, therefore, FDC maintains that the Trustee cannot exercise the right to terminate that is contained in the License Agreement. *See Nadeau v. Equity Residential Properties Mgmt. Corp.*, 251 F. Supp. 3d 637, 641 (S.D.N.Y. 2017) ("[W]hen a party to a contract materially breaches that contract, it cannot then enforce that contract against a non-

8

breaching party."). The Court is well aware of the serious allegations of fraud by Debtors in these cases. *See generally* Examiner's Report. But the Court does not have specific evidence before it to find that the Debtor was in material breach of this particular License Agreement. Thus, the question about whether Debtor was in material breach—such as to preclude it from exercising its right to terminate—remains an unresolved issue that precludes summary judgement.[2] Moreover, even if the License Agreement was terminated, such termination would not necessarily extinguish damages arising from the termination; it would simply affect the scope of those damages, an issue we turn to next.

III.    Damages

A party seeking damages bears the burden of proof of establishing that "any claimed damages were caused by defendant's breach to a reasonable degree of certainty." *Wechsler v. Hunt Health Sys., Ltd.,* 330 F. Supp. 2d 383, 425 (S.D.N.Y. 2004) (quoting *Xpedior Creditor Tr. v. Credit Suisse First Bos. (USA) Inc.*, 341 F.Supp.2d 258, 271 (S.D.N.Y. 2004)). Under New York law, breach of contract damages may fall into any one of three categories: expectation, reliance, and restitution. *Id.* at 424–25 (citing *Xpedior Creditor Tr.,* 341 F. Supp. 2d at 270–72 (citation omitted)). Both parties agree that the measure of contract damages in this case under New York law is expectation damages. *See* Response of Fantasy Diamond Corporation ¶ 81; Trustee's Memorandum ¶ 45; Hr. Tr. 93:22–24, Nov. 18, 2019. Expectation damages "offer the broadest remedy" and constitute "'the amount necessary to put plaintiff in as good a position as if defendant had fulfilled the contract.'" *Wechsler,* 330 F. Supp.2d at 425 (quoting *Saxton Commc'n Grp., Ltd. v. Valassis Inserts, Inc.,* 1995 WL 679256, at *2 (S.D.N.Y. Nov. 15, 1995) (citing *Bausch & Lomb, Inc. v. Bressler,* 977 F.2d 720, 728 (2d Cir. 1992)).

---

[2] The Court is aware that certain rights under the License Agreement survive termination. But that issue is distinct from whether the License Agreement itself could be terminated under the circumstances here.

9

The Trustee argues that, even if the License Agreement remained enforceable, it does not contain any basis to hold Firestar liable for damages. *See* Trustee's Memorandum ¶¶ 45–51. The Trustee contends that even if the License Agreement required FDI to continue operating, FDC cannot recover damages beyond the first period in which Firestar could have exercised its unilateral right to terminate. *Id.* ¶ 52–54. But as discussed above, FDC disputes that the Debtor had, as a breaching party, a unilateral right to terminate. *Id.* ¶¶ 96–99. Moreover, if such termination were effective, it would not necessarily extinguish damages. The parties also have not provided an appropriate record upon which the Court could determine damages, even if it reached that question. Given all these issues, summary judgment is not appropriate on the issue of damages.

While the Court does not decide the issue of damages today, the Court does have serious reservations on the existing record about FDC's claim for seven years of damages for an average of $450,000 per year, a figure that FDC contends is based on its "reasonable expectations" at the time of contracting. *See* Hr. Tr. 102:6–13, Nov. 18, 2019; Response of Fantasy Diamond Corporation ¶ 24; Wein Decl. ¶ 25. It is hard to square the amount and duration of FDC's claim with two aspects of the record. First, there is nothing in the License Agreement that guarantees any minimum level of profits to FDC. Thus, this situation is markedly different than the case relied upon by FDC, *Honeywell Intern. Inc. v. Northshore Power Sys., LLC*, 936 N.Y.S.2d 59 (N.Y. Sup. Ct. 2011), *aff'd* 946 N.Y.S.2d 474 (N.Y. App. Div. 1st Dept. 2012), where the license agreement provided for a "minimum guaranteed royalty payment" from licensee to licensor for the term. Second, the License Agreement gives the parties the right to terminate the agreement if the amount of royalties falls below a $250,000 threshold. *See* Section 12(d), License Agreement, Ex. B (ECF No. 1086). This provision suggests that the parties contemplated termination of the

10

License Agreement without penalty if the License Agreement was no longer beneficial and profitable for the parties. In fact, the royalties here did fall below $250,000 in 2018, which is exactly what prompted the Trustee to send its termination letter. *See* Levin Decl. ¶ 11, Ex. B (ECF No. 1191).

## **CONCLUSION**

For the foregoing reasons, the Court denies the Trustee's Motion. The parties shall confer about the best way forward in this matter in light of the Court's decision and shall report back to the Court by joint letter in 30 days.

**IT IS SO ORDERED.**

Dated: New York, New York
April 17, 2020

>*/s/ Sean H. Lane*
>UNITED STATES BANKRUPTCY JUDGE