# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| FIRESTAR DIAMOND, INC., *et al.* | No. 18-10509 (SHL) |
| Debtors.[1] | (Jointly Administered) |

## <u>TRUSTEE'S MODIFIED FIRST AMENDED JOINT CHAPTER 11 PLAN</u>

JENNER & BLOCK LLP
Marc Hankin
Carl Wedoff
919 Third Avenue
New York, New York 10022
(212) 891-1600

Angela Allen (admitted *pro hac vice*)
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350

*Counsel for the Chapter 11 Trustee*

---

[1] The Debtors and the last four digits of their respective taxpayer identification numbers are as follows: Firestar Diamond, Inc. (2729), Fantasy, Inc. (1673), and Old AJ, Inc. f/k/a A. Jaffe, Inc. (4756).

# TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................................1

1.  DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW.................................................................................................1

    1.1.   Defined Terms ...........................................................................................1

    1.2.   Rules of Interpretation..............................................................................7

    1.3.   Exhibits ....................................................................................................8

    1.4.   Computation of Time ...............................................................................8

    1.5.   Governing Law ........................................................................................8

    1.6.   Severability of Plan Provisions................................................................9

    1.7.   No Effect on Sale Transactions ...............................................................9

    1.8.   Entire Agreement ....................................................................................9

2.  ADMINISTRATIVE CLAIMS, PROFESSIONAL FEES, AND PRIORITY TAX CLAIMS 9

    2.1.   Introduction .............................................................................................9

    2.2.   Administrative Claims .............................................................................9

    2.3.   Professional Fee Claims.........................................................................10

    2.4.   Priority Tax Claims ...............................................................................10

3.  CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS .................................................................................................11

    3.1.   Summary ...............................................................................................11

    3.2.   Classification and Treatment of Claims Against Firestar...................13

    3.3.   Classification and Treatment of Claims Against Old AJ....................15

    3.4.   Classification and Treatment of Claims Against Fantasy ...................18

4.  ACCEPTANCE OR REJECTION OF THE PLAN........................................21

    4.1.   Voting Classes ......................................................................................21

    4.2.   Nonconsensual Confirmation ...............................................................21

    4.3.   Elimination of Vacant Classes .............................................................21

5.  MEANS FOR IMPLEMENTATION OF THE PLAN ....................................21

    5.1.   Joint Chapter 11 Plan ...........................................................................21

    5.2.   The Liquidating Trusts..........................................................................21

    5.3.   Dissolution of the Debtors ....................................................................22

    5.4.   Vesting and Transfer of Assets to the Liquidating Trusts....................22

5.5.    Retained Causes of Action ................................................................................... 23

5.6.    Payment of Liquidating Trust Operating Expenses .......................................... 23

5.7.    Beneficiaries of Trust Proceeds ........................................................................ 24

5.8.    Liquidating Trust Agreement ............................................................................ 24

5.9.    Power and Authority of Liquidating Trustee in Accordance with the Liquidating Trust Agreement ........................................................................................................ 24

5.10.  Termination of the Liquidating Trusts .............................................................. 25

5.11.  Full and Final Satisfaction ................................................................................ 25

5.12.  Distribution Procedures .................................................................................... 25

5.13.  Resolution of Disputed Claims ......................................................................... 27

5.14.  Reserve Provisions for Disputed Claims .......................................................... 28

5.15.  Allocation of Distributions ............................................................................... 28

5.16.  Unclaimed Property .......................................................................................... 28

5.17.  Setoffs .............................................................................................................. 29

5.18.  No Distributions on Late-Filed Claims ............................................................ 29

5.19.  No Postpetition Interest on Claims ................................................................... 29

5.20.  Claims Paid by Third Parties ............................................................................ 29

5.21.  Federal Income Tax Compliance; Withholding ................................................ 30

5.22.  No *De Minimis* Distributions ............................................................................ 31

5.23.  United States Trustee Fees ................................................................................ 31

5.24.  Books and Records ........................................................................................... 31

5.25.  Remaining Cash ............................................................................................... 32

6.     **TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** .................. **32**

6.1.    Assumption and Rejection of Executory Contracts and Unexpired Leases ................... 32

6.2.    Claims Based on Rejection of Executory Contracts or Unexpired Leases ...................... 33

6.3.    Reservation of Rights ........................................................................................ 33

7.     **CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND TO THE EFFECTIVE DATE** ............................................................................................................. **33**

7.1.    Conditions to Confirmation of the Plan ............................................................ 33

7.2.    Conditions to the Effective Date ....................................................................... 33

7.3.    Waiver of Conditions ....................................................................................... 34

7.4.    Effect of Failure of Conditions to the Effective Date ....................................... 34

7.5.    Effective Date ................................................................................................... 34

**8.   EFFECTS OF CONFIRMATION** .................................................................................**34**

    8.1.   Binding Effect of Plan ....................................................................................34

    8.2.   Exculpation ......................................................................................................35

    8.3.   Release .............................................................................................................35

    8.4.   Injunction ........................................................................................................36

    8.5.   Post-Effective Date Liability of Liquidating Trustee and PNB .......................36

    8.6.   PNB as Consulting Creditor ...........................................................................37

    8.7.   Insurance .........................................................................................................37

    8.8.   Implementation ...............................................................................................37

**9.   RETENTION OF JURISDICTION** ...........................................................................**37**

**10.   MISCELLANEOUS** .......................................................................................................**37**

    10.1.   Modification of Plan .....................................................................................37

    10.2.   Liquidating Trustee's Plan Interpretation .....................................................38

    10.3.   Plan Supplement ..........................................................................................38

    10.4.   Conflicts .......................................................................................................38

    10.5.   Notices .........................................................................................................39

    10.6.   Writings ........................................................................................................39

    10.7.   Reservation of Rights ...................................................................................39

    10.8.   Additional Documents ..................................................................................40

    10.9.   Successors and Assigns ................................................................................40

    10.10.   Certain Actions ..........................................................................................40

**11.   CONFIRMATION REQUEST** ...................................................................................**40**

<u>**PRELIMINARY STATEMENT**</u>

Richard Levin, not individually but solely in his capacity as Chapter 11 Trustee of the Debtors, respectfully proposes this Plan under chapter 11 of the Bankruptcy Code for the resolution and satisfaction of all Claims against and Interests in the Debtors.

**1. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW**

**1.1. Defined Terms**

As used in this Plan, capitalized terms have the following meanings:

1. "**Administrative Claim**" means a Claim for costs and expenses of administration of the Estates that is allowable under 28 U.S.C. § 1930 or under Bankruptcy Code sections 503(b), 507(a)(2), or 507(b).

2. "**Allowed**" means, with respect to any Claim, except as otherwise provided in the Plan: (a) a Claim that is evidenced by a Proof of Claim Filed by the Bar Date; (b) a Claim that is listed in the Schedules in an amount greater than zero ($0) and not listed as contingent, unliquidated, or disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim allowed under the Plan or a Final Order of the Bankruptcy Court; except that with respect to a Claim described in clause (a) or (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or, if such an objection is so interposed, the Claim has been Allowed by a Final Order. "**Allow**" and "**Allowing**" have correlative meanings.

3. "**Available Cash**" means any Cash received by the Liquidating Trustee (including Cash transferred by the Chapter 11 Trustee to the Liquidating Trusts on the Effective Date and Cash obtained as a result of liquidating the Liquidating Trust Assets, including Causes of Action; but not including Cash that is held in a Disputed Claims Reserve or otherwise reserved by the Liquidating Trustee under the terms of this Plan) and thereafter held by the Liquidating Trusts and available for Liquidating Trust Operating Expenses or for Distributions. "**Available FD Cash**," "**Available AJ Cash**," and "**Available FA Cash**" have the correlative meanings for the Estates and Liquidating Trusts of Firestar, Old AJ, and Fantasy, respectively.

4. "**Avoidance Action**" means a Cause of Action to avoid or recover a transfer of property of, or an obligation incurred by, the Debtors under (a) any applicable Bankruptcy Code section, including sections 502(d), 506, 510, 542, 544, 545, 547, 548, 549, 550, 551, 552, 553, and 724(a); or (b) similar or related state or federal statutory and common law, including fraudulent transfer law.

5. "**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as applicable to the Chapter 11 Cases.

6. "**Bankruptcy Court**" means a court with authority to issue orders in the Chapter 11 Cases or proceedings arising therein.

7. "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

8. "**Bar Date**" means, collectively, the dates established by the Bankruptcy Court by which Proofs of Claim must be Filed, including dates established in the Bar Date Order, the Plan, and the *Amendments to Schedules E/F* [Dkt. 740].

9. "**Bar Date Order**" means the *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Dkt. 482].

10. "**Beneficiaries**" has the meaning provided in Section 5.7.

11. "**Business Day**" means any day, other than a Saturday, Sunday, or legal holiday (as defined in Bankruptcy Rule 9006(a)(6)).

12. "**Cash**" means cash and cash equivalents, including bank deposits, checks, and other similar items representing United States legal tender.

13. "**Cause of Action**" means an action, claim, cause of action, judgment, or other legal right of any kind whatsoever that potentially or actually gives rise to liability in another party, that is held by the Debtors, Estates, or Liquidating Trusts.

14. "**Chapter 11 Cases**" means the Debtors' jointly administered chapter 11 cases pending before the Bankruptcy Court.

15. "**Chapter 11 Trustee**" means Richard Levin, not individually, but solely in his capacity as the chapter 11 trustee of the Debtors.

16. "**Claim**" has the meaning provided in Bankruptcy Code section 101(5).

17. "**Claims Agent**" means Omni Agent Solutions or any successor.

18. "**Claims Register**" means the official register of Claims maintained by the Claims Agent.

19. "**Class**" means a class of Claims or Interests as classified under the Plan.

20. "**Confirmation**" means the entry of the Confirmation Order.

21. "**Confirmation Date**" means the date upon which Confirmation occurs.

22. "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court to consider confirmation of the Plan under Bankruptcy Codes sections 1128 and 1129.

23. "**Confirmation Order**" means the order of the Bankruptcy Court confirming the Plan under Bankruptcy Code section 1129.

24. "**Convenience Claims**" has the meaning provided in Sections 3.2.4, 3.3.4, and 3.4.4.

25. "**Debtor**" means Fantasy, Firestar, or Old AJ.

26. "**Disbursing Agent**" means either the Trustee, the Liquidating Trustee or the Entity selected by Trustee or the Liquidating Trustee to make or facilitate the Distributions contemplated under the Plan.

27. "**Disclosure Statement**" means the Disclosure Statement for Trustee's First Amended Joint Chapter 11 Plan, as approved by the Bankruptcy Court.

28. "**Disputed**" means, with respect to any Claim, not Allowed.

29. "**Disputed Claims Reserve**" means the Claims reserve described in Section 5.14 of this Plan.

30. "**Distribution**" means any transfer under the Plan of Cash or other property to a Holder of an Allowed Claim.

31. "**Distribution Address**" has the meaning provided in Section 5.12.7.

32. "**Distribution Date**" means a date on which the Disbursing Agent makes a distribution of Cash to the Holders of Allowed Claims.

33. "**Effective Date**" means the date described in Section 7.5.

34. "**Entity**" has the meaning provided in Bankruptcy Code section 101(15).

35. "**Estate**" means the chapter 11 estate of a Debtor.

36. "**Exculpated Liability**" means a Claim or liability that is exculpated under the Plan.

37. "**Exculpated Party**" means a party described in Section 8.2.

38. "**Executory Contract**" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under Bankruptcy Code section 365 or 1123.

39. "**Face Amount**" means the amount of a Claim listed on the Proof of Claim.

40. "**Fantasy**" means Fantasy, Inc., a Debtor.

41. "**File**" means file with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases, or, with respect to the filing of a Proof of Claim (including for any Administrative Claim), the Claims Agent. "**Filed**" has a correlative meaning.

42. "**Final Order**" means, as applicable, an order or judgment of a court of competent jurisdiction with respect to the relevant subject matter that is no longer subject to review, except under Rule 60 of the Federal Rules of Civil Procedure.

43. **"Firestar"** means Firestar Diamond, Inc., a Debtor.

44. **"Firestar Entities"** means Firestar India and all of its direct or indirect subsidiaries.

45. **"Firestar India"** means Firestar International Limited, formerly known as Firestar International Private Limited, formerly known as Diamonds 'R' Us.

46. **"General Unsecured Claim"** means a Claim against a Debtor that is not an Administrative Claim, a Priority Tax Claim, a Secured Tax Claim, a Secured Reimbursement Claim, a Priority Non-Tax Claim, a Subordinated Claim, or a Convenience Claim.

47. **"Holder"** means the holder of a Claim against or Interest in a Debtor.

48. **"HSBC"** means HSBC Bank USA, National Association.

49. **"IDB"** means Israel Discount Bank of New York.

50. **"Impaired"** has the meaning provided in Bankruptcy Code section 1124.

51. **"Initial Distribution Date"** means the first date on which a Holder of an Allowed Claim receives a Distribution under the Plan, as described in Section 5.12.3.

52. **"Interest"** means any equity security in a Debtor as defined in Bankruptcy Code section 101(16).

53. **"Interim Compensation Order"** means the *Order Pursuant to 11 U.S.C. §§ 105(a), 330, 331, Fed. R. Bankr. P. 2016, and Local Rule 2016-1 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Dkt. 82].

54. **"Liquidating Trust"** means the liquidating trusts established in Section 5.2 of this Plan for each Estate for the benefit of Holders of all Allowed General Unsecured Claims against each Debtor.

55. **"Liquidating Trust Account"** means an account established by the Liquidating Trustee to hold the Available Cash or the Disputed Claims Reserve.

56. **"Liquidating Trust Agreement"** means the agreement establishing and delineating the terms and conditions of the Liquidating Trusts, substantially in the form attached to the Plan as Exhibit [•].

57. **"Liquidating Trust Assets"** means the Retained Assets after they have been transferred or assigned to the Liquidating Trusts, and any proceeds and fruits thereof.

58. **"Liquidating Trust Interest"** means a beneficial interest in a Liquidating Trust entitling the Holder thereof to the Distribution from a Liquidating Trust as provided for in the Plan and in the Liquidating Trust Agreement.

59. **"Liquidating Trust Operating Expenses"** means all expenses of any kind, whether or not unmatured, contingent, or unliquidated, incurred by the Liquidating Trusts or the Liquidating Trustee, including: (a) the Liquidating Trustee's expenses in connection with administering and implementing the Plan, including any taxes incurred by the Liquidating Trusts or the Liquidating Trust Assets and accrued on or after the Effective Date; (b) all fees that accrue after the Effective Date that are payable to the U.S. Trustee under 28 U.S.C. § 1930(a)(6); and (c) the expenses of independent contractors and professionals providing services to the Liquidating Trustee.

60. **"Liquidating Trustee"** means Richard Levin, not individually, but solely as the trustee of the Liquidating Trusts, or any of his successors and assigns.

61. **"Old AJ"** means Old AJ, Inc. f/k/a A. Jaffe, Inc., a Debtor.

62. **"Payoff Letters"** means the letter agreements between the Chapter 11 Trustee and Prepetition Secured Lenders appended to the *Stipulation and Order for Payoff of Claims of HSBC Bank USA, National Association and Israel Discount Bank of New York* [Dkt. 575].

63. **"Petition Date"** means February 26, 2018.

64. **"Plan"** means this plan, including (a) any amendment, modification, or supplement proposed by the Chapter 11 Trustee, and (b) any exhibit referenced within or annexed to it.

65. **"Plan Supplement"** means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed by the Chapter 11 Trustee in accordance with the terms provided in Section 10.3 of this Plan.

66. **"PNB"** means Punjab National Bank.

67. **"PNB Claims"** means the Claims docketed as Firestar Claim 51, Old AJ Claim 16, and Fantasy Claim 6.

68. **"Prepetition Secured Lenders"** means HSBC and IDB.

69. **"Priority Tax Claim"** means a Claim of the kind specified in Bankruptcy Code section 507(a)(8).

70. **"Priority Non-Tax Claim"** means a Claim or a portion of a Claim of the kind specified in Bankruptcy Code section 507(a)(3), (4), (5), (6), or (7).

71. "**Pro Rata**" means the proportion that the dollar amount of an Allowed Claim in a particular Class bears to the aggregate dollar amount of Allowed Claims in that Class.

72. "**Professional**" means an Entity employed under a Bankruptcy Court order in accordance with Bankruptcy Code section 327.

73. "**Professional Fee Claim**" means a Claim under Bankruptcy Code sections 327, 328, 330, 331, or 503(b) for compensation for professional services rendered or expenses incurred after the Petition Date and before the Effective Date on the applicable Estate's behalf by a Professional duly employed and authorized by an order of the Bankruptcy Court; or a Claim under Bankruptcy Code section 503(b)(4) for reasonable compensation for professional services rendered by an attorney or accountant of an Entity whose expenses are allowable under Bankruptcy Code section 503(b)(3)(D).

74. "**Proof of Claim**" means a written proof of Claim Filed against a Debtor.

75. "**Proof of Interest**" means a written proof of Interest Filed against a Debtor.

76. "**Purchaser**" means the buyer or purchaser identified in any Sale Order.

77. "**Purchased Assets**" means any assets, executory contracts, intellectual property, inventory, or other rights or property of the Debtors sold, transferred, or assigned under the Sale Orders.

78. "**Record Date**" means the record date for purposes of determining which Holder of an Allowed Claim is eligible to receive Distributions on account of the Claim.

79. "**Reimbursement Claims**" has the meaning provided in paragraph 4 of the Payoff Letters.

80. "**Reimbursement Reserve Funds**" means "Reserve Funds" as defined in paragraph 3.d of the Payoff Letters.

81. "**Retained Assets**" means any and all of each Debtor's assets, including Retained Causes of Action, but not including Purchased Assets or assets expressly otherwise provided for in the Plan.

82. "**Retained Cause of Action**" means a Cause of Action that is not waived, relinquished, exculpated, released, compromised, or settled under this Plan or a Bankruptcy Court order.

83. "**Sale Order**" means an order of the Bankruptcy Court approving a sale, transfer, or assignment of the Debtors' assets, executory contracts, intellectual property, inventory, or other rights of property of the Debtors.

84. "**Schedules**" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors under Bankruptcy Code section 521 [Dkt. 69, 70, 71, 72, 73, 74, 740] as such schedules may be amended, modified, or supplemented from time to time.

85. "**Secured**" means a Claim that is (a) secured by a Lien on property in which the applicable Estate has an interest and that is valid, perfected, and enforceable under applicable law or by reason of a Bankruptcy Court order; or that is subject to setoff under Bankruptcy Code section 553, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined under Bankruptcy Code section 506(a); or (b) Allowed under the Plan as a Secured Claim.

86. "**Secured Tax Claim**" means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under Bankruptcy Code section 507(a)(8) (determined irrespective of time limitations), including any related Secured Claim for penalties.

87. "**Subordinated Claim**" means a Claim that is subordinated under Bankruptcy Code sections 510(a), 510(b), or 510(c) or as otherwise ordered by the Bankruptcy Court.

88. "**U.S. Trustee**" means the United States Trustee for Region 2.

89. "**U.S. Trustee Fees**" means all fees and charges assessed against the applicable Estate by the U.S. Trustee and due under 28 U.S.C. § 1930(a)(6).

90. "**Unclaimed Property**" has the meaning provided in Section 5.16.

91. "**Unexpired Lease**" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under Bankruptcy Code section 365 or 1123.

92. "**Unimpaired**" means, with respect to a Class of Claims, not Impaired.

## 1.2. Rules of Interpretation

For purposes of this Plan:

1. Unless otherwise specified herein, the rules of construction provided in Bankruptcy Code section 102 shall apply.

2. Any term used herein that is not defined in this Plan shall have the meaning ascribed thereto in the Bankruptcy Code or the Bankruptcy Rules.

3. Any reference to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document is substantially in that form or substantially on those terms and conditions.

4. Any reference to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed means that document, schedule, or exhibit, as it is thereafter amended, restated, supplemented, or otherwise modified.

5. Any reference to a Holder of a Claim or Interest includes that Holder's successors and assigns.

6. Unless otherwise specified, all references to "Sections" are references to Sections of this Plan.

7. Captions and headings to Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan.

8. All references to statutes, regulations, orders, rules of courts, and the like mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated.

9. Any references to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter.

10. All references to consent, acceptance, or approval include the requirement that such consent, acceptance, or approval be evidenced by a writing, as described in Section 10.6.

### 1.3. Exhibits

Unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement. All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if provided in full in the Plan.

### 1.4. Computation of Time

Unless otherwise specified, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction would ordinarily occur under the Plan falls on a day that is not a Business Day, then such transaction shall instead occur on the next Business Day.

### 1.5. Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specified, the laws of the State of New York shall govern the rights, obligations, construction, and implementation of the Plan, and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise provided in those agreements, in which case the governing law of such agreement shall control), without giving effect to the principles of conflict of laws.

### 1.6. Severability of Plan Provisions

If, before the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable.

### 1.7. No Effect on Sale Transactions

Nothing in this Plan shall affect any prior Sale Order or other transaction between any Debtor and any third party that was approved by the Court before the Effective Date of this Plan.

### 1.8. Entire Agreement

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, agreements, understandings, and representations on subjects covered by the Plan, all of which are merged and integrated into the Plan.

## 2. ADMINISTRATIVE CLAIMS, PROFESSIONAL FEES, AND PRIORITY TAX CLAIMS

### 2.1. Introduction

In accordance with Bankruptcy Code section 1123(a)(1), Administrative Claims (including Professional Fee Claims) and Priority Tax Claims have not been classified and are thus excluded from the Classes of Claims and Interests provided in Section 3.

### 2.2. Administrative Claims

Unless otherwise agreed between the Liquidating Trustee and the Holder of an Allowed Administrative Claim, all Allowed Administrative Claims shall be paid in full in Cash under this Plan (to the extent they have not already been satisfied during the Chapter 11 Cases). Such payment shall be made (a) no later than the Initial Distribution Date, if the Claim is Allowed before the Effective Date; (b) no later than 30 days after the date on which an order allowing such Claim becomes a Final Order, if the Claim is not Allowed before the Effective Date; (c) at a time set as a contractual term of the particular transaction giving rise to the Claim, if the Claim arises from liabilities incurred by the Debtors or the Estates in the ordinary course of their business after the Petition Date; or (d) at such time and upon such terms as may be ordered by this Court or agreed to by the Liquidating Trustee and the Holder of the Claim.

### 2.3. Professional Fee Claims

#### 2.3.1. <u>Final Fee Applications and Payment of Professional Fee Claims</u>

All final requests for the payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred before the Effective Date must be Filed no later than 30 days after the Effective Date, unless the Bankruptcy Court has ordered that a final request for payment of such Professional Fee Claims is not required. Any Professional Fee Claim subject to this requirement that is not Filed by this date shall be disallowed upon the expiration of the time for Filing such Professional Fee Claims without any further action on the part of the Liquidating Trustee or the Court. The Holder of any such disallowed Professional Fee Claim shall be permanently barred and estopped from asserting the Professional Fee Claim against the Liquidating Trusts, any Debtor, or any property held by the Liquidating Trustee.

The Bankruptcy Court shall resolve any dispute concerning what amount, if any, of a Professional Fee Claim shall be Allowed after notice and a hearing. The Liquidating Trustee shall pay the amount of the Allowed Professional Fee Claim owing to the Professional in Cash within fifteen days after the entry of an order Allowing such a Claim.

#### 2.3.2. <u>Post-Effective Date Fees and Expenses</u>

Except as otherwise specifically provided herein, from and after the Effective Date, the Liquidating Trustee shall, in the ordinary course of business and without any further notice or any action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan incurred by the Chapter 11 Trustee or the Liquidating Trustee. The Liquidating Trustee shall pay, within fourteen days after submission of a detailed invoice to the Liquidating Trustee, such reasonable Claims for compensation or reimbursement of expenses incurred by the Professionals retained by the Chapter 11 Trustee or the Liquidating Trustee. If the Liquidating Trustee disputes the reasonableness of any such Claim, the Liquidating Trustee or the affected Professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such Claim, and the disputed portion of such Claim shall not be paid until the dispute is resolved.

Upon the Effective Date, any requirement that Professionals comply with Bankruptcy Code sections 327, 328, 329, 330, 331, and 1103 or the Interim Compensation Order in seeking retention or compensation for services rendered after the Effective Date shall terminate.

### 2.4. Priority Tax Claims

Except to the extent that each Holder of an Allowed Priority Tax Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be paid in Cash in full on the later of the Effective Date or the date the Claim becomes an Allowed Priority Tax Claim.

# 3. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

## 3.1. Summary

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, Confirmation, and Distribution under the Plan and Bankruptcy Code sections 1122 and 1123(a)(1). Each Debtor's Plan shall be separate for voting, Confirmation, and Distribution purposes. A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.

A Claim or Interest is classified within a particular Class for the purpose of receiving Distributions only to the extent that such Claim or Interest is Allowed and has not already been satisfied before the Effective Date.

Nothing in this Plan shall affect the Chapter 11 Trustee's, Debtors', the Liquidating Trusts', or the Liquidating Trustee's rights in respect of any Claims or Interests, including any such rights relating to legal and equitable defenses to, or setoffs or recoupments against, any such Claims or Interests.

All of the potential Classes for each of the Debtors are provided in the table below.

| Class | Designation | Status | Voting Status |
|-------|-------------|--------|---------------|
| FD1 | Firestar Secured Tax Claims | Unimpaired | Deemed to accept the Plan; not entitled to vote |
| FD2 | Firestar Secured Reimbursement Claims | Unimpaired | Deemed to accept the Plan; not entitled to vote |
| FD3 | Firestar Priority Non-Tax Claims | Unimpaired | Deemed to accept the Plan; not entitled to vote |
| FD4 | Firestar Convenience Claims | Unimpaired | Deemed to accept the Plan; not entitled to vote |
| FD5 | Firestar Allowed General Unsecured Claims | Impaired | Entitled to vote |
| FD6 | Firestar Subordinated Claims | Impaired | Deemed to reject the Plan; not entitled to vote |
| FD7 | Firestar Interests | Impaired | Deemed to reject the Plan; not entitled to vote |
| AJ1 | Old AJ Secured Tax Claims | Unimpaired | Deemed to accept the Plan; not entitled to vote |
| AJ3 | Old AJ Priority Non-Tax Claims | Unimpaired | Deemed to accept the Plan; not entitled to vote |
| AJ4 | Old AJ Convenience Claims | Unimpaired | Deemed to accept the Plan; not entitled to vote |
| AJ5 | Old AJ Allowed General Unsecured Claims | Impaired | Entitled to vote |
| AJ6 | Old AJ Subordinated Claims | Impaired | Deemed to reject the Plan; not entitled to vote |
| AJ7 | Old AJ Interests | Impaired | Deemed to reject the Plan; not entitled to vote |
| FA1 | Fantasy Secured Tax Claims | Unimpaired | Deemed to accept the Plan; not entitled to vote |
| FA2 | Fantasy Secured Reimbursement Claims | Unimpaired | Deemed to accept the Plan; not entitled to vote |
| FA3 | Fantasy Priority Non-Tax Claims | Unimpaired | Deemed to accept the Plan; not entitled to vote |
| FA4 | Fantasy Convenience Claims | Unimpaired | Deemed to accept the Plan; not entitled to vote |
| FA5 | Fantasy Allowed General Unsecured Claims | Impaired | Entitled to vote |
| FA6 | Fantasy Subordinated Claims | Impaired | Deemed to reject the Plan; not entitled to vote |
| FA7 | Fantasy Interests | Impaired | Deemed to reject the Plan; not entitled to vote |

**3.2. Classification and Treatment of Claims Against Firestar**

    3.2.1.   Class FD1: Firestar Secured Tax Claims

        3.2.1.1.   **Classification.** Class FD1 consists of all Secured Tax Claims against Firestar.

        3.2.1.2.   **Treatment.** Except to the extent that a Holder of a Class FD1 Claim has agreed to less favorable treatment, each Holder of a Class FD1 Claim shall be paid Cash in an amount equal to the Allowed amount of such Claim, which shall constitute full and final satisfaction of the Claim. Such payment in full shall be made (i) no later than the Initial Distribution Date, if the Claim is Allowed before the Effective Date; (ii) no later than 30 days after the date on which an order allowing the Claim becomes a Final Order, if the Claim is not Allowed before the Effective Date; or (iii) at such time and upon such terms as may be ordered by this Court or agreed to by the Liquidating Trustee and the Holder of the Class FD1 Claim.

        3.2.1.3.   **Impairment and Voting.** Class FD1 is Unimpaired and not entitled to vote.

    3.2.2.   Class FD2: Firestar Secured Reimbursement Claims

        3.2.2.1.   **Classification.** Class FD2 consists of Reimbursement Claims, as defined in paragraph 4 of the Payoff Letters, against Firestar, up to the amount of the Reimbursement Reserve Funds held by each Prepetition Secured Lender. All Class FD2 Claims are unliquidated, contingent, Secured Claims.

        3.2.2.2.   **Treatment.** To the extent that any Class FD2 Claim becomes fixed before April 1, 2020, such Holder shall be entitled to satisfy the fixed amount of its Class FD2 Claim in full from the Reimbursement Reserve Funds held by the Holder of such Class FD2 Claim. If and to the extent any Class FD2 Secured Claim does not become Fixed before April 1, 2020, such Claim shall be cancelled and all remaining Reimbursement Reserve Funds held by the Holder shall be delivered to the Liquidating Trust for Firestar. To the extent the amount of a Class FD2 Claim exceeds the amount of the Reimbursement Reserve Funds held by the Holder of the Claim, such excess shall be an Administrative Claim under Section 2.2 of this Plan.

        3.2.2.3.   **Impairment and Voting.** Class FD2 is Unimpaired and not entitled to vote.

    3.2.3.   Class FD3: Firestar Priority Non-Tax Claims

        3.2.3.1.   **Classification.** Class FD3 consists of all Priority Non-Tax Claims against Firestar.

        3.2.3.2.   **Treatment.** Except to the extent that a Holder of a Class FD3 Claim has agreed to less favorable treatment, each Holder of a Class FD3 Claim shall be paid Cash in an amount equal to the Allowed amount of such Claim,

which shall constitute full and final satisfaction of such Claim, (i) no later than the Initial Distribution Date, if the Claim is Allowed before the Effective Date; (ii) no later than 30 days after the date on which an order allowing the Claim becomes a Final Order, if the Claim is not Allowed before the Effective Date; or (iii) at such time and upon such terms as may be ordered by this Court or agreed to by the Liquidating Trustee and the Holder of the Class FD3 Claim.

3.2.3.3. **Impairment and Voting.** Class FD3 is Unimpaired and not entitled to vote.

### 3.2.4. Class FD4: Firestar Convenience Claims

3.2.4.1. **Classification.** Class FD4 consists of all Convenience Claims against Firestar, which shall be all Allowed General Unsecured Claims against Firestar of $1,000 or less, or whose Holders have agreed to reduce their Claims to $1,000.

3.2.4.2. **Treatment.** Each Holder of an Allowed Convenience Claim shall be paid Cash in amount equal to the Allowed amount of such Claim, which shall constitute full and final satisfaction of such Claim, (i) no later than the Initial Distribution Date, if the Claim is Allowed before or on the Effective Date; (ii) no later than 30 days after the date on which an order allowing such Claim becomes a Final Order, if the Claim is not Allowed before or on the Effective Date; or (iii) at such time and upon such terms as may be ordered by this Court or agreed to by the Liquidating Trustee and the Holder of the Class FD4 Claim.

3.2.4.3. **Impairment and Voting.** Class FD4 is Unimpaired and not entitled to vote.

### 3.2.5. Class FD5: Firestar Allowed General Unsecured Claims

3.2.5.1. **Classification.** Class FD5 consists of Allowed General Unsecured Claims against Firestar that are not Convenience Claims against Firestar.

3.2.5.2. **Treatment.** Each Holder of an Allowed Class FD5 Claim other than PNB shall be paid, in full and final satisfaction of such Claim, a Pro Rata share of one or more Distributions of Cash from the Trustee or Available Cash from the Liquidating Trust for Firestar. Such payments shall not exceed the Face Amount of such Allowed Class FD5 Claim. Distributions to Holders of Allowed Class FD5 Claims shall commence on the Initial Distribution Date and may continue on one or more later Distribution Dates.

PNB, the Holder of the PNB Claims, shall receive the following treatment:

    a. PNB shall receive a Pro Rata share of Distributions with all other Allowed Class FD5 Claims until PNB's recovery from all

three Estates on account of the PNB Claims is equal to $2,500,000.

    b. If and when PNB's recovery from all three Estates on the PNB Claims reaches $2,500,000, the remainder of PNB's Claim against Firestar shall be subordinated to all other Allowed Class FD5 Claims (but not to any other category of Claims or Interests), until all other Allowed Class FD5 Claims are paid in full, after which PNB shall receive, on account of its remaining Claim against Firestar, all remaining Available FD Cash in one or more Distributions.

3.2.5.3. **Impairment and Voting.** Class FD5 is Impaired and is entitled to vote.

### 3.2.6. Class FD6: Firestar Subordinated Claims

3.2.6.1. **Classification.** Class FD6 consists of any Subordinated Claims against Firestar.

3.2.6.2. **Treatment.** Holders of Class FD6 Claims shall not receive or retain any Distribution or Claims under the Plan.

3.2.6.3. **Impairment and Voting.** Class FD6 is Impaired, shall not receive any property under the Plan, and is not entitled to vote.

### 3.2.7. Class FD7: Firestar Interests

3.2.7.1. **Classification.** Class FD7 consists of all Interests in Firestar.

3.2.7.2. **Treatment.** Holders of Interests shall not receive or retain any Distribution or Claims under the Plan. Upon the Effective Date, such Interests shall be cancelled.

3.2.7.3. **Impairment and Voting.** Class FD7 is Impaired, shall not receive any property under the Plan, and is not entitled to vote.

## 3.3. Classification and Treatment of Claims Against Old AJ

### 3.3.1. Class AJ1: Old AJ Secured Tax Claims

3.3.1.1. **Classification.** Class AJ1 consists of all Secured Tax Claims against Old AJ.

3.3.1.2. **Treatment.** Except to the extent that a Holder of a Class AJ1 Claim has agreed to less favorable treatment, each Holder of a Class AJ1 Claim shall be paid Cash in an amount equal to the Allowed amount of such Claim, which shall constitute full and final satisfaction of the Claim. Such payment in full shall be made (i) no later than the Initial Distribution Date, if the Claim is Allowed before the Effective Date; (ii) no later than 30 days after the date on which an order allowing the Claim becomes a Final Order, if

the Claim is not Allowed before the Effective Date; or (iii) at such time and upon such terms as may be ordered by this Court or agreed to by the Liquidating Trustee and the Holder of the Class AJ1 Claim.

      3.3.1.3.    **Impairment and Voting.** Class AJ1 is Unimpaired and not entitled to vote.

3.3.2.    <u>Reserved</u>

3.3.3.    <u>Class AJ3: Old AJ Priority Non-Tax Claims</u>

      3.3.3.1.    **Classification.** Class AJ3 consists of all Priority Non-Tax Claims against Old AJ.

      3.3.3.2.    **Treatment.** Except to the extent that a Holder of a Class AJ3 Claim has agreed to less favorable treatment, each Holder of a Class AJ3 Claim shall be paid Cash in an amount equal to the Allowed amount of such Claim, which shall constitute full and final satisfaction of such Claim, (i) no later than the Initial Distribution Date, if the Claim is Allowed before the Effective Date; (ii) no later than 30 days after the date on which an order allowing the Claim becomes a Final Order, if the Claim is not Allowed before the Effective Date; or (iii) at such time and upon such terms as may be ordered by this Court or agreed to by the Liquidating Trustee and the Holder of the Class AJ3 Claim.

      3.3.3.3.    **Impairment and Voting.** Class AJ3 is Unimpaired and not entitled to vote.

3.3.4.    <u>Class AJ4: Old AJ Convenience Claims</u>

      3.3.4.1.    **Classification.** Class AJ4 consists of all Convenience Claims against Old AJ, which shall be all Allowed General Unsecured Claims against Old AJ of $1,000 or less, or whose Holders have agreed to reduce their Claims to $1,000.

      3.3.4.2.    **Treatment.** Each Holder of an Allowed Convenience Claim shall be paid Cash in amount equal to the Allowed amount of such Claim, which shall constitute full and final satisfaction of such Claim, (i) no later than the Initial Distribution Date, if the Claim is Allowed before or on the Effective Date; (ii) no later than 30 days after the date on which an order allowing such Claim becomes a Final Order, if the Claim is not Allowed before or on the Effective Date; or (iii) at such time and upon such terms as may be

ordered by this Court or agreed to by the Liquidating Trustee and the Holder of the Class AJ4 Claim.

3.3.4.3. **Impairment and Voting.** Class AJ4 is Unimpaired and not entitled to vote.

3.3.5. <u>Class AJ5: Old AJ Allowed General Unsecured Claims</u>

3.3.5.1. **Classification.** Class AJ5 consists of Allowed General Unsecured Claims against Old AJ that are not Convenience Claims against Old AJ.

3.3.5.2. **Treatment.** Each Holder of an Allowed Class AJ5 Claim other than PNB shall be paid, in full and final satisfaction of such Claim, a Pro Rata share of one or more Distributions of Cash from the Trustee or Available Cash from the Liquidating Trust for Old AJ. Such payments shall not exceed the Face Amount of such Allowed Class AJ5 Claim. Distributions to Holders of Allowed Class AJ5 Claims shall commence on the Initial Distribution Date and may continue on one or more later Distribution Dates.

PNB, the Holder of the PNB Claims, shall receive the following treatment:

a. PNB shall receive a Pro Rata share of Distributions with all other Allowed Class AJ5 Claims until PNB's recovery from all three Estates on account of the PNB Claims is equal to $2,500,000.

b. If and when PNB's recovery from all three Estates on the PNB Claims reaches $2,500,000, the remainder of PNB's Claim against Old AJ shall be subordinated to all other Allowed Class AJ5 Claims (but not to any other category of Claims or Interests), until all other Allowed Class AJ5 Claims are paid in full, after which PNB shall receive, on account of its remaining Claim against Old AJ, all remaining Available AJ Cash in one or more Distributions.

3.3.5.3. **Impairment and Voting.** Class AJ5 is Impaired and is entitled to vote.

3.3.6. <u>Class AJ6: Old AJ Subordinated Claims</u>

3.3.6.1. **Classification.** Class AJ6 consists of any Subordinated Claims against Old AJ.

3.3.6.2. **Treatment.** Holders of Class AJ6 Claims shall not receive or retain any Distribution or Claims under the Plan.

3.3.6.3. **Impairment and Voting.** Class AJ6 is Impaired, shall not receive any property under the Plan, and is not entitled to vote.

### 3.3.7. Class AJ7: Old AJ Interests

3.3.7.1. **Classification.** Class AJ7 consists of all Interests in Old AJ.

3.3.7.2. **Treatment.** Holders of Interests shall not receive or retain any Distribution or Claims under the Plan. Upon the Effective Date, such Interests shall be cancelled.

3.3.7.3. **Impairment and Voting.** Class AJ7 is Impaired, shall not receive any property under the Plan, and is not entitled to vote.

## 3.4. Classification and Treatment of Claims Against Fantasy

### 3.4.1. Class FA1: Fantasy Secured Tax Claims

3.4.1.1. **Classification.** Class FA1 consists of all Secured Tax Claims against Fantasy.

3.4.1.2. **Treatment.** Except to the extent that a Holder of a Class FA1 Claim has agreed to less favorable treatment, each Holder of a Class FA1 Claim shall be paid Cash in an amount equal to the Allowed amount of such Claim, which shall constitute full and final satisfaction of the Claim. Such payment in full shall be made (i) no later than the Initial Distribution Date, if the Claim is Allowed before the Effective Date; (ii) no later than 30 days after the date on which an order allowing the Claim becomes a Final Order, if the Claim is not Allowed before the Effective Date; or (iii) at such time and upon such terms as may be ordered by this Court or agreed to by the Liquidating Trustee and the Holder of the Class FA1 Claim.

3.4.1.3. **Impairment and Voting.** Class FA1 is Unimpaired and not entitled to vote.

### 3.4.2. Class FA2: Fantasy Secured Reimbursement Claims

3.4.2.1. **Classification.** Class FA2 consists of Reimbursement Claims, as defined in paragraph 4 of the Payoff Letters, against Fantasy, up to the amount of the Reimbursement Reserve Funds held by each Prepetition Secured Lender. All Class FA2 Claims are unliquidated, contingent, Secured Claims.

3.4.2.2. **Treatment.** To the extent that any Class FA2 Claim becomes fixed before April 1, 2020, such Holder shall be entitled to satisfy the fixed amount of its Class FA2 Claim in full from the Reimbursement Reserve Funds held by the Holder of such Class FA2 Claim. If and to the extent any Class FA2 Secured Claim does not become Fixed before April 1, 2020, such Claim shall be cancelled and all remaining Reimbursement Reserve Funds held by the Holder shall be delivered to the Liquidating Trust for Fantasy. To the extent the amount of a Class FA2 Claim exceeds the amount of the

Reimbursement Reserve Funds held by the Holder of the Claim, such excess shall be an Administrative Claim under Section 2.2 of this Plan.

3.4.2.3. **Impairment and Voting.** Class FA2 is Unimpaired and not entitled to vote.

### 3.4.3. Class FA3: Fantasy Priority Non-Tax Claims

3.4.3.1. **Classification.** Class FA3 consists of all Priority Non-Tax Claims against Fantasy.

3.4.3.2. **Treatment.** Except to the extent that a Holder of a Class FA3 Claim has agreed to less favorable treatment, each Holder of a Class FA3 Claim shall be paid Cash in an amount equal to the Allowed amount of such Claim, which shall constitute full and final satisfaction of such Claim, (i) no later than the Initial Distribution Date, if the Claim is Allowed before the Effective Date; (ii) no later than 30 days after the date on which an order allowing the Claim becomes a Final Order, if the Claim is not Allowed before the Effective Date; or (iii) at such time and upon such terms as may be ordered by this Court or agreed to by the Liquidating Trustee and the Holder of the Class FA3 Claim.

3.4.3.3. **Impairment and Voting.** Class FA3 is Unimpaired and not entitled to vote.

### 3.4.4. Class FA4: Fantasy Convenience Claims

3.4.4.1. **Classification.** Class FA4 consists of all Convenience Claims against Fantasy, which shall be all Allowed General Unsecured Claims against Fantasy of $1,000 or less, or whose Holders have agreed to reduce their Claims to $1,000.

3.4.4.2. **Treatment.** Each Holder of an Allowed Convenience Claim shall be paid Cash in amount equal to the Allowed amount of such Claim, which shall constitute full and final satisfaction of such Claim, (i) no later than the Initial Distribution Date, if the Claim is Allowed before or on the Effective Date; (ii) no later than 30 days after the date on which an order allowing such Claim becomes a Final Order, if the Claim is not Allowed before or on the Effective Date; or (iii) at such time and upon such terms as may be

ordered by this Court or agreed to by the Liquidating Trustee and the Holder of the Class FA4 Claim.

3.4.4.3. **Impairment and Voting.** Class FA4 is Unimpaired and not entitled to vote.

3.4.5. <u>Class FA5: Fantasy Allowed General Unsecured Claims</u>

3.4.5.1. **Classification.** Class FA5 consists of Allowed General Unsecured Claims against Fantasy that are not Convenience Claims against Fantasy.

3.4.5.2. **Treatment.** Each Holder of an Allowed Class FA5 Claim other than PNB shall be paid, in full and final satisfaction of such Claim, a Pro Rata share of one or more Distributions of Cash from the Trustee or Available Cash from the Liquidating Trust for Fantasy. Such payments shall not exceed the Face Amount of such Allowed Class FA5 Claim. Distributions to Holders of Allowed Class FA5 Claims shall commence on the Initial Distribution Date and may continue on one or more later Distribution Dates.

PNB, the Holder of the PNB Claims, shall receive the following treatment:

a. PNB shall receive a Pro Rata share of Distributions with all other Allowed Class FA5 Claims until PNB's recovery from all three Estates on account of the PNB Claims is equal to $2,500,000.

b. If and when PNB's recovery from all three Estates on the PNB Claims reaches $2,500,000, the remainder of PNB's Claim against Fantasy shall be subordinated to all other Allowed Class FA5 Claims (but not to any other category of Claims or Interests), until all other Allowed Class FA5 Claims are paid in full, after which PNB shall receive, on account of its remaining Claim against Fantasy, all remaining Available FA Cash in one or more Distributions.

3.4.5.3. **Impairment and Voting.** Class FA5 is Impaired and is entitled to vote.

3.4.6. <u>Class FA6: Fantasy Subordinated Claims</u>

3.4.6.1. **Classification.** Class FA6 consists of any Subordinated Claims against Fantasy.

3.4.6.2. **Treatment.** Holders of Class FA6 Claims shall not receive or retain any Distribution or Claims under the Plan.

3.4.6.3. **Impairment and Voting.** Class FA6 is Impaired, shall not receive any property under the Plan, and is not entitled to vote.

3.4.7.    Class FA7: Fantasy Interests

    3.4.7.1.    **Classification.** Class FA7 consists of all Interests in Fantasy.

    3.4.7.2.    **Treatment.** Holders of Interests shall not receive or retain any Distribution or Claims under the Plan. Upon the Effective Date, such Interests shall be cancelled.

    3.4.7.3.    **Impairment and Voting.** Class FA7 is Impaired, shall not receive any property under the Plan, and is not entitled to vote.

## 4.    ACCEPTANCE OR REJECTION OF THE PLAN

### 4.1.    Voting Classes

Claims in Class FD5, Class AJ5, and Class FA5 are Impaired under this Plan, and the Holders of such Claims are entitled to vote to accept or reject the Plan.

### 4.2.    Nonconsensual Confirmation

Because Holders of Class FD6 Claims, Class FD7 Interests, Class AJ6 Claims, Class AJ7 Interests, Class FA6 Claims, and Class FA7 Interests are deemed to reject the plan, the Chapter 11 Trustee will request confirmation under Bankruptcy Code section 1129(b).

### 4.3.    Elimination of Vacant Classes

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Interest that is Allowed in an amount greater than zero shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies Bankruptcy Code section 1129(a)(8) with respect to that Class.

## 5.    MEANS FOR IMPLEMENTATION OF THE PLAN

### 5.1.    Joint Chapter 11 Plan

The Plan is a joint chapter 11 plan for each of the Debtors. The Plan for each Debtor is non-severable and is mutually dependent on the Plan for each other Debtor.

### 5.2.    The Liquidating Trusts

Within 30 days after the Effective Date, the Chapter 11 Trustee shall transfer all then-remaining Cash held by the Estates to the Liquidating Trustee, and those funds shall vest automatically in a Liquidating Trust for each Estate.

On the Effective Date, all other Retained Assets of each Estate, including all Avoidance Actions and other Claims, rights of setoff, and interests in any insurance policy, shall be transferred to the Liquidating Trust for the Estate. The Chapter 11 Trustee may, to the extent

desirable or helpful, execute any contribution, assignment, or other agreement memorializing the transfer of assets of the Estates to the Liquidating Trusts.

On and after the Effective Date, the Chapter 11 Trustee and the Liquidating Trustee shall take all steps necessary to transfer all insurance policies and other assets of the Estates to the corresponding Liquidating Trusts; however, such transfer shall not affect any rights, remedies, or defenses of the insurance companies that issued such Policies, whether such rights or defenses arise under an insurance policy or applicable law. Notwithstanding anything herein to the contrary, no transfer of any insurance policy or other asset under the Plan shall impair or impede in any way the transfer of title to, or any interest in, any insurance policy approved by order of the Bankruptcy Court before the Effective Date, and the Chapter 11 Trustee or the Liquidating Trustee may take or continue to take any steps necessary or helpful to effectuate any such transfer so authorized by order of the Bankruptcy Court.

The Plan shall be considered a motion under Bankruptcy Code sections 105, 363, and 365 for authority to execute the transfers and related actions provided immediately above.

The assets comprising the Liquidating Trusts shall be treated for tax purposes in the manner described in Section 5.21.1.

### 5.3. Dissolution of the Debtors

As soon as practicable after the Effective Date, the Debtors shall be dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith. In accordance with Bankruptcy Code section 1142(b), the Liquidating Trustee shall be authorized to file and shall file with the official public office for keeping corporate records in the State of incorporation of each Debtor a certificate of dissolution or equivalent document. Such a certificate of dissolution may be executed by the Liquidating Trustee without need for any action or approval by the shareholders or Board of Directors of each Debtor. From and after the Effective Date, each Debtor (a) for all purposes shall be deemed to have withdrawn its business operations from any State in which it was previously conducting, or is registered or licensed to conduct, its business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal; (b) shall be deemed to have cancelled all Interests under this Plan; and (c) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date.

The dissolution of the Debtors shall not have any effect, in any manner, on the Retained Causes of Action that the Liquidating Trustee may assert in accordance with the Plan and the Liquidating Trust Agreement.

### 5.4. Vesting and Transfer of Assets to the Liquidating Trusts

Title to all Retained Assets other than Cash shall vest in the Liquidating Trusts on the Effective Date, free and clear of all Liens, Claims, and Interests, except that a Liquidating Trust may abandon or otherwise decline to accept any Retained Assets that the Liquidating Trustee believes in good faith have no value to the Liquidating Trust. Title to any Assets that a Liquidating

Trust abandons or declines to accept shall not vest in the Liquidating Trust. Cash shall vest in the Liquidating Trusts upon the transfer of Cash under section 5.2.

To the extent necessary, all Entities shall cooperate with the Chapter 11 Trustee to implement the transfer of the Retained Assets to the Liquidating Trusts as provided for herein.

### 5.5. Retained Causes of Action

All Retained Causes of Action are retained, vested, and preserved by the Liquidating Trusts under Bankruptcy Code section 1123(b), including all Retained Causes of Action provided in the applicable schedule to the Plan Supplement.

From and after the Effective Date, all Retained Causes of Action shall be prosecuted or settled by the Liquidating Trustee. To the extent any proceeding on a Cause of Action is already pending on the Effective Date, the Liquidating Trustee, as successor to the Chapter 11 Trustee, shall continue the prosecution of such Cause of Action and shall be substituted as plaintiff, defendant, or in any other capacity for the Chapter 11 Trustee under this Plan and the Confirmation Order on the Effective Date without need for any further motion practice, notice, or order in any case, action, or matter before the Bankruptcy Court.

Any proceeds from the Causes of Action shall be deposited in the corresponding Liquidating Trust Account.

### 5.6. Payment of Liquidating Trust Operating Expenses

The Liquidating Trustee shall disburse funds from Available Cash for purposes of paying the Liquidating Trust Operating Expenses for each Liquidating Trust without the need for any further order of the Bankruptcy Court. The Liquidating Trustee may reserve a portion of Available Cash for the payment of Liquidating Trust Operating Expenses.

5.6.1. Pre-Effective Date Fees.

The Cash contribution from the Estates to the Liquidating Trustee pursuant to the Plan shall be deemed to be a Distribution to Holders for purposes of Bankruptcy Code section 326. The Chapter 11 Trustee shall submit a final fee application. The Chapter 11 Trustee's final fee application shall be paid to the extent approved by the Bankruptcy Court.

Other than with respect to the incurrence of Liquidating Trust Expenses, the Chapter 11 Trustee, solely in his capacity as such, and Professionals retained by the Chapter 11 Trustee will not be entitled to assert any Professional Fee Claims for any services rendered or expenses incurred after the Effective Date, except for fees for time spent and expenses incurred (a) in connection with preparing and filing any application for allowance of compensation and reimbursement of expenses pending on the Effective Date or Filed and served after the Effective Date, (b) in connection with any appeal of the Confirmation Order or any other appeal pending as of the Effective Date, and (c) at the request of PNB.

### 5.6.2. <u>Post-Effective Date Fees.</u>

The Liquidating Trustee, and the Professionals representing the Liquidating Trustee or PNB, shall be paid on a monthly basis at regular hourly rates, and Professionals representing the Liquidating Trustee or PNB may negotiate and agree upon contingency fee arrangements, in each case subject to the approval of PNB, without further order of the Bankruptcy Court. Any portion of monthly invoices not subject to an objection by PNB within fifteen days shall be paid promptly. Such compensation shall be Liquidating Trust Operating Expenses.

### 5.7. Beneficiaries of Trust Proceeds

In accordance with Treasury regulation section 301.7701-4(d), 26 C.F.R. § 301.7701-4(d), the Beneficiaries of the Liquidating Trusts shall be the Holders of all Allowed Class FD5, Class AJ5, and Class FA5 Claims against the Debtors, respectively, whose Allowed Claims have not been paid by the Trustee and who have remaining Allowed Claims to be paid by the Liquidating Trust. The Holders of such Allowed Class FD5, Class AJ5, and Class FA5 Claims shall receive an allocation of the respective Liquidating Trust Interests as provided for in the Plan and the Liquidating Trust Agreement. The Holders of Liquidating Trust Interests shall receive Distributions from the Liquidating Trusts as provided for in the Plan and the Liquidating Trust Agreement.

### 5.8. Liquidating Trust Agreement

On the Effective Date, the Chapter 11 Trustee, on behalf of the Estates, and the Liquidating Trustee shall execute the Liquidating Trust Agreement, which shall be in form and substance reasonably acceptable to PNB and substantially in the form attached as **Exhibit 1** to the Plan Supplement, and take all actions that are required to transfer the Retained Assets to the Liquidating Trusts as provided in this Plan. From and after the Effective Date, the Liquidating Trustee shall be authorized to, and shall, implement the Liquidating Trust Agreement and the provisions of the Plan that are contemplated to be implemented by the Liquidating Trustee.

### 5.9. Power and Authority of Liquidating Trustee in Accordance with the Liquidating Trust Agreement

The Liquidating Trustee shall be appointed as the representative of each of the Estates under Bankruptcy Code sections 1123(a)(5), (a)(7), and (b)(3)(B) and vested with the authority and power (subject to the Liquidating Trust Agreement) to, among other things, (a) object to Claims against the Debtors; (b) administer, investigate, prosecute, settle, or abandon all Retained Causes of Action assigned to the Liquidating Trusts; (c) make Distributions provided for in the Plan, including on account of Allowed Claims; and (d) take such action as is required to administer, wind-down, and close the Chapter 11 Cases. As the representative of the Estates, the Liquidating Trustee shall succeed to all of the rights and powers of the Chapter 11 Trustee with respect to all Retained Causes of Action assigned and transferred to the Liquidating Trusts, and the Liquidating Trustee shall be substituted for the Chapter 11 Trustee and the Estates, as applicable, as the party in interest in all litigation pending on the Effective Date concerning the Retained Causes of Action.

### 5.10.  Termination of the Liquidating Trusts

The Liquidating Trustee shall be discharged and the Liquidating Trusts shall be terminated at such time as (i) all Disputed Claims have been resolved, (ii) all of the Assets of the Liquidating Trusts have been liquidated, (iii) all duties and obligations of the Liquidating Trustee have been fulfilled, and (iv) all Distributions required to be made by the Liquidating Trusts under the Plan and the Liquidating Trust Agreement have been made, but in no event shall the Liquidating Trusts be dissolved later than five years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period before the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension (not to exceed three years, together with any prior extensions, without a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the assets of the Liquidating Trusts.

### 5.11.  Full and Final Satisfaction

Upon the Effective Date, all Debts of the Liquidating Trusts shall be deemed fixed under the Plan, except as provided herein, and the Liquidating Trusts shall have no liability on account of any Claims or Interests except as provided in the Plan and the Liquidating Trust Agreement. All payments and all Distributions made by the Trustee or by the Liquidating Trustee under the Plan shall be in full and final satisfaction, settlement, and release of all Claims against the respective Estate or Liquidating Trust; however, nothing contained in the Plan shall be deemed to constitute or result in a discharge of the Debtors under Bankruptcy Code section 1141(d).

### 5.12.  Distribution Procedures

#### 5.12.1.  Disbursing Agent

The Disbursing Agent shall make all Distributions required under this Plan and shall implement such procedures as it deems necessary to make Distributions under this Plan so as to efficiently and economically assure prompt and proportionate Distributions. If so ordered by the Bankruptcy Court, the Disbursing Agent shall provide a bond in connection with the making of any Distributions under the Plan.

#### 5.12.2.  Source of Distributions

The source of all Distributions and payments under the Plan and the Liquidating Trust Agreement shall be Cash of the Estates and Available Cash.

#### 5.12.3.  Distribution Dates

Commencing upon the Effective Date, the Trustee and the Liquidating Trustee shall be authorized and directed to distribute the amounts required under the Plan to the Holders of Allowed Claims according to the provisions of the Plan. The Initial Distribution Date shall be within 30 days after the Effective Date.

Distribution Dates after the Initial Distribution Date shall be selected by the Liquidating Trustee.

### 5.12.4. <u>Manner of Cash Payments</u>

Cash Distributions made under the Plan shall be in United States funds by check drawn on or wire transfer from a domestic bank.

### 5.12.5. <u>Claims Payable by Third Parties</u>

No Distributions under the Plan shall be made on account of an Allowed Claim that is payable under one of the Debtors' insurance policies or by a guarantor other than one of the Debtors until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy or guarantor. To the extent that one or more of the Debtors' insurers or guarantors agrees or is ordered by a court to satisfy in full or in part a Claim, then immediately upon such insurer's agreement or court's order, the Liquidating Trustee may expunge the applicable portion of such Claim without an objection to such Claim having to be Filed, without any further notice, and without any further action, order, or approval of the Bankruptcy Court.

### 5.12.6. <u>No Distributions On Account of Disputed Claims</u>

Notwithstanding any other provision of this Plan, Distributions shall be made to a Holder of a Disputed Claim on account of such Claim only after, and only to the extent that, the Disputed Claim either becomes or is deemed to be an Allowed Claim. Any such Distributions shall be made in accordance with the procedures provided in Sections 5.13, 5.14, and 5.15.

### 5.12.7. <u>Transmittal of Distributions and Notices</u>

Any property or notice that an Entity is or becomes entitled to receive under the Plan may be delivered by regular mail, postage prepaid, in an envelope addressed to that Entity's Distribution Address as described below. Property or notice distributed in accordance with this Section shall be deemed delivered to such Entity regardless of whether such property or notice is actually received by that Entity.

An Entity's Distribution Address shall be the address listed in the Schedules, Proof of Claim, or Proof of Interest, but a Holder of a Claim or Interest may designate a different Distribution Address by notifying the Liquidating Trustee and the Claims Agent of that address in writing after the Effective Date. Any change of Distribution Address must be provided to the Liquidating Trustee and the Claims Agent in order to be effective. Such notification shall be effective only upon receipt.

### 5.12.8. <u>Record Date</u>

The Record Date shall be the Effective Date or such other date as is designated in a Final Order of the Bankruptcy Court.

Unless a notice of transfer of Claim has been Filed with the Bankruptcy Court before the Record Date in accordance with Bankruptcy Rule 3001, the Disbursing Agent shall rely on the Claims Register when determining Holders on the Record Date.

### 5.13. Resolution of Disputed Claims

#### 5.13.1. Allowance and Disallowance of Claims

After the Effective Date, the Liquidating Trustee shall have and retain any and all rights and defenses that the Chapter 11 Trustee or Debtors had with respect to any Claim or Interest immediately before the Effective Date.

All Proofs of Claim Filed after the Initial Distribution Date shall be deemed disallowed and expunged as of the Effective Date without any further notice and without any action, order, or approval of the Bankruptcy Court, and Holders of such Claims shall not receive any Distributions on account of such Claims, except (1) if such late Filing is authorized by an order of the Bankruptcy Court or by the Liquidating Trustee, or is deemed timely Filed by a Final Order on or before the Confirmation Hearing; or (2) as provided herein or otherwise agreed.

#### 5.13.2. Settlement with PNB

Each PNB Claim shall be Allowed against each Estate for all purposes under the Plan as of the Effective Date and shall be treated under the Plan as provided in Sections 3.2.5.2, 3.3.5.2, 3.4.5.2.

#### 5.13.3. Liquidating Trustee's Authority

Except as otherwise specifically provided in the Plan, after the Effective Date, the Liquidating Trustee shall have the sole authority to: (a) File, withdraw, or litigate to judgment objections to Claims; (b) settle or compromise any Disputed Claim without any further notice or any action, order, or approval by the Bankruptcy Court; and (c) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice or any action, order, or approval by the Bankruptcy Court.

Any objections to Claims shall be Filed on or before 180 days after the Effective Date, subject to the extension of the deadline for objecting to such Claims by order of the Bankruptcy Court.

#### 5.13.4. Adjustment of Claims Without Objection

Any Claim that has been satisfied, or that has been amended, superseded, canceled, or otherwise expunged (including under the Plan), may be adjusted or expunged (including on the Claims Register to the extent applicable) by the Liquidating Trustee without the need to object to such Claim, without any further notice, and without any further action, order, or approval of the Bankruptcy Court.

### 5.14. Reserve Provisions for Disputed Claims

#### 5.14.1. Establishment of Disputed Claims Reserves

On any date on which Distributions for any particular Class of Claims are made by the Trustee or the Liquidating Trustee, and in connection with making all Distributions required to be made on any such date under the Plan, the Trustee or the Liquidating Trustee, as the case may be, shall establish a separate Disputed Claims Reserve on account of Disputed Claims within the Class receiving Distributions. All Cash distributed into a Disputed Claims Reserve shall be deposited in a separate account at a qualified institution.

#### 5.14.2. Amounts to be Reserved

The Trustee and the Liquidating Trustee shall reserve the Pro Rata proportion of all Cash allocated for Distribution on account of each Disputed Claim based upon the Face Amount of each such Disputed Claim, or such lesser amount as may be agreed to by the Holder of the Claim on one hand and the Trustee or the Liquidating Trustee on the other hand, as applicable, or in such amount as may otherwise be determined by order of the Bankruptcy Court.

#### 5.14.3. Distribution

Unless otherwise required by the applicable treatment provisions of the Plan, payments on any Disputed Claim that becomes an Allowed Claim shall be distributed after the Claim is Allowed. Distributions shall be made periodically in the discretion of the Liquidating Trustee.

If a Disputed Claim is ultimately disallowed in whole or in part, the funds allocated to the Disputed Claims Reserve on account of that Disputed Claim shall be removed from the Disputed Claims Reserve and shall become Available Cash.

#### 5.14.4. Termination of Disputed Claims Reserves

Each Disputed Claims Reserve shall be closed by the Liquidating Trustee when all Distributions and other dispositions of Cash or other property required to be made therefrom under the Plan and the Liquidating Trust Agreement have been made. Upon closure of a Disputed Claims Reserve, all Cash and other property held in that Disputed Claim Reserve shall become Available Cash and be distributed to Holders of Allowed Claims as provided in the Plan.

### 5.15. Allocation of Distributions

To the extent that any Allowed Claim entitled to a Distribution under the Plan comprises indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

### 5.16. Unclaimed Property

Any Cash or other distributable property unclaimed for a period of 90 days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the Holder entitled

thereto in respect of such holder's Allowed Claim shall be Unclaimed Property. Such Unclaimed Property shall include: (a) checks (and the funds represented thereby) mailed to a Distribution Address and returned as undeliverable without a proper forwarding address; (b) funds for uncashed checks; (c) checks (and the funds represented thereby) not mailed or delivered because no Distribution Address to mail or deliver such property was available, notwithstanding efforts by the Liquidating Trustee to locate such address that were commercially reasonable under the circumstances; and (d) checks (and the funds represented thereby) not mailed or delivered because a holder of a Claim or Interest failed to provide a taxpayer identification number or to otherwise satisfy any tax withholding requirements with respect to a distribution within ninety (90) days of the date of on which the Liquidating Trustee requested such information.

Unclaimed Property shall be considered Available Cash.

### 5.17. Setoffs

The Trustee or the Liquidating Trustee may setoff against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made), any Claim of any nature whatsoever that the Estate or the Liquidating Trust may have against the Claim Holder, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trust of any such Claim or right of setoff it may have against the Claim Holder. If the Liquidating Trustee chooses to setoff against an Allowed Claim, then, for purposes of determining the amount of the Allowed Claim, the Liquidating Trustee shall deduct therefrom an amount equal to the amount of any Claim that the Liquidating Trust holds against the Holder thereof, to the extent that applicable law permits such setoff, recoupment, or reduction.

Holders of Allowed Claims retain whatever rights to setoff they are otherwise entitled to assert under Bankruptcy Code section 553.

### 5.18. No Distributions on Late-Filed Claims

Any Claim Filed after the Initial Distribution Date shall not be Allowed and shall not receive any Distribution under this Plan unless the Bankruptcy Court orders otherwise.

### 5.19. No Postpetition Interest on Claims

Unless otherwise specifically provided for in a Final Order, the Plan, or the Confirmation Order, or required by applicable law, postpetition interest shall not accrue or be paid on any prepetition Claims against the Debtors, and no Holder of a prepetition Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such prepetition Claim.

### 5.20. Claims Paid by Third Parties

To the extent that the Holder of a Claim receives payment on account of the Claim from a party other than the Liquidating Trustee, if the Claim is paid in Full, such Claim shall be disallowed without any further notice and without the need for any action, order, or approval of the Bankruptcy Court. To the extent that a Holder of a Claim receives a Distribution on account

of its Claim and also receives payment from a party other than the Liquidating Trust on account of such Claim, such Holder shall, within two weeks after receipt of the second payment, repay, or return the Distribution to the Liquidating Trustee to the extent that the Holder's total recovery on account of such Claim exceeds the Allowed amount of such Claim.  Failure of such Holder to timely repay or return such Distribution shall result in the Holder owing the Liquidating Trust annualized interest at the federal judgment interest rate in effect as of the Petition Date (calculated as provided in 28 U.S.C. § 1961) on such amount owed for each day after the two-week grace period specified above until the amount is repaid.

### 5.21.  Federal Income Tax Compliance; Withholding

#### 5.21.1.  Tax Treatment of Liquidating Trust

For federal income tax purposes, it is intended that the Liquidating Trusts be classified as a liquidating trust under section 301.7701-4 of the Treasury regulations, 26 C.F.R. § 301.7701-4(d), and that such trusts be owned by its Beneficiaries.

A transfer to a Liquidating Trust shall be treated for all purposes of the Internal Revenue Code of 1986, as amended (the "Internal Revenue Code"), as a transfer to the Beneficiaries of the Liquidating Trust. For example, such treatment shall apply for purposes of Internal Revenue Code sections 61(a)(12), 483, 1001, 1012 and 1274.  Any such transfer shall be treated for federal income tax purposes as (1) a deemed transfer to the beneficiary-creditors followed by (2) a deemed transfer by the beneficiary-creditors to the Liquidating Trust, and the Beneficiaries of the Liquidating Trust shall be treated for federal income tax purposes as the grantors and deemed owners of the Liquidating Trust.

#### 5.21.2.  Tax Reporting and Compliance

The Liquidating Trustee shall file returns for the Liquidating Trusts as a grantor trust under Treasury regulation section 1.671-4(a). 26 C.F.R. § 1..671-4(a).  The Liquidating Trustee also shall annually send to each Beneficiary a separate statement setting forth the Beneficiary's share of income, gain, loss, deduction, or credit and shall instruct all such Beneficiaries to report such items on their federal income tax returns; however, no such statement need be sent to any Class that will not receive any Distribution from a Liquidating Trust. The Liquidating Trusts' taxable income, gain, loss, deduction, or credit shall be allocated to Holders of Allowed Claims in accordance with their relative beneficial interests in the Liquidating Trusts.

As soon as possible after the Effective Date, the Liquidating Trustee shall make a good faith valuation of assets of the Liquidating Trusts, and such valuation shall be used consistently by all parties for all federal income tax purposes. The Liquidating Trustee also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidating Trusts that are required by any Governmental Unit for taxing purposes.

The Liquidating Trustee may segregate the Disputed Claims Reserve and the Liquidating Trust Accounts. The Liquidating Trustee may file all income tax returns with respect to any taxable income or loss attributable to the Disputed Claims Reserve or the Liquidating Trust Accounts, determining that either or both of such reserves are tax reporting entities, separate and

distinct from the Liquidating Trusts themselves, in which case, the Liquidating Trustee shall pay the federal, state and local income taxes attributable to such tax reporting entities.

The Liquidating Trustee may request an expedited determination of taxes of the Liquidating Trusts, including the Disputed Claims Reserve and the Liquidating Trust Accounts, under Bankruptcy Code section 505(b) for all returns filed for, or on behalf of, the Debtors and the Liquidating Trusts for all taxable periods through the dissolution of the Liquidating Trusts.

The Liquidating Trustee shall be responsible for filing all federal, state, local, and foreign tax returns for the Debtors and the Liquidating Trusts. The Liquidating Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions made by the Liquidating Trusts shall be subject to any such withholding and reporting requirements.

### 5.21.3. Payment of Taxes

The Liquidating Trusts shall be responsible for payment of all Allowed tax obligations of the Debtors, including Allowed Priority Tax Claims and Allowed Administrative Claims, and any taxes imposed on the Liquidating Trusts or their Assets, including the Disputed Claims Reserve and the Liquidating Trust Accounts. If and to the extent that any Cash retained on account of Disputed Claims in the Disputed Claims Reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such taxes shall be (a) reimbursed from any Cash amounts later retained on account of Disputed Claims, or (b) to the extent such Disputed Claims have been resolved, deducted from any amounts distributable by the Liquidating Trust as a result of the resolutions of such Disputed Claims.

### 5.22. No *De Minimis* Distributions

Notwithstanding anything to the contrary in this Plan, no partial Distribution other than the final Distribution of less than $50.00 shall be made to any Holder of an Allowed Claim on account thereof. The amount of *de minimis* Distributions that are not made under this Section shall accrue and be made available for later Distributions.

### 5.23. United States Trustee Fees

All outstanding amounts due under 28 U.S.C. § 1930(a)(6) that have not been paid shall be paid by the Chapter 11 Trustee on or before the Effective Date.

Any transfer from the Estates to the Liquidating Trustee shall not constitute a "disbursement" under 28 U.S.C. § 1930(a)(6). The Liquidating Trustee shall pay any statutory fees due under 28 U.S.C. § 1930(a)(6) based on disbursements made by the Liquidating Trustee, and such fees shall be paid until entry of a final decree or an order converting or dismissing the case.

### 5.24. Books and Records

On the Effective Date, the Liquidating Trustee shall: (i) take possession of all books, records, and files of the Debtors and their Estates; and (ii) provide for the retention and storage

of such books, records, and files until such time as the Liquidating Trustee determines, in accordance with the Liquidating Trust Agreement, that their retention is no longer necessary or required.

### 5.25. Remaining Cash

If the Liquidating Trustee holds Cash after all Liquidating Trust Operating Expenses and Distributions are made, the Liquidating Trustee shall transfer such remaining Cash to PNB no later than ten days after all such Distributions are made.

## 6. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 6.1. Assumption and Rejection of Executory Contracts and Unexpired Leases

Any Executory Contract or Unexpired Lease not previously assumed or rejected shall be deemed automatically rejected on the Effective Date under Bankruptcy Code sections 365 and 1123, except (a) if such Executory Contract or Unexpired Lease is an agreement or document assumed or entered into in connection with the Plan, (b) if such Executory Contract or Unexpired Lease is a directors' and officers' insurance policy (which policy shall be deemed assumed and transferred to the appropriate Liquidating Trust under this Plan and shall continue to provide coverage for all individuals within the definition of "Insured" in any such policy), or (c) as otherwise provided by a separate postpetition agreement.

Rejection of an Executory Contract or Unexpired Lease, whether under this Plan or otherwise, shall not terminate any preexisting obligations owed to a Liquidating Trust under such Executory Contract or Unexpired Lease.

To the extent that a Debtor or the Chapter 11 Trustee might have executed any modification, amendment, supplement, or restatement to any prepetition Executory Contract or Unexpired Lease during the Chapter 11 Cases, such action shall not be deemed to alter the prepetition nature of such Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

Confirmation shall, subject to and upon the Effective Date, constitute a Bankruptcy Court order approving the assumption, assumption and assignment, or rejection of the Executory Contracts and Unexpired Leases assumed, assumed and assigned, or rejected under the Plan. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order. Each Executory Contract and Unexpired Lease assumed under this Section (or by any order of the Bankruptcy Court) which has not been assigned to a third party before the Effective Date shall vest in the Liquidating Trust and be fully enforceable by the Liquidating Trustee in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for the assumption of such Executory Contract or Unexpired Lease under applicable federal law.

### 6.2. Claims Based on Rejection of Executory Contracts or Unexpired Leases

Any Proof of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases under the Plan or the Confirmation Order must be Filed with the Bankruptcy Court within 30 days after the Effective Date, unless a Bankruptcy Court order provides otherwise. Any Claim arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time shall be automatically disallowed and forever barred from assertion and shall not be enforceable against the Liquidating Trust or its property without the need for any objection by the Liquidating Trustee, any further notice, or any action, order, or approval of the Bankruptcy Court or any other Entity. Any Allowed Claims arising from the rejection of an Executory Contract or Unexpired Lease shall be classified and treated accordingly under this Plan, after which such Allowed Claims shall be deemed fully satisfied and released.

### 6.3. Reservation of Rights

Nothing contained in this Plan shall constitute an admission by the Chapter 11 Trustee, the Liquidating Trustee, the Debtors, or the Estates that any contract or lease is in fact an Executory Contract or Unexpired Lease or that the Chapter 11 Trustee, the Liquidating Trustee, the Liquidating Trusts, the Debtors, or the Estates have any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Liquidating Trustee shall have 30 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease under the Plan.

## 7. CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND TO THE EFFECTIVE DATE

### 7.1. Conditions to Confirmation of the Plan

The following are conditions precedent to the occurrence of the Confirmation Date, which must be satisfied or waived in accordance with Section 7.3:

1. the Confirmation Order is in form and substance reasonably acceptable to the Chapter 11 Trustee; and

2. the Confirmation Order is in form and substance reasonably acceptable to PNB.

### 7.2. Conditions to the Effective Date

The Effective Date shall not occur until each of the conditions provided below is satisfied or waived in accordance with Section 7.3:

1. the Confirmation Order has been entered;

2. the Confirmation Order is not then stayed, vacated, or reversed, and has not been amended without the agreement of the Chapter 11 Trustee;

3. as determined by the Court or estimated in the reasonable discretion of the Chapter 11 Trustee (after consultation with PNB), Allowed Claims, excluding the PNB Claims, do not exceed $2,400,000 for Firestar, $1,700,000 for Old AJ, and $250,000 for Fantasy;

4. the Liquidating Trusts have been established;

5. the Liquidating Trustee has been appointed and has assumed his or her rights and responsibilities under the Plan and under the documents substantially in the form provided in the Liquidating Trust Agreement; and

6. all actions, documents, and agreements necessary to implement the provisions of the Plan to be effectuated on or before the Effective Date are in form and substance reasonably satisfactory to the Chapter 11 Trustee, and such actions, documents, and agreements have been effected or executed and delivered.

### 7.3. Waiver of Conditions

Each of the conditions provided in Sections 7.1 and 7.2 of this Plan may be waived in whole or in part by the Chapter 11 Trustee without any notice to parties in interest or the Bankruptcy Court and without a hearing, but any such waiver shall not be effective without the consent of PNB, which shall not be unreasonably withheld.

### 7.4. Effect of Failure of Conditions to the Effective Date

If the conditions to the Effective Date have not been satisfied or duly waived in accordance with the Plan on or before the first Business Day that is more than 180 days after the Confirmation Date, or such later date as might be agreed to by the Chapter 11 Trustee and PNB, the Chapter 11 Trustee may schedule a status hearing with the Bankruptcy Court. At this status hearing, the Bankruptcy Court may vacate the Confirmation Order if the Court determines that it would be in the best interests of all parties in interest. If the Confirmation Order is ultimately vacated, the Plan shall be null and void in all respects, and nothing contained in the Plan shall constitute an admission, waiver, or release of any Claims against or Interests in the Estates.

### 7.5. Effective Date

The Effective Date shall be the first Business Day after the Confirmation Date on which (a) the conditions to the occurrence of the Effective Date provided in Section 7.2 have been satisfied or waived under Section 7.3, and (b) the Chapter 11 Trustee declares the Plan effective.

## 8. EFFECTS OF CONFIRMATION

### 8.1. Binding Effect of Plan

Except as otherwise provided in Bankruptcy Code section 1141(d)(3), upon the occurrence of the Effective Date, the provisions of this Plan shall bind any Holder of a Claim against, or Interest in, a Debtor, whether or not the Claim or Interest of such Holder is impaired under this Plan and whether or not such Holder has accepted this Plan.

**8.2.**       **Exculpation**

8.2.1 Definitions

    "**Exculpated Party**" means (a) the Chapter 11 Trustee, (b) the Liquidating Trustee, (c) PNB, or (d) with respect to any Entity described in the foregoing clauses (a) through (c), such Entity's respective postpetition officers, directors, shareholders, members, employees, representatives, advisors, attorneys, financial advisors, investment bankers, agents, related professionals, or affiliates.

    "**Exculpated Act**" means any act or omission occurring or failing to occur after the Petition Date relating to or arising out of the Chapter 11 Cases, including the negotiation and execution of this Plan, the Disclosure Statement, the Liquidating Trust Agreement, any Sale Order or related sale process, the solicitation of votes for and the pursuit of confirmation of this Plan, the Effective Date, the management of the Liquidating Trusts, the liquidation of the Liquidating Trust Assets, the administration of this Plan, or the property to be distributed under this Plan, including all documents ancillary thereto, all decisions, actions, inactions, and alleged negligence or misconduct relating thereto.

8.2.2 Exculpation

    As of the Effective Date, notwithstanding any other provision of this Plan except section 8.2.3, to the extent permitted by law—

        8.2.2.1 no Exculpated Party shall have or incur liability to any other party in interest, or any of their respective officers, directors, shareholders, members, employees, representatives, advisors, attorneys, financial advisors, investment bankers, agents, related professionals, or affiliates for any Exculpated Act; and

        8.2.2.2 no Holder of a Claim or Interest, nor any other party in interest, nor any of their respective officers, directors, shareholders, members, employees, representatives, advisors, attorneys, financial advisors, investment bankers, agents, related professionals, or affiliates, shall have any right of action against any Exculpated Party for any Exculpated Act.

8.2.3 Exception

    The Plan shall not exculpate or release any Exculpated Party from any cause of action related to any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct, or fraud (as determined under applicable non-bankruptcy law).

**8.3.**       **Release**

    As of the Effective Date, each Holder of a Claim who has accepted the Plan is deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Exculpated Party from any and all Claims that were not the result of gross negligence, fraud, willful misconduct, or criminal conduct by the Exculpated Party.

**8.4. Injunction**

From and after the Effective Date, except as otherwise specifically provided in the Plan or the Confirmation Order, all Entities who have held, hold, or may hold a Claim or Interest based upon any act or omission, transaction, or other activity related to the Debtors, the Chapter 11 Trustee, or the Chapter 11 Cases that occurred before the Effective Date, shall be precluded and permanently enjoined on and after the Effective Date from the enforcement, attachment, collection, encumbrance, or recovery with respect to any such Claim or Interest against the Liquidating Trusts, the Retained Assets, or the Purchased Assets.

From and after the Effective Date, except as otherwise specifically provided in the Plan or the Confirmation Order, all Entities that have held, hold, or may hold an Exculpated Liability against any Exculpated Party are permanently enjoined from taking any of the following actions on account of such Exculpated Liability: (i) commencing or continuing, in any manner and in any place, any suit or other proceeding; (ii) enforcing in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; or (iv) asserting a setoff, right of subrogation, or recoupment against any debt, liability, or obligation due to any Exculpated Party.

Nothing in this Plan shall be construed as an injunction with respect to the Liquidating Trustee's pursuit of the Retained Causes of Action.

**8.5. Post-Effective Date Liability of Liquidating Trustee and PNB**

The Liquidating Trustee and the employees, agents, representatives, or professionals employed or retained by the Liquidating Trustee (collectively, the "**Liquidating Trustee's Agents**"), and PNB and the employees, officers, directors, agents, members or representatives, or professionals employed or retained by PNB (collectively, "**PNB's Agents**") shall not have or incur liability to any Entity for any act taken, or omission made, in good faith in connection with or related to Distributions made under the Plan or the Liquidating Trust Agreement, the administration of the Liquidating Trusts, and the implementation of the Plan. The Liquidating Trustee, the Liquidating Trustee's Agents, PNB, and PNB's Agents shall be entitled to rely reasonably on the advice of counsel with respect to their duties and responsibilities under the Plan and the Liquidating Trust Agreement. Entry of the Confirmation Order constitutes a judicial determination that the exculpation provisions contained in Section 8 are necessary to, among other things, facilitate Confirmation and minimize potential Claims arising after the Effective Date for indemnity, reimbursement, or contribution from the Estates, the Liquidating Trusts, or each party's respective property. Confirmation shall also constitute a final judicial determination of, among other things, the matters included in the exculpation provisions of the Plan. In addition, under Bankruptcy Code section 1125(e), the Chapter 11 Trustee and each of his agents, representatives, employees, advisors, and attorneys shall be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code and to have participated in good faith and in compliance with the Bankruptcy Code. No such parties shall have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan.

Notwithstanding the foregoing, nothing herein or in Section 8 shall alter any provision in the Liquidating Trust Agreement that explicitly provides for the potential liability of the Liquidating Trustee to any Entity.

### 8.6. PNB as Consulting Creditor

As provided in greater detail in the Liquidating Trust Agreement, PNB shall have consultation and information rights with respect to the Liquidating Trusts. PNB shall not receive compensation for any action it takes in connection with this Plan. PNB shall be entitled to reimbursement of reasonable costs and expenses in connection with its role as a consulting creditor, including costs of counsel or other professionals, which may be paid by the Liquidating Trusts, as appropriate, without the need for Bankruptcy Court approval.

### 8.7. Insurance

Except as necessary to be consistent with the Plan, the Plan shall not diminish or impair the enforceability of an insurance policy that might cover Claims against the Debtors, the Estates, or any other Entity. In no event shall the Liquidating Trustee have the right to cancel or limit the coverage available under any insurance policy under which the Debtors' directors, officers, or employees are insured parties.

### 8.8. Implementation

Upon Confirmation, the Chapter 11 Trustee and Liquidating Trustee shall be authorized to take all steps and execute all documents necessary to execute the provisions contained in the Plan.

## 9. RETENTION OF JURISDICTION

On and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law.

## 10. MISCELLANEOUS

### 10.1. Modification of Plan

The Chapter 11 Trustee expressly reserves the right to modify this Plan one or more times, before or after Confirmation, to the extent permitted by law (including Bankruptcy Code section 1127 and Bankruptcy Rule 3019). The Chapter 11 Trustee may initiate proceedings in the Bankruptcy Court to modify the Plan or to remedy any defect or omission in the Plan, the Disclosure Statement, or the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan.

To the extent that this Plan has been modified before the entry of the Confirmation Order, such entry shall constitute approval of such modification, without the need for additional disclosure or re-solicitation under Bankruptcy Rule 3019.

If the Chapter 11 Trustee revokes or withdraws the Plan, or if Confirmation or the Effective Date does not occur, then the Plan and the Confirmation Order, including the settlement with PNB provided in Section 5.13.2, shall be null and void in all respects; however, neither the revocation or withdrawal of the plan nor the nonoccurrence of Confirmation or the Effective Date shall have any impact on any Sale Order or on any Purchaser's purchase of any Purchased Assets.

**10.2.    Liquidating Trustee's Plan Interpretation**

The Liquidating Trustee may interpret any effectuating provisions in a manner that is consistent with the overall purpose and intent of the Plan without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

**10.3.    Plan Supplement**

The Plan Supplement shall be Filed by the Chapter 11 Trustee no later than fourteen days before the Confirmation Hearing or on such other date as might be approved by the Bankruptcy Court on notice to parties in interest. The Plan Supplement shall include any other necessary documentation related to the Plan.

**10.4.    Conflicts**

To the extent there are inconsistencies among the Confirmation Order, this Plan, the Disclosure Statement, and any other agreement entered into by the Debtors, the Chapter 11 Trustee, or the Liquidating Trustee, (1) the Plan controls the Disclosure Statement and any such agreements, and (2) the Confirmation Order controls the Plan, the Disclosure Statement, and any such agreements.

To the extent any exhibit or document included in the Plan Supplement is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

**10.5.  Notices**

To be effective, all notices, requests, and demands to or upon the Chapter 11 Trustee or the Liquidating Trustee must be in writing and sent to:

Counsel to the Chapter 11 Trustee and Liquidating Trustee:

> Jenner & Block LLP
> Attention: Marc Hankin, Carl Wedoff
> 919 Third Avenue
> New York, NY 10022
> mhankin@jenner.com
> cwedoff@jenner.com
>
> *and*
>
> Jenner & Block LLP
> Attention: Angela Allen
> 353 North Clark Street
> Chicago, Illinois 60654
> aallen@jenner.com

Counsel to PNB:

> Cleary Gottlieb Steen & Hamilton LLP
> Attention: Sean O'Neal, Rahul Mukhi
> One Liberty Plaza
> New York, New York 10006
> soneal@cgsh.com
> rmukhi@cgsh.com

Unless otherwise expressly provided herein, notice shall be deemed to have been duly given or made when actually delivered or, in the case of notice by electronic mail, when received.

**10.6.  Writings**

Wherever this Plan requires that consent, acceptance, or approval be evidenced by a writing, such a writing may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail.

**10.7.  Reservation of Rights**

Neither the Filing of the Plan, nor any statement or provision contained in the Plan, nor the taking of any action by any Debtor or the Chapter 11 Trustee with respect to the Plan, the Disclosure Statement, or the Plan Supplement, shall be an admission or waiver of any rights of

any Debtor or the Chapter 11 Trustee with respect to the Holders of Claims and Interests unless and until the Effective Date has occurred.

**10.8.      Additional Documents**

The Chapter 11 Trustee shall File with the Bankruptcy Court such agreements, instruments, pleadings, orders, papers or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**10.9.      Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiary, or guardian, if any, of each Entity.

**10.10.      Certain Actions**

10.10.1.   On or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of directors or stockholders of the Debtors shall be deemed to have occurred and shall be in effect before, on, or after the Effective Date (as appropriate), under the applicable general corporation law of the States in which the Debtors are incorporated, without any requirement of further action by the directors and stockholders of the Debtors.

10.10.2.   On the Effective Date, except to the extent that a Debtor is dissolved under Section 5.3, each of the Debtors' formation documents shall be deemed amended to prohibit the issuance by the Debtors of nonvoting securities to the extent required under Bankruptcy Code section 1123(a)(6).

10.10.3.   On or as soon as practicable following the Effective Date, the Liquidating Trustee shall be authorized to cancel, annul, and extinguish all Interests.

# 11. CONFIRMATION REQUEST

The Chapter 11 Trustee requests confirmation of the Plan under Bankruptcy Code section 1129.

Dated: June 22, 2020
     New York, New York

RICHARD LEVIN, CHAPTER 11 TRUSTEE
OF FIRESTAR DIAMOND, INC.,
FANTASY, INC., and OLD AJ, INC. (f/k/a
A. JAFFE, INC.)

/s/ Richard Levin
Richard Levin, Chapter 11 Trustee


JENNER & BLOCK LLP

/s/ Marc Hankin

Marc Hankin
Carl Wedoff
919 Third Avenue, 37th Floor
New York, New York 10022-3908
Telephone: (212) 891-1600
mhankin@jenner.com
cwedoff@jenner.com

Angela Allen (admitted *pro hac vice*)
353 North Clark Street
Chicago, Illinois 60654
(312) 222-9350

*Counsel for the Chapter 11 Trustee*